**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

| | |
|---|---|
| *In re:* | : |
| | : |
| AMPAL-AMERICAN ISRAEL CORPORATION, | : Chapter 7 |
| | : |
| Debtor. | : Case No. 12-13689 (SMB) |
| | : |
| | : |
| | : |

----------------------------------------------------------------- x

| | |
|---|---|
| MERHAV AMPAL GROUP, LTD. f/k/a/ | : |
| MERHAV-AMPAL ENERGY, LTD., | : |
| Plaintiff, | : Adversary Proceeding |
| | : No. 14-02385 (SMB) |
| -against- | : |
| | : |
| MERHAV (M.N.F.) LIMITED and | : |
| YOSEF A. MAIMAN, | : |
| | : |
| Defendants. | : |
| | : |

----------------------------------------------------------------- x

**MERHAV (M.N.F.) LIMITED AND YOSEF A. MAIMAN'S**
**<u>CROSS-MOTION FOR PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

**<u>Page</u>**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

    A.    The Debtor's Bankruptcy ......................................................................... 2

    B.    The Adversary Proceeding ....................................................................... 3

    C.    The Parties ............................................................................................... 3

    D.    The Post-Judgment Discovery, Settlement Negotiations and Injunction ............. 6

    E.    The Files .................................................................................................. 9

JURISDICTION ............................................................................................................... 10

RELIEF REQUESTED ..................................................................................................... 10

BASIS FOR RELIEF ....................................................................................................... 11

    A.    Good Cause Exists to Narrow the Time Frame of the Post-Judgment
            Discovery ............................................................................................... 13

    B.    Good Cause Exists to Order the Proposed Resolution ........................... 15

NOTICE ........................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*287 Franklin Ave. Residents' Ass'n v. Meisels*,
    No. 11-CV-976 (KAM) (JO),
    2012 U.S. Dist. LEXIS 72855 (E.D.N.Y. May 24, 2012) ......................................................13

*Abu-Nassar v. Elders Futures, Inc.*,
    No. 88 Civ. 7906 (PKL),
    1991 U.S. Dist. LEXIS 3794 (S.D.N.Y. Mar. 28, 1991) ......................................................13

*Contemporary Mission, Inc. v. U.S. Postal Service*,
    648 F.2d 97 (2d Cir. 1981).......................................................................................................13

*Cooks v. Town of Southampton*,
    No. 13-3460 (LDW) (AKT),
    2015 U.S. Dist. LEXIS 42917 (E.D.N.Y. Mar. 31, 2015) ....................................................13

*Evans v. Calise*,
    92 Civ. 8430 (PKL), 1994 U.S. Dist. LEXIS 6187
    (S.D.N.Y. May 12, 1994).........................................................................................................13

*Tucker v. Am. Int'l Group, Inc.*,
    281 F.R.D. 85 (D. Conn. Mar. 15, 2012) ...............................................................................14

*U.S. ex rel. Simms v. Austin Radiological Assoc.*,
    A-10-CV-914-AWA, 2013 U.S. Dist. LEXIS 37196
    (W.D. Tex. Mar. 18, 2013) .....................................................................................................13

*Wells Fargo Bank, N.A. v. Konover*,
    No. 3:05-CV-1924 (CFD) (WIG),
    2009 U.S. Dist. LEXIS 18988 (D. Conn. Mar. 4, 2009).......................................................13

*Winforge, Inc. v. Coachmen Indus.*,
    1:06-cv-619-SEB-WGH, 2011 U.S. Dist. LEXIS 134393
    (S.D. Ind. Nov. 18, 2011)........................................................................................................11

*In re Zyprexa Litig.*,
    474 F. Supp. 2d 385 (E.D.N.Y. 2007) ....................................................................................12

**Other Authorities**

Fed. R. Civ. Proc. 26(b) ................................................................................................ 11-12

Fed. R. Civ. Proc. 26(c) ...................................................................................................12

8 Charles Alan Wright & Arthur R. Miller,
     Federal Practice and Procedure § 2036 (2d ed. 1994) ...........................................12

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Defendants and judgment debtors Merhav (M.N.F.) Limited ("Merhav") and Yosef A.

Maiman ("Mr. Maiman," and together with Merhav, "Defendants"), submit this cross-motion for

a protective order (the "Cross-Motion") in response to the *Plaintiff/Judgment Creditor's*

*Memorandum of Law in Support of its Motion to Compel Discovery*, dated June 7, 2017 [Adv.

Proc. Docket No. 76] (the "Motion to Compel")[1] and the Declarations of Yosef A. Maiman (the

"Maiman Declaration," cited herein as "Maiman Decl.") and Michele L. Angell (the "Angell

Declaration," cited herein as "Angell Decl."), and respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

While the Defendants regret that the Judgment is outstanding, and acknowledge that

MAG is entitled to execution-related discovery, unfortunately, for the reasons set forth herein,

the Defendants simply cannot respond to the Post-Judgment Discovery Requests on MAG's

terms – it is literally, physically impossible.  However, the Defendants respectfully submit that

the Proposed Resolution detailed herein would provide MAG with fast, meaningful discovery in

aid of collecting the Judgment.

All information responsive to MAG's requests – which seek fifteen years' worth of

paper, ESI and communications concerning everything and anything related to the Defendants'

finances – are located either on Merhav's electronic servers, or in Merhav's former offices in

Israel.  Merhav has no employees, and Mr. Maiman is an ███████ 71-year-old man who is

███████████████████████████████████████████████████

---

[1]        The *Declaration of John P. Campo in Support of Plaintiff/Judgment Creditor's Motion to Compel Discovery*, dated June 7, 2017 [Adv. Proc. Docket No. 77] is cited herein as "Campo Decl."

[2]        Capitalized terms used in this Preliminary Statement and not otherwise defined have the meanings ascribed to them in the body of the Cross-Motion.

██████████████████████████████████████████████ Merhav does not operate,

and Defendants █████████████████████████████████████████████████████

████████████████████████████████████ The reality of the situation is that ████

████████████████████████████████████████████████████████████████

Under the Proposed Resolution, MAG and Mr. Maiman would jointly select an

Independent Consultant to review the Files immediately at MAG's expense, which costs MAG

could seek to recover as attendant to the Judgment.  The Independent Consultant would review

the Files as quickly as possible to identify all documents from on or after December 31, 2012 –

the date the Promissory Note became due and owing –that are responsive to MAG's requests, as

distinguished from Mr. Maiman's family's unresponsive Private Information which is also

located in the Files.  The Independent Consultant would provide simultaneous Production Sets to

MAG and the Defendants, who would conduct their reviews as quickly as they could depending

on volume.  Mr. Maiman would thereafter sit for a videotape deposition, as soon as the parties'

schedules permit after completing review of the relevant documents.

The Defendants believe that the Proposed Resolution, including the narrowed time frame,

would yield MAG the most meaningful discovery in the least amount of time possible under the

unfortunate and unique circumstances of this case.  The Defendants remain committed to

working with MAG in good faith in furtherance of bringing the Proposed Resolution to fruition.

Accordingly, the Defendants respectfully request entry of the Proposed Order.

## **BACKGROUND**

### A.    **The Debtor's Bankruptcy**

1.    On August 29, 2012 (the "Petition Date"), Ampal-American Israel Corporation

(the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").

2.      On May 2, 2013, the Court converted the Debtor's case to chapter 7.  On June 27,

2013, the Court authorized the appointment of Alex Spizz as chapter 7 trustee (the "Trustee")

[Docket No. 298].

**B.      The Adversary Proceeding**

3.      On September 3, 2014, the Debtor's non-debtor subsidiary, Merhav Ampal

Group, Ltd. ("MAG" or "Plaintiff") initially commenced suit against the Defendants in New

York State Supreme Court, seeking repayment of a promissory note (the "Promissory Note")

issued by Merhav and guaranteed by Mr. Maiman.  Defendants removed the action to the United

States District Court for the Southern District of New York (the "District Court"), and it was

automatically transferred to this Court pursuant to the Amended Standing Order of Reference M-

431, dated January 31, 2012 (Preska, C.J.), commencing the above-captioned adversary

proceeding (the "Adversary Proceeding").

4.      On October 23, 2014, MAG filed an amended complaint in this Court [Adv. Proc.

Docket No. 4] ("Am. Compl.").  Therein, MAG alleged that the Promissory Note was initially

dated December 25, 2007; guaranteed by Mr. Maiman on December 25, 2008; and due to be paid

on December 31, 2012.  (Am. Compl. ¶¶ 9, 14, 23.)

5.      On September 2, 2015, this Court granted summary judgment in favor of MAG

[Adv. Proc. Docket No. 38], and on September 21, 2015 entered judgment for damages in the

amount of $28,085,157, plus interest at applicable rates [Adv. Proc. Docket No. 40] (the

"Judgment").  The District Court affirmed this Court's decision on February 28, 2016, and the

United States Court of Appeals for the Second Circuit affirmed on February 9, 2017.

**C.      The Parties**

6.      Mr. Maiman controls approximately 61.99% of the voting shares of the Debtor's

Class A Stock, which shares are held by Mr. Maiman, his relatives, and entities under his

ownership and/or control, including Merhav.  (Maiman Decl. ¶ 1.)  Prior to the conversion of the

Debtor's case to chapter 7, Mr. Maiman served as the chairman, president and CEO of the

Debtor.  (*Id.* ¶ 2.)

7.     The Trustee currently exercises control over the Debtor's non-debtor subsidiaries,

including MAG, and has appointed his own representatives to supplant the boards and decision-

makers at those non-debtor subsidiaries.  (*Id.* ¶ 3.)

8.     Merhav is a non-operating holding company which formerly had operating offices

located in Herzliya, Israel.  (*Id.* ¶ 6.)  Merhav has no employees.  (*Id.*)  Mr. Maiman is not

formally an employee of Merhav; he collects no salary and receives no social benefits.  (*Id.*)

9.     Mr. Maiman is currently 71 years old and resides in Herzliya, Israel.  (*Id.*)  As

attested in the doctors' letter annexed as Exhibit A to the Maiman Declaration, Mr. Maiman █████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (as discussed further

herein).  (*Id.* ¶¶ 7, 10, 14, Ex. A.)  ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ (*Id.* ¶ 8, Ex. A.) ████████████████████████

████████████████████████████ (*Id.* ¶ 8, Ex. A.)

10.     █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████ (*Id.* ¶ 9, Ex. A.)



11. █████████████████████████████████████████

████████████ (*Id.* ¶ 10, Ex. A.) ████████████████████

███████████████████████████████ (*Id.* ¶ 10, Ex. A.) ███████████

█████████████████████████████████████ (*Id.* ¶ 10, Ex. A.)

12. █████████████████████████████████████████

████████████████████████████████████ (*Id.* ¶ 11, Ex.

A.) ███████████████████████████████████

████████████ (*Id.* ¶ 11, Ex. A.) ████████████████████

████████████ (*Id.* ¶ 11, Ex. A.)

13. ███████████████████████████████████

████████████ (*Id.* ¶ 12, Ex. A.) ████████████████████

██████████ (*Id.* ¶ 12.) ███████████████████████████

(*Id.*)

14. █████████████████████████████████████████

██████████████████████████ (*Id.* ¶ 13, Ex. A.) ████████

████████████████████████████████████████

█████████████████████ (*Id.* ¶ 13.) ████████████████████

████████████████████████████ (*Id.* ¶ 13.) █████████████

████████████████████████████████████████

██████ (*Id.* ¶ 13, Ex. A.)

15. █████████████████████████████████████████

█████████████████████ (*Id.* ¶ 14, Ex. A.) ███████████████

███████████████████████████████████

███████████████████████████████████████████████████

████████  (*Id.* ¶ 14, Ex. A.) ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████  (*Id.* ¶ 15, Ex. A.)

16.    As a result of all the foregoing, ██████████████████████

███████████████████████████████████████████

████████  (*Id.* ¶ 16, Ex. A.) ███████████████████████████

███████████████████████████  (*Id.* ¶ 16.)

**D.**    **The Post-Judgment Discovery, Settlement Negotiations and Injunction**

17.    On November 20, 2015, while Defendants' appeal to the District Court was still pending, MAG served the Defendants with forty-five (45) document requests (the "Document Requests") and thirty-two (32) interrogatories (the "Interrogatories," and together with the Document Requests, the "Post-Judgment Discovery Requests") in aid of judgment.  (Campo Decl. Ex. 1.)  The Post-Judgment Discovery Requests seek essentially every piece of paper and bit of information from the past fifteen years concerning everything the Defendants have ever bought, sold, owned, controlled, owed, transferred or had an interest in – and any and all communications, with anyone, pertaining to any of the foregoing or the Judgment.  (*Id.*)

18.    Shortly after MAG served the Post-Judgment Discovery Requests, in January 2016, the Defendants and the Trustee (on behalf of various entities including MAG), began to engage in settlement discussions concerning the various disputes and legal challenges pending between them, which continued over approximately the next year, with the parties exchanging several term sheets and counter-proposals.  (Campo Decl. ¶ 5; Angell Decl. ¶ 3; *see also Declaration of Daniel A. Fliman*, dated July 11, 2016 [Adv. Proc. Docket No. 57], ¶¶ 6-7

("Fliman Decl.").)  To facilitate such discussions, Plaintiff agreed to set aside the Post-Judgment

Discovery Requests.  (Campo Decl. ¶ 5; Angell Decl. ¶ 3; Fliman Decl. ¶ 7.)

19.    In March 2016, in the context of these settlement discussions, the Trustee

requested certain financial information from the Defendants. (Angell Decl. ¶ 4; Fliman Decl. ¶

8.)  For the agreed purpose of helping the Trustee to review and assess the Defendants'

settlement proposals, the Defendants provided to the Trustee through counsel, among other

things, financial statements for Merhav and Mr. Maiman for years 2012 and later (the "April

2016 Informal Production").  (*Id.* ¶¶ 10, 11; Angell Decl. ¶ 4; *see also* Campo Decl. ¶ 5.)

20.    On June 22, 2016, in connection with the Judgment, MAG filed a motion seeking

turnover of the Defendants' ownership interests in Eastern Mediterranean Gas Company, S.A.E.,

or, in the alternative, an injunction enjoining them from depleting those assets [Adv. Proc.

Docket No. 54] (the "Injunction Motion").

21.    In November 2016, to further assist the Trustee in evaluating the Defendants'

settlement proposals, the Defendants provided the Trustee with certain updated and supplemental

financial information for Mr. Maiman (the "November 2016 Informal Production," and together

with the April 2016 Informal Production, the "Informal Productions").  (Angell Decl. ¶ 5; *see*

*also* Campo Decl. ¶ 5.)

22.    On February 2, 2017, the Court entered an Order of Permanent Injunction [Adv.

Proc. Docket No. 71] (the "Injunction") in resolution of the Injunction Motion.  The Injunction

permanently enjoins the Defendants from selling or disposing of any assets (with one very

limited exception).  (Injunction ¶ 1.)

23.    As a result of the Injunction, and inasmuch as ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ (Maiman Decl. ¶ 18.)

24.     The Defendants are ████████████████████████████████████

████████████████████████████ (*Id.* ¶ 19.) ██████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ (*Id.* ¶ 20.)

25.     On May 12, 2017, counsel for MAG contacted Defendants' counsel seeking responses to the Post-Judgment Discovery Requests on an expedited basis. (Angell Decl. ¶ 6; Campo Decl. ¶ 6.) The Defendants, in good faith, conferred with MAG in an effort to resolve the scope and timing of their responses without Court action, including but not limited to via telephone and email correspondence on May 25, 2017. (Angell Decl. ¶ 6.)

26.     MAG is inaccurate in asserting that "although there initially was an agreement to voluntarily produce Judgment Debtor Maiman for deposition during the second or third week of June, 2017, counsel for the Judgment Debtors is no longer agreeing to produce Judgment Debtor Maiman on that, or any other, schedule." (Motion to Compel at 2.) The Defendants initially offered to produce Mr. Maiman for deposition during mid-June 2017 *on the condition that they could respond to the Document Requests by verifying the Informal Productions, and not producing additional documents*. (Angell Decl. ¶ 7.) MAG then proposed deposing Mr. Maiman *twice* – first in mid-June 2017, then a second time after documents were produced and reviewed – an illogical idea which Defendants flatly rejected. (*Id.*)

27.     On May 26, 2017, MAG requested, via letter, a pre-motion conference with the Court in anticipation of moving to compel responses to the Post-Judgment Discovery Requests

[Adv. Proc. Docket No. 74]. On June 1, 2017, the Court held a Chambers conference (the "Pre-Motion Conference"), at which it authorized Plaintiff's Motion to Compel, and Defendants to seek a protective order. (Angell Decl. ¶ 8.)

28.     The Defendants, in good faith, again conferred with MAG in an effort to resolve the scope and timing of their responses, both in person after the Pre-Motion Conference and telephonically on June 2 and 5, 2017. (*Id.* ¶ 9.) However, negotiations were unsuccessful, (*id.*), and on June 7, 2017, MAG filed the Motion to Compel and noticed Mr. Maiman's deposition for June 29, 2017. (Campo Decl. Ex. 2.)

### E.     The Files

29.     All the documents and information sought by MAG, that exist, are located either on Merhav's electronic servers, or in boxes at Merhav's former offices at 33 Havazelet Hasharon, Herzliya, Israel (collectively, the "Files"). (Maiman Decl. ¶ 21.) The Files also contain sensitive, personal information concerning Mr. Maiman and his family that is not responsive to the Post-Judgment Discovery Requests (the "Private Information"). (*Id.* ¶ 22.)

30.     ██████████████████████████████████████████ (*Id.* ¶ 23.) ████████████████████████████████████████████

████ (*Id.* ¶ 24, Ex. A.) ████████████████████████████

████████████████████████████████████████████████

████████████████████████████ (*Id.* ¶ 25.)

31.     The Defendants regrettably recognize that the Judgment is outstanding, and certainly acknowledge that MAG is entitled to discovery in aid of collecting. However, █████



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

32.     In recognition of this conundrum, Defendants seek entry of the Proposed Order
(defined herein), ordering resolution of the Post-Judgment Discovery Requests by means of the
Proposed Resolution (as defined herein).

**JURISDICTION**

33.     The Court has subject matter jurisdiction to consider and determine this matter
pursuant to 28 U.S.C. § 1334.  This is a non-core proceeding pursuant to 28 U.S.C. § 157(b).
Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

34.     Pursuant to Rule 26 of the Federal Rules of Civil Procedure (the "Federal Rules"),
made applicable to this Adversary Proceeding by Rule 7026 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), the Defendants respectfully request that the Court limit the
Defendants' responses to the Post-Judgment Discovery Requests to documents and information
from on and after December 31, 2012 – the date the Promissory Note became due and owing.

35.     With that caveat, the Defendants are prepared to make the Files immediately
available for review by an independent consultant to be jointly selected by MAG and Mr.
Maiman (the "Independent Consultant").  The Independent Consultant would initially be paid by
MAG, although the Defendants do not object to MAG seeking to add the Independent
Consultant's reasonable fees and expenses to the amount of the Judgment.

36.     The Defendants respectfully propose that the Independent Consultant would
review the Files as quickly as he or she deems reasonably practicable, to identify documents and
information responsive to the Post-Judgment Discovery Requests – especially as distinguished
from the Private Information – from December 31, 2012 or later.  The Independent Consultant
would provide production sets simultaneously to MAG and the Defendants (the "Production
Sets"), without prejudice to the Defendants' ability to challenge responsiveness and raise

10

privilege issues in good faith, neither of which would be waived by the provision of documents

to MAG.  The Defendants consent to Plaintiff sharing such materials with attorneys and

employees of Tarter Krinsky & Drogin LLP; Akerman LLP; EisnerAmper LLP; and Herzog Fox

& Neeman, solely for purposes of executing on the Judgment in the Adversary Proceeding, as set

forth in the Proposed Order.

37.     Next, the parties would jointly determine, based on the volume of the Production

Sets, a deadline by which they both would complete their reviews thereof, and by which

Defendants would raise any challenges to responsiveness or privilege (the "Review and

Challenge Deadline").  The parties would meet and confer in good faith with respect to

challenges, and seek expedited Court intervention concerning any they could not resolve.

38.     As soon as practically possible after the Review and Challenge Deadline, the

Defendants would make Mr. Maiman available for a videotape deposition.[3]  The foregoing

paragraphs 34-38 are referred to herein as the "Proposed Resolution," and set forth in the

proposed order annexed hereto as Exhibit A (the "Proposed Order").

## BASIS FOR RELIEF

39.     Execution discovery requests under Federal Rule 69, made applicable hereto by

Bankruptcy Rule 7069, "are treated in the same manner as pretrial discovery requests."

*Winforge, Inc. v. Coachmen Indus.*, 1:06-cv-619-SEB-WGH, 2011 U.S. Dist. LEXIS 134393, at

*5 (S.D. Ind. Nov. 18, 2011).  Under Federal Rule 26(b), "[p]arties may obtain discovery

regarding any nonprivileged matter that is *relevant . . .* and *proportional to the needs of the case*,

considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, *the parties' resources*, the importance of the

---

[3]       MAG has previously agreed to depose Mr. Maiman remotely from his home in Israel, inasmuch as ███
████████████████████████████████████████████ (Maiman Decl. ¶ 14, Ex. A), and accordingly noticed
Mr. Maiman for a videotape deposition.  (Campo. Decl. Ex. 2.)

discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit.*" Fed. R. Civ. P. 26(b)(1) (emphases added).

40.    Federal Rule 26(c) "was adopted as a safeguard for the protection of parties" in light of the breadth of Federal Rule 26(b)(1). *In re Zyprexa Litig.*, 474 F. Supp. 2d 385, 414 (E.D.N.Y. 2007) (quoting 8 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2036 (2d ed. 1994)) (brackets omitted). The rule provides, in pertinent part:

> A party . . . from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party . . .from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery; [and]
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

Fed. R. Civ. Proc. 26(c).

41.    Courts are not limited to the types of protective orders specified in Federal Rule 26(c); rather, they "may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Zyprexa*, 474 F. Supp. 2d at 415 (quoting 8 Wright & Miller at § 2036). "To determine whether good cause exists, courts balance the need for information against the injury that might result if uncontrolled disclosure is compelled." *Id.* (quotations omitted).

**A.   Good Cause Exists to Narrow the Time Frame of the Post-Judgment Discovery**

42.     "Although the scope of discovery is broad, it is not unrestricted." *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976 (KAM) (JO), 2012 U.S. Dist. LEXIS 72855, at *11 (E.D.N.Y. May 24, 2012).  "[T]he party seeking discovery must make at least a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924 (CFD) (WIG), 2009 U.S. Dist. LEXIS 18988, at *14 (D. Conn. Mar. 4, 2009) (citing *Evans v. Calise*, 92 Civ. 8430 (PKL), 1994 U.S. Dist. LEXIS 6187, at *4 (S.D.N.Y. May 12, 1994); *Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1991 U.S. Dist. LEXIS 3794, at *53 (S.D.N.Y. Mar. 28, 1991)); *see also Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981) ("Where a plaintiff fails to produce any specific facts whatsoever to support [an] . . .allegation, a district court may, in its discretion, refuse to permit discovery . . .").

43.     In particular, "the time frame for conducting relevant discovery is not without limits." *U.S. ex rel. Simms v. Austin Radiological Assoc.*, A-10-CV-914-AWA, 2013 U.S. Dist. LEXIS 37196, at *20 (W.D. Tex. Mar. 18, 2013).  Thus, courts will strike discovery into an overly broad time frame that is not proportionally tailored to when the events at issue in the action occurred.  *See, e.g.*, *Cooks v. Town of Southampton*, No. 13-3460 (LDW) (AKT), 2015 U.S. Dist. LEXIS 42917, at *18-19 (E.D.N.Y. Mar. 31, 2015) ("[T]he Court concludes that Plaintiff's document requests are overbroad in terms of the time frame sought.").

44.     Here, good cause exists to limit the time frame of MAG's Post-Judgment Discovery Requests to documents and information dated on or after December 31, 2012 – the date the Promissory Note which is the subject of the Judgment became due and owing.  (Am. Compl. ¶ 23.)  Remarkably, in most of the Post-Judgment Discovery Requests, MAG seeks documents and information going back to August 29, 2002 – ten years before the Petition Date,

more than six years before Mr. Maiman guaranteed the Promissory Note, and over five years before the Promissory Note *ever existed in the first place.*  (*Id.* ¶¶ 9, 13; *see* Campo Decl. Ex. 1.)

45.    At the Pre-Motion Conference, Plaintiff's counsel vaguely alluded to certain alleged provisions of Israeli law that may provide for a ten-year clawback period, as his reason for purporting to set the foregoing time frame.  However, MAG's counsel did not provide any support for this proposition, or even specify the Israeli statute to which he was referring – not to mention explain why, or to what, he contends Israeli law applies.  Moreover, MAG fails to explain how it could, under any theory, claw back transfers made ten years before *the Petition Date* – the date the Debtor, Plaintiff's parent who is not a party to the Adversary Proceeding, sought chapter 11 relief – as opposed to a date relevant to this action.  Accordingly, MAG has failed make a *prima facie* showing that seeking documents back to August 2002 constitutes anything more than a fishing expedition (or, equally likely, a harassment technique).

46.    In direct contrast to MAG's inability to identify any articulable benefit to setting a time frame going back fifteen years, ██████████████████████████████████ ███████████████████ the burden on Defendants of doing so would be extreme – to the point of, literally, impossible.  *See Tucker v. Am. Int'l Group, Inc.*, 281 F.R.D. 85, 95 (D. Conn. Mar. 15, 2012) ("[T]he burdens of plaintiff's proposed inspection . . . outweigh the benefits plaintiff might obtain . . . .  Plaintiff seeks . . . in effect, to dredge an ocean of [] electronically stored information and records in an effort to capture a few elusive, perhaps non-existent, fish.  In the absence of proven necessity, courts are traditionally loathe to permit such sweeping fishing expeditions.").

47.     Accordingly, Defendants have established "good cause" under Federal Rule 26(c) for a protective order limiting the timeframe of the Post-Judgment Discovery Requests to December 31, 2012 and forward.

**B.     Good Cause Exists to Order the Proposed Resolution**

48.     Moreover, good cause exists under Federal Rule 26(c) for ordering the Proposed Resolution.  While Defendants agree that MAG is entitled to discovery in aid of judgment (within reason – *see* Section A, *supra*), MAG can demonstrate no compelling need for obtaining the information on *the precise terms it seeks*.  Indeed, Plaintiff has never explained the sudden urgency for the discovery sought, which has sat dormant for nearly sixteen months.  The Proposed Resolution would yield the same documents and information as would the production procedure MAG demands.  Although the Proposed Resolution would take longer than twenty days and Mr. Maiman's deposition necessarily would occur after June 29, 2017,[4] the Defendants maintain that the Proposed Resolution represents the fairest, fastest way to get MAG the information it demands under the circumstances.  Notably, the Injunction eliminates any risk that the Defendants will transfer assets – indeed, the Injunction ███████████████████████ ██████████████████████████████████ (Maiman Decl. ¶¶ 18, 25.)  MAG cannot have it both ways.  And, as explained above and attested in the Maiman Declaration, ████ ███████████████████████████████████████████████

(*Id.*, ¶¶ 6-17, 23-24.)

---

[4]     Interestingly, even if the Court grants the Motion to Compel immediately on the June 15, 2017 hearing date, under MAG's demand for a twenty-day production deadline, documents and responses would not be due until July 5, 2017 – *after* Mr. Maiman's noticed deposition.  Presumably, if Mr. Maiman's deposition goes forward on June 29, MAG will utilize the Informal Productions to question him.  This supports Defendants' belief that the Informal Productions (if verified) give MAG all it really needs.  There simply is no other rational explanation for why MAG would seek to depose a party before receiving – much less reviewing – the purportedly relevant documents.  Indeed, Defendants continue to strongly believe that the Post-Judgment Discovery Requests and Motion to Compel constitute no more than a harassment technique.

49.     Moreover, an Independent Consultant is required here to protect the unresponsive, sensitive Private Information contained in the Files.  The Independent Consultant will ensure that MAG receives whatever documents and information exist that are responsive to the Post-Judgment Discovery Requests (dated on or after December 31, 2012), while protecting the privacy of Mr. Maiman's family members that are not involved with this Adversary Proceeding.

50.     Finally, although Defendants ███████████████████████████████ ███████ Defendants do not object to MAG seeking reimbursement of the Independent Consultant's reasonable fees and expenses as part of the Judgment.  Defendants reserve all rights to object on the basis that any such fees and expenses are not reasonable.

### NOTICE

51.     Notice of this Motion will be given to counsel for the Plaintiff and the United States Trustee for the Southern District of New York.  The Defendants submit that no other or further notice need be provided.

52.     No previous request for the relief sought herein has been made by the Defendants to this or any other court.

16

WHEREFORE the Defendants respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: June 12, 2017
        New York, New York

                                    KASOWITZ BENSON TORRES LLP

                                    By:  /s/ Michele L. Angell
                                     Daniel A. Fliman
                                    (dfliman@kasowitz.com)
                                    Michele L. Angell
                                    (mangell@kasowitz.com)
                                    1633 Broadway
                                    New York, New York 10019
                                    Telephone: (212) 506-1700

                                    *Counsel for Merhav (M.N.F.) Limited
                                    and Yosef A. Maiman*