UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------  X

| | | |
|---|---|---|
| In re: | : | **Hearing Date and Time:**<br>**November 1, 2017 at 10:00 a.m.** |
| | : | Chapter 7 |
| AMPAL-AMERICAN ISRAEL<br>CORPORATION, | : | Case No. 12-13689 (SMB) |
| | : | |
| Debtor. | : | |
| | : | |

-------------------------------------------------------  X

| | | |
|---|---|---|
| MERHAV AMPAL GROUP, LTD. f/k/a<br>MERHAV-AMPAL ENERGY, LTD., | : | Adv. No. 14-02385 (SMB) |
| | : | |
| Plaintiff, | : | **RELATED DOC. NOS. 116, 140, 141** |
| | : | |
| v. | : | |
| | : | |
| MERHAV (M.N.F) LIMITED and<br>YOSEF A. MAIMAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-------------------------------------------------------  X

### PLAINTIFF/JUDGMENT CREDITOR'S SUPPLEMENTAL STATEMENT IN SUPPORT OF CONTEMPT MOTION AND UPDATE REGARDING COMPLIANCE WITH THE COURT'S ORDERS

Merhav Ampal Group, Ltd. f/k/a Merhav-Ampal Energy, Ltd. ("MAG"), hereby submits this supplemental statement ("Supplemental Statement") in support of its contempt motion and to update the Court regarding compliance with its orders on MAG's contempt motion (the "Contempt Order") and on Kasowitz Benson Torres LLP's ("KBT") withdraw motion (the "Withdraw Order," together the "October 11 Orders"). [Adv. Doc. No. 140, 141, respectively]. Pursuant to Fed. R. Civ. P. 26 and 69, the October 11 Orders, and the Supplemental Statement, MAG seeks additional sanctions against Merhav (M.N.F.) Limited ("Merhav") and Yosef A. Maiman ("Maiman," together the "Judgment/Debtors") for failing to comply with the October 11 Orders. At the same time, MAG alerts the Court to attorney Al J. Daniel, Jr.'s "legal opinion"

filed in response to MAG's effort to domesticate the Court's Judgment in Israel. [Adv. Doc. No. 40]. As more fully set forth below, this "legal opinion" is yet another baseless attempt to frustrate these proceedings and the enforceability of this Court's _**twice affirmed**_ Judgment against the Judgment Debtors, which now exceeds $30 million.

## INTRODUCTION

On October 11, 2017, the Court entered two straightforward and simple orders. The October 11 Orders directed the Judgment Debtors to identify their physical electronic servers – both within and outside their possession – to identify information on those servers, to deliver the physical electronic servers to Force Majeure, and to cease all efforts to enjoin enforcement of this Court's orders.

True to form, the Judgment Debtors have violated these orders. While they provided a "declaration," it was wholly deficient and failed to provide any of the information required. Instead, it described the servers in the most general of possible terms and identified the use of a Microsoft-based cloud server. Moreover, the declaration was submitted by an individual that MAG has never heard about, who works at a company that MAG has never heard about, and who clearly lacks sufficient personal knowledge. Indeed, the declarant identified and subsequently delivered one (1) physical electronic server – the purported "only" server. However, as MAG now knows, there are _**at least two additional**_ Merhav physical electronic servers that exist – a fact the Judgment Debtors' counsel now admits. This alone requires that additional sanctions be imposed against the Judgment Debtors.

Next, the Court further ordered the Judgment Debtors and their agents to cease any effort to enjoin the Court's orders. Instead, in an orchestrated and coordinated move, the Judgment Debtors dismissed the Israel Action, and Merhav's employees initiated a new claim seeking the

same injunction.   However, the new action was filed by *one of the Judgment Debtors' attorneys*, who is presently representing the Judgment Debtors in other pending matters in Israel. Thus, after causing a two-month delay with the initiation and withdrawal of the Israel Action, the Judgment Debtors have managed to "restart" this entire process.

Finally, the Judgment Debtors' new US-based counsel, Al J. Daniel, Jr., has submitted a "legal opinion" in Israel that challenges this Court's Judgment and contends that this Court improperly entered summary judgment, lacked personal jurisdiction over the Judgment Debtors, and lacked subject matter jurisdiction over MAG's claims.   This is yet another legally baseless tactic aimed at frustrating these proceedings and this Court's resolution of this matter.

For the reasons set forth below, the Court should find that the Judgment Debtors have violated the Court's October 11 Orders, increase the sanction from $1,000 to $10,000 per day in light of the Judgment Debtors' continued disregard for this Court's orders, order that this increased sanction commence as of November 1, 2017 and continue until the Judgment Debtors' cure these violations, and enter such other and further relief as the Court deems appropriate including additional sanctions as set forth herein.

## FACTUAL BACKGROUND AND UPDATE

1.      On August 14, 2017, the Court ordered the Judgment Debtors to turnover their electronic servers, *inter alia*, by no later than August 28, 2017. [Adv. Doc. No. 115].

2.      Instead, on August 28, 2017, Lipa Meir & Co. ("Lipa"), the Judgment Debtors' Israeli-based counsel, sent correspondence to Force Majeure (MAG's independent computer consultant) alerting Force Majeure that the Judgment Debtors were not complying with the Court's June 23, 2017 Order [Adv. Doc. No. 98] and August 14, 2017 Order [Adv. Doc. No.

115] (together, the "Discovery Orders"), and that they would seek an injunction in Israel. [Adv. Doc. No. 117 at ¶ 20; 117-1].

3.      Thereafter, on or about September 10, 2017, Lipa filed a new lawsuit in Israel styled *Merhav M.N.P. Ltd. and Yossi Arieh Miman, v. Force Majeure Ltd., The Merhav – Ampal Group Ltd.*, *Sabich Sailan, Leo Malmud, Irit Lluz, Sharon Barkan, Giora Bar Nir, Yoram Peron, Michael Mirkin, Alfredo Rosenzweig, and Shelly Ronen*, Labor Dispute 17084-09-17, pending in the Regional Labor Court in Tel Aviv – Yafo (the "Israel Action"). *Id.* at ¶ 24; 117-2.

4.      On September 15, 2017, MAG moved to enjoin the Judgment Debtors from pursuing the Israel Action, and for sanctions against them, and their counsel Lipa and KBT for violating the Discovery Orders. [Adv. Doc. No. 117].

5.      On September 19, 2017, KBT moved to withdraw as counsel for the Judgment Debtors. [Adv. Doc. No. 121].

6.      On October 3, 2017, the Court heard argument on these motions and, on October 11, 2017, entered orders regarding each motion, *i.e.*, the Contempt Order and the Withdraw Order. [Adv. Doc. No. 140, 141].

7.      In the Contempt Order, the Court found that the Judgment Debtors waived any argument regarding the application of Israeli privacy law, held the Judgment Debtors in contempt, permanently enjoined the Israel Action, and enjoined the Judgment Debtors and their agents from pursuing any form of injunction regarding the enforceability of the Discovery Orders or the Contempt Order. *See* Contempt Order at ¶ 2(a)-(b)].

8.      Also, the Contempt Order further required the Judgment Debtors to: "identify (including their descriptions, location, as well as the categories of information thereon or therein) … any and all physical electronic server(s) that are in the Judgment Debtors' possession,

custody, or control"; and the Judgment Debtors "shall also identify … any and all 'e-mail' or 'cloud' server(s) utilized by the Judgment Debtors." *Id.* at 2(c).

9.      Finally, the Judgment Debtors were ordered to "immediately" deliver their physical server(s) to Force Majeure. *Id.* at 2(d).

10.     In the Withdraw Order, the Court directed "Mr. Maiman or someone else with personal knowledge … to file a declaration … that identifies the location and describes the categories of information on (1) any and all physical electronic servers that are in the possession, custody, and control of the judgment-debtors, and (2) any other physical electronic servers that the judgment debtors contend are not in their possession, custody, and control but contain information responsive to the judgment creditor's discovery requests and related Court orders." *See* Withdraw Order at ¶ 4.   The Withdraw Order did not set a specific deadline for this declaration.

11.     The Court adjourned KBT's withdrawal motion to November 1, 2017 at 10:00 a.m., *id.* at ¶ 3, which was subsequently adjourned by agreement to November 16, 2017. [Adv. Doc. No. 146].  During this time, the Judgment Debtors have retained attorney Al J. Daniel, Jr. ("Daniel") to represent them in the main bankruptcy and the adversary proceedings. [Adv. Doc. No. 133].

12.     On October 11, 2017, after the Court entered the October 11 Orders, counsel for MAG sent e-mail correspondence to Daniel and KBT stating, "[n]ow that the order has been entered in the injunction/contempt action, please confirm whether your clients will consensually withdraw the Israel action."  Daniel responded that same day on behalf of the Judgment Debtors, and confirmed that the e-mail and October 11 Orders were forwarded to "my clients and their

Israel counsel" and that Daniel would advise MAG once he was informed as to how the Judgment Debtors will "procedurally comply with the judge's order."

13.     On October 12, 2017, Daniel e-mailed counsel for MAG regarding arrangements for turning over the Judgment Debtors' physical electronic server.  In that e-mail, Daniel identified "Oriental," an IT company in Israel, who would be delivering the server to Force Majeure.  This is the first instance MAG learned of Oriental's existence or involvement in this matter.  On that same day, Daniel represented that "I am informed that counsel in Israel will submit a filing to that court next week to comply with Judge Bernstein's order.  Israel is in a holiday period which ends on Sunday."  Copies of counsels' e-mail exchange is attached as **Composite Exhibit A**.

14.     On October 15, 2017, Lipa formally requested that the Israel Action be withdrawn, which is the equivalent of a dismissal without prejudice.  Copies of the English translation, certification, and original Hebrew filing are attached as **Exhibit B**.  Specifically, the Judgment Debtors "requested [the Israeli court] to instruct that the suit and the interim proceedings taking place within its framework be cancelled by way of erasing the Statement of Claim and the Application for Temporary Reliefs, and cancel the hearing set for October 25, 2017."  *Id.* at 1; *see also* [Adv. Doc. No. 142].

15.     Notwithstanding the finding that the Judgment Debtors had acted contemptuously and were ordered to cease any effort to enjoin the Discovery Orders and the Contempt Order, Lipa's request to dismiss the Israel Action represented to the Israeli court that the Judgment Debtors filed the Israel Action because they "thought that the decision of the [Israeli court] will help – one way or another – the American court, which is unfamiliar with the law in Israel and cannot manage such a proceeding with the Employees [of Merhav]."  *Id.* at ¶ 5.  This filing also

states that it "is … clear that a proceeding to which the employees are a party can only be conducted in a Court with Israeli jurisdiction, and not in New York, since it is not possible to vest any authority in regard to Israeli employees in this matter in an American court, but only in an Israeli one." *Id.* at ¶ 4. However, this is a clear misrepresentation of what transpired here and why their conduct was deemed improper by this Court. Indeed, nowhere in their filings do the Judgment Debtors mention that they never previously raised this precise issue with this Court, that they have "waived any argument regarding the application of Israeli privacy law – specifically, but not limited to, Israel's Protection of Privacy Law, 5741-1981 – to the Court's June 23, 2017 and August 14, 2017 Orders," and that their conduct was undertaken to avoid the Discovery Orders. *See* Contempt Order at ¶ 2(a).

16.     Regardless, the Judgment Debtors' decision to dismiss the Israel Action in its entirety, and their discussion of how the Merhav Employees must be an actual "party" (as opposed to a nominal party) – a fact the Judgment Debtors' sophisticated Israeli-based law firm Lipa should have known from the start – foreshadows the next strategy that the Judgment Debtors now intend to employ to avoid this Court's Discovery Orders and Contempt Order. Fundamentally, the original Israel Action was nothing more than a delay tactic.

17.     On October 17, 2017, three months after the Court originally ordered the production of the servers, *see* [Adv. Doc. No. 98 at 2], the Judgment Debtors, through Mr. Cnaan of Oriental IT, finally delivered one (1) physical electronic server to Force Majeure. [Adv. Doc. No. 144; 144-1 at ¶ 8].

18.     ***However***, on October 16, 2017, attorney Iris Edri ("Edri"), counsel for four (4) of Judgment Debtor Merhav's non-party employees – Sabi Saylan, Leo Malamud, Michael Mirkin, and Sharon Barkan (collectively, the "Merhav Employees") – sent an "extremely important"

43219888;3

correspondence to Force Majeure.  A "convenience translation" of Edri's letter to Force Majeure (the "Edri Letter"), along with the original Hebrew, is attached as **Exhibit C**.  The Edri Letter relates to Merhav Employees' purported "Protected Information" (*i.e.*, the "information that is located in the mail boxes of [the] employees of [Merhav]" currently in Force Majeure's possession).  *See* Edri Letter at ¶ 1.

19.    Putting aside Force Majeure's obvious sense of déjà vu upon receipt of this letter, the Edri Letter, its timing, and the identity of the sender are all fraught with suspicion.  While the Edri Letter is sent on behalf of the Merhav Employees – and not the Judgment Debtors themselves – Edri is the Judgment Debtors' counsel in other pending matters in Israel.

20.    Just like Lipa's letter before it, the Edri Letter "alerts" Force Majeure that the Merhav Employees are allegedly "opposed to any inspection [of the Protected Information] or any use thereof and its transfer to any third party whomsoever," *id.* at ¶ 3; that they intend to file a separate lawsuit to enforce their rights, *id.* at ¶ 5; and that if Force Majeure used any of the information it would "constitute[ ] a tortious act and is likely to even amount to a criminal deed." *Id.* at ¶ 4.  The purported opposition to inspection is obviously suspicious insofar as the blanket denial fails to distinguish between private/personal e-mails and those e-mails that relate to the Judgment Debtors and MAG's collection efforts.   Also, the Edri Letter contends that, notwithstanding this Court's orders, the Merhav Employees "were not party [to this proceeding], and did not participate in any form whatsoever, and there is inherently a doubt if they are at all subject to the jurisdiction of the US court."  *Id.* at ¶ 2.  In other words, Edri is foreshadowing that the employees will take the position that this Court's Discovery Orders and October 11 Orders are unenforceable as to them in Israel.

21.     The Edri Letter closes with the following threats and declarations to Force Majeure:

> **Accordingly, you are hereby requested to desist from inspecting, making any use of whatsoever or transferring the Protected Information to any third party whatsoever, in Israel or abroad, including the Ampal-Merhav Group or the liquidator of Ampal American Israel Corporation.**
>
> **You are hereby [warned] that in the event that you act against the demand of the employees and transfer or make use of the Protected Information, my clients will see you as responsible for the breach of their privacy and protected rights, as well as to all resulting damages, and will not hesitate to commence any action available to them, either on the criminal or civil plane.**
>
> As a post script we repeat and emphasize that any ruling otherwise that is awarded in a US court cannot legitimize the use of the Protected Information in light of the express opposition of the employees as presented above, and it does not apply to the employees. We further remind you that, in any event, further to the ruling of the Israel Labor Court of 24.9.17 awarded in the context of Labor Dispute 17084-09-17 you are prohibited from making any use of or transfer the Protected Information, **accordingly you are to desist from making any use of the Protected Information, and you shall allow the employees to apply to the courts to express their opposition to this matter.**

*Id.* at ¶¶ 6-8 (emphasis in original).

22.     In short, the Merhav Employees have threatened civil and criminal penalties against Force Majeure if it complies with this Court's Discovery Orders and October 11 Orders, has instructed Force Majeure that this Court can make no ruling that will permit its review of the Merhav Employees' e-mails, and that the Israeli court – and the Israeli court alone – will instruct Force Majeure as to what it may review.

23.     On October 17, 2017, MAG's Israel-based counsel responded to Lipa's request to have the Israel Action dismissed. In this response, among other things, MAG sought to keep the October 25 hearing for administrative convenience purposes and to allow the Israeli court to

resolve this matter promptly. *See* [Adv. Doc. No. 145-1 at 3-6]. MAG further requested the opportunity to present a comprehensive filing that discussed all of the matters raised in the Israel Action, the issues presented in the US proceeding, why MAG has requested (and this Court ordered) the production of the Judgment Debtors' servers, and generally why the Merhav Employees' e-mails are relevant. *Id.* Instead, in yet another example of the Judgment Debtors' delay tactics, they dismissed the entire Israel Action rather than allowing the Israeli court to deal with the Merhav Employees' alleged concerns. Thus, this entire episode was just an exercise in futility with more than a month transpiring without any actual progress towards resolving the issues in Israel.

24.     On October 19, 2017, the Israeli court, recognizing the Judgment Debtors had the right to make the request, dismissed the Israel Action, without prejudice, lifted all pending injunctions, and cancelled the October 25 hearing set in that action. *Id.* at 145-1 at 1.

25.     Nevertheless, the Judgment Debtors continue to deny MAG access to the e-mail server. At most, an argument exists to restrict access to the e-mail boxes for the four Merhav Employees. However, in light of the Merhav Employees' new claim, and notwithstanding that the Israeli court lifted the injunction from the Israel Action, the Judgment Debtors, through their agent Sabi Saylan (one of the Merhav Employees and an insider of Judgment Debtor Merhav), refuse to provide Force Majeure the password to access the e-mail server. Thus, the Judgment Debtors are enforcing, through self-help, the Israel Action's prior injunction regarding the e-mail server even though it is no longer in effect.

26.     On October 20, 2017, while the Judgment Debtors were in the middle of dismissing the Israel Action, and instituting a new action through the Merhav Employees, acting

as their proxies/strawmen, Daniel and Lipa filed letters with the Court purporting to demonstrate their compliance with the Court's October 11 Orders. [Adv. Doc. No. 144, 142, respectively].

27.    In Lipa's letter, counsel attaches copies of the request to dismiss the Israel Action, which they represent as having been granted, and a copy of counsel's communication with MAG's counsel requesting that MAG withdraw its motion for contempt against Lipa.  As explained below, MAG cannot agree to Lipa's request, and MAG leaves the result of the contempt motion regarding Lipa to the Court's sound discretion.

28.    With respect to the Judgment Debtors, Daniel filed a letter, along with Mr. Uri Cnaan's ("Cnaan") declaration (the "Cnaan Declaration"), cloud-server invoices, and a Hebrew copy of what purports to be the Israeli court's order dismissing the Israel Action (the "Daniel Letter"). [Adv. Doc. No. 144].  The purpose of the Daniel Letter was to demonstrate compliance with the October 11 Orders.  *Id.* at 1.

29.    Interestingly, the Cnaan Declaration is particularly vague regarding the source of his knowledge and the full scope of the Judgment Debtors' servers.  As drafted, the declaration is limited to Mr. Cnaan's knowledge as an employee of Oriental Computer Systems Limited ("Oriental") that has "provided computer services" for Merhav, and that Cnaan is "familiar with the computer systems and services used by Merhav MNF." [Adv. Doc. No. 144-1 at ¶¶ 1-3].  However. in the first four paragraphs of the Cnaan Declaration – the portion that describes Cnaan's knowledge – the word "server" is notably absent.  *Id.* at ¶¶ 1-4.

30.    That aside, Cnaan indicates that Judgment Debtor Merhav had "one" (1) physical server, Model X3550 7914-e3g, Serial No. KD2G9N8, in its possession custody, or control, which he delivered to Force Majeure on or about October 17, 2017.  *Id.* at ¶¶ 5, 7-8.  According to Cnaan, the physical electronic server contains "Microsoft Office Excel, Word, and PowerPoint

program and files, bookkeeping and other financial programs and files, and picture files." *Id.* at ¶ 6. Presumably that statement was intended to satisfy the "categories of information" obligation of the Contempt Order, but this merely identifies, generically, the programs on the server and, thus, MAG contends the Cnaan Declaration does not actually "describe[ ] the categories of information" on the server.

31.     Separately, Mr. Cnaan indicates that Judgment Debtor Merhav subscribed to a "cloud-based e-mail service called 'Exchange Online'" that is accessed remotely with the actual, physical servers in the custody of Microsoft. *Id.* at ¶ 10. However, the Cnaan Declaration, as well as the attached invoice, fail to elaborate on the dates during which the Judgment Debtors had the e-mail servers. The invoice merely references a bill date of September 9, 2017, and service dates of July 10, 2017 to August 9, 2017. *Id.* at p. 5. The invoice fails to provide any relevant information relating to the services provided or the information stored on these cloud servers. Moreover, the Cnaan Declaration fails to otherwise elaborate as to the content of the "e-mail" servers, aside from the fact that the cloud servers contain "e-mails." MAG contends that this does not comply with the Court's October 11 Orders.

32.     Counsel for MAG responded to Daniel and explained that the Cnaan Declaration was insufficient. Daniel attempted to cure the declaration's deficiencies in his e-mail. (providing additional details and dates regarding Cnaan and Cnaan's knowledge). However, MAG contends that this e-mail was both substantively insufficient – Cnaan's knowledge and the declaration remain unclear – and procedurally deficient insofar as it was not in the form of a declaration of a person with knowledge. Copies of their e-mail exchange is attached as **Composite Exhibit D**. As such, MAG contends that the Judgment Debtors have violated the Discovery Orders and October 11 Orders.

33.     In addition to the deficiencies in the Cnaan Declaration, MAG also informed counsel for Judgment Debtors that certain additional physical electronic servers that are believed to be servers of the Judgment Debtors were neither disclosed nor delivered as required by the October 11 Orders.  A copy of this October 23, 2017 e-mail communication is attached as **Exhibit E**.

34.     As set forth in that communication, MAG inquired as to certain servers in the possession of Tic Tac Technologies ("Tic Tac"), which were identified as: a) "Server AC-MERHAV," with two (2) hard drives, model numbers BD0728A4B4 and BD07285A25, respectively, that bear serial numbers J20FHHBK and 3HZ6XRBE, respectively; and, b) "Server FL- MERHAV HASHAVSHEVET" with two (2) hard drives, model numbers ST3250310NS and ST3250620NS, respectively, that bear serial numbers 9SF0G3QM and 9QE70V5J, respectively. *Id.*

35.     On October 27, 2017, the parties had a telephone conference and Daniel confirmed that these two servers are indeed physical electronic servers of the Judgment Debtors. Consequently, in addition to the issues noted above, this clearly demonstrates that Cnaan either lacks sufficient knowledge or the Cnaan Declaration was purposefully inaccurate.  Regardless, Cnaan Declaration is inaccurate, and the Judgment Debtors have failed to turnover their servers on or before October 21, 2017, which conclusively establishes that the Judgment Debtors are in contempt of the Court's Discovery Orders and October 11 Orders.

36.     On October 27, 2017, Daniel did direct Tic Tac to deliver these additional servers to Force Majeure.  A copy of Daniel's October 27, 2017 e-mail is attached as **Exhibit F**.

37.     On October 30, 2017, Daniel e-mailed Tic Tac and counsel for MAG to clarify that the "Server AC-MERHAV" and backups of the "Server FL-MERHAV HASHAVSHEVET"

were in the possession of Tic Tac, and again directed Tic Tac to deliver those items to Force Majeure.    In addition, Daniel explained that the original "Server FL-MERHAV HASHAVSHEVET" was taken from Tic Tac by Maiman's driver in March 2014 and thus was in the possession of the Judgment Debtors since that time.  However, as of the date of this filing, Force Majeure has not received any of these servers or backup materials.  Also, to date, the Judgment Debtors have not provided any additional information relating to these servers or the "categories of information" contained on them.  A copy of Daniel's e-mail communications is attached as **Exhibit G**.

38.    Meanwhile, on October 22, 2017, the Merhav Employees submitted an urgent request to the Israeli court for a temporary injunction regarding their e-mails, and named Force Majeure, MAG, and Judgment Debtor Merhav as defendants in the proceeding.

39.    On October 23, 2017, the Israeli court held a hearing regarding this urgent request.  MAG's Israel-based counsel has advised MAG that, during this hearing, Judge Itzkowitz inquired as to whether the parties could reach an agreement as to the e-mails and conduct an electronic, term-based search, much like this Court directed in the June 23, 2017 Order.  However, Edri, counsel for the Merhav Employees, rejected this potential resolution out of hand.  Consequently, the Israeli court rescheduled this matter for November 2, 2017 to provide MAG's Israel-based counsel an opportunity to cross-examine the Merhav Employees to determine whether their objections are genuine and based in good faith.

40.    Lastly, on October 25, 2017, the Judgment Debtors filed their response to MAG's motion to domesticate this Court's Judgment in Israel.  The domestication process was started after the deadline expired for the Judgment Debtors to appeal the Second Circuit's order to the

43219888;3

Supreme Court. Therefore, the domestication was not filed until the entire appellate process was over and the Judgment Debtors had exhausted any further efforts for relief.

41. Putting aside the substance of the response itself, which will be addressed by MAG's Israel-based counsel in the relevant Israeli court, the Judgment Debtors' response included a purported "Expert Opinion of Al J. Daniel, Jr." A copy of Daniel's 25-page expert "legal opinion" (the "Daniel Opinion"), which was submitted in English, is attached as **Exhibit H**. Notably, the Daniel Opinion omits the salient fact that Daniel is the Judgment Debtors' attorney in these proceedings. Instead, it merely states that Daniel was retained to provide a "legal opinion."

42. A cursory review of the Daniel Opinion demonstrates that Daniel is misrepresenting the proceedings here and that this purported "legal opinion" is aimed at undermining the finality of the Court's Judgment, and essentially rearguing that the Judgment should have no effect in Israel. Notwithstanding the Court's comprehensive summary judgment ruling, which was subsequently affirmed by both the District Court[1] and the Second Circuit,[2] the Daniel Opinion advises the Israeli court that this Court denied the Judgment Debtors a "fair and reasonable opportunity to defend themselves from [MAG's] claims of breach of promissory note and guaranty," "lacked personal jurisdiction over [the Judgment Debtors]," and "lacked subject matter jurisdiction over [MAG's] claims against [the Judgment Debtors]." *Id.* at 25.

43. Not only is the Daniel Opinion clearly biased, it is improper and falsely opines on settled law and binding precedent established in this case. At a minimum, this Court should instruct Daniel, as an officer of the court with the associated ethical obligations, to withdraw his

---

[1] *In re: Ampal-American Israel Corp.*, 15-cv-7949 (JSR), 2016 WL 859352 (S.D.N.Y. Feb. 28, 2016).
[2] *In re: Ampal-American Israel Corp.*, 677 F. App'x 5 (2d Cir. Feb. 9, 2017).

43219888;3

"legal opinion" as it directly conflicts with the binding legal opinions of this Court, the District Court, and the Second Circuit.

44.      The Israeli court reviewing the domestication issue has provided MAG's Israel-based counsel with thirty (30) days to file MAG's opposition to the Judgment Debtor's response and the Daniel Opinion.

## ARGUMENT AND RELIEF REQUESTED

Based on the foregoing, and as more fully set forth below, MAG seeks a finding from this Court that the Judgment Debtors have violated the October 11 Orders, that they remain in violation of the Discovery Orders, and the imposition of additional sanction against them Judgment in the form of increasing the daily fine to $10,000 until their contempt is purged.

## A.      **The Contempt Order**

### 1.      *The Judgment Debtors*

First, the Court's Contempt Order found that the Judgment Debtors waived the privacy argument, and that neither they, nor their agents, could seek an order from the Israeli court to enjoin the enforcement of the Court's Discovery Orders. *See* Contempt Order at ¶ 2(a), (b).

MAG contends that the Judgment Debtors have violated that portion of the Contempt Order insofar as the Judgment Debtors' agents, *i.e.*, the Merhav Employees and/or Edri (an attorney of the Judgment Debtors), have initiated a new lawsuit against MAG and Force Majeure and "against" the employer Merhav (whom she is representing in other proceedings), that seeks the very injunction that the Court has barred the Judgment Debtors from pursuing. The coordination of the Judgment Debtors' delivery of the physical electronic server with the Merhav Employees' "new" counsel sending the cease and desist letter to Force Majeure is far from coincidental, and is only bolstered by the fact that Edri is counsel for the Judgment Debtors in

other matters.  To the extent the Judgment Debtors are coordinating, controlling, financing, or otherwise pursuing the Merhav Employees' effort to block the enforcement of the Discovery Orders, the Court should find that the Judgment Debtors are in violation of the Contempt Order as they (or their agents) are pursing the very injunction that the Court has deemed to be improper.

At a minimum, because Edri is the Judgment Debtors' counsel on other matters, Edri is the Judgment Debtors' agent, and therefore Edri's pursuit of an order enjoining the Court's Discovery Orders and/or October 11 Orders is a clear violation of the Contempt Order. Alternatively, MAG requests leave to take discovery on these issues.

Second, the Contempt Order required the Judgment Debtors to identify any and all physical electronic server(s) and have those server(s) delivered to Force Majeure by no later than October 21, 2017.  *Id.* at ¶ 2(c)-(e).  The Judgment Debtors, through the Cnaan Declaration, identified one server and delivered that server to Force Majeure on October 17, 2017.  *See* ¶ 17, *infra*.  In addition, the Contempt Order required the Judgment Debtors to "identify … the categories of information" on the servers.  *See* Contempt Order at ¶ 2(c).  MAG contends that the Judgment Debtors' obligation to identify the categories of information applies to both physical and cloud-based servers.  The Cnaan Declaration is silent as to the information on the cloud-based servers, and its limited description of the contents of the physical server to containing "Microsoft Office Excel, Word, and PowerPoint programs and files, bookkeeping and other financial programs and files, and picture files" is purely generic.  *See* Cnaan Declaration at ¶ 6.

MAG contends that the identification of categories of information that is limited to identifying the programs that are installed or stored on the server fails to comply with the Contempt Order, as well as the lack of any information regarding the information contained on

43219888;3

the cloud-servers. In that sense, MAG contends that the Judgment Debtors have failed to comply with the Contempt Order or purge the contempt against them.

Moreover, on October 23, 2017, MAG identified at least two additional servers, described by Tic Tac as "Merhav" servers, that the Judgment Debtors have neither identified, nor delivered to Force Majeure. Based on this, and Daniel's October 27, 2017 and October 30, 2017 admissions that there are additional physical electronic Merhav servers that should have been disclosed, and were in the Judgment Debtors' possession, custody, or control, the Judgment Debtors have clearly violated the Court's ruling. In light of this, as well as the Judgment Debtors' failure to provide the ordered information, the Court should find the Judgment Debtors in violation of the Court's Contempt Order and Discovery Orders. MAG requests entry of an order finding that the Judgment Debtors have failed to purge the contempt and impose an increased per diem sanction of $10,000, commencing from November 1, 2017, until the Judgment Debtors properly purge the contempt.

  2.     *Lipa*

In the Contempt Order, the Court reserved ruling on whether to impose sanctions against Lipa until it resolved the threshold personal jurisdiction question. MAG contends that the Court has personal jurisdiction over Lipa and submits that *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), which Lipa cited and relied on heavily during the October 3 hearing, does not conclusively establish that jurisdiction over Lipa is lacking.

Lipa contends that *Gucci America*, in a post-*Daimler* landscape,[3] overruled MAG's cited authorities, including, but not limited to, *Waffenschmidt v. MacKay*, 763 F.2d 711, 718-19 (5th Cir. 1985), which held that a domestic nonparty's knowing, intentional violation of an injunction is sufficient on its own to create specific personal jurisdiction to enforce the injunction against

---

[3] *Daimler AG v. Bauman*, 134. S.Ct. 746 (2014).

43219888;3

that party.  This position, however, is inaccurate.  Rather, *Gucci America* explained that there is

"no case" that has applied *MacKay* to a *foreign* non-party, but went on to explain that "[s]ince

the factual record has not been developed and the panel has not had the benefit of oral argument

or full briefing on the subject, we express **no view** on whether the exercise of specific jurisdiction

is appropriate in this case."  *Gucci America*, 768 F.3d at 138 (emphasis added).  Ultimately, the

Second Circuit did not hold that, as a matter of law, the court could not have jurisdiction over the

foreign non-party.   Instead, the Second Circuit remanded the case to the district court to

undertake the factual inquiry and test from *Daimler*.  At a minimum, the Court should conduct

this factual inquiry before resolving the personal jurisdiction question.

Separately, MAG acknowledges that Lipa filed a motion in the Israel Action that

effectively dismissed the Israel Action without prejudice, and that Lipa is no longer pursuing any

action in Israel relating to these proceedings – except for a pending motion for fees relating to

the Israel Action.   However, MAG contends that, much like its other filings, the dismissal filing

continues to misrepresent the facts of this case, the Court's authority, and the Court's ability to

resolve issues of Israel law.  At a minimum, this recent filing should be considered with Lipa's

other filings when ruling on the Contempt Motion.

**B.**    **The Withdraw Order**

Pursuant to the Withdraw Order, Judgment Debtor Maiman "or someone else with

personal knowledge" was ordered to submit a declaration that "identifies the location and

describes the categories of information on (1) any and all physical electronic servers that are in

the possession, custody, and control of the judgment-debtors, and (2) any other physical

electronic servers that the judgment debtors contend are not in their possession, custody, and

control but contain information responsive to the judgment creditor's discovery requests and

related Court orders." [Adv. Doc. No. 141 at ¶ 4]. As set forth above, the Cnaan Declaration fails to satisfy this requirement. Indeed, Cnaan's statements are vague and fail to sufficiently identify the basis of his knowledge, and Cnaan incorrectly identified the number of physical electronic servers within the possession, custody, or control of the Judgment Debtors. Therefore, MAG seeks an Order finding that the Judgment Debtors have not complied with the Withdraw Order and directing the Judgment Debtors to cure their violation.

As for KBT's withdrawal, for the reasons stated, MAG obviously cannot consent as there has not been compliance with the Withdraw Order.

**C.   The Daniel Opinion**

In addition to seeking discovery from the Judgment Debtors in Israel, MAG has also initiated proceedings to domesticate and enforce the Judgment in Israel. The acceptance of foreign judgments in Israel is regulated by the Foreign Judgment Enforcement Law, 5718-1958, 12 LSI 82 (1957-58) (Isr.) (the "Law"). And, "[s]o long as a court of competent jurisdiction renders a final and enforceable decision that is not repugnant to Israeli public policy, foreign judgments have the same effect as a judgment validly given in Israel." *GE Healthcare v. Orbotech, Ltd.*, No. 09-C-0035, 2009 WL 2382534, *7 (E.D. Wis. July 2, 2009) (discussing this Law and the relevant defenses).

However, in response to what should be an otherwise simple, administrative proceeding, the Judgment Debtors contend that the Judgment is unenforceable in Israel because this Court lacked subject matter jurisdiction over MAG's claim and personal jurisdiction over the Judgment Debtors, and that they were not provided a reasonable opportunity to defend against this lawsuit. Notably, Section 3(1) and Section 6(2) of the Law provide that a judgment will not be enforced in Israel if the "judgment was given by a court which – under the laws of the State of the court –

20

was [not] authorized to give the judgment" and if it is proven "that the defense was not afforded a reasonable opportunity to present arguments and produce evidence before the judgment was given." The Judgment Debtors' support for those arguments is predicated on the Daniel Opinion, which submits that this Court lacked jurisdiction and violated the Judgment Debtors' due process rights.

Without unnecessarily belaboring this point, Daniel is clearly and obviously wrong. Not only did this Court conclude otherwise, the District Court and the Second Circuit agreed. Daniel knows (or absolutely should know) that his arguments and "expert" legal opinion presented to the Israeli court are wholly unsupported and directly conflict with binding precedent from this very case and this Circuit. Instead, Daniel, on behalf of the Judgment Debtors, boldly submits his obviously biased and misleading opinion to the Israeli court. Not only is the legal opinion wrong, but it further misleads Daniel's role because it fails to acknowledge that Daniel is the Judgment Debtors' attorney in these proceedings. Daniel merely states that he "ha[s] been engaged by [the Judgment Debtors] to provide a legal opinion on pertinent United States law in this proceeding." *Id.* at 1. There is a stark difference between providing an unbiased opinion as a (purported) expert on Unites States law, and submitting argument on behalf of your clients under the guise of an expert opinion. Daniel's attempt to mislead the Israeli court is unacceptable and should be withdrawn. Moreover, at a minimum, Daniel should be required to articulate to ***this Court*** why his legal opinion should take precedent over the legal opinions of three federal courts.

As the Court is well aware, it has the inherent and statutory authority to sanction attorneys. In particular, 28 U.S.C. 1927 provides for monetary sanctions against an attorney "admitted to conduct cases in any court of the United States" who has abused the judicial process and improperly "multiplies the proceedings." While the Court does not have the authority to

43219888;3

sanction a party for conduct that occurred before another court, the Court may sanction an attorney whose conduct in another proceeding can be construed as part of these proceedings and that multiplies these proceedings. *See generally In re Galgano*, 358 B.R. 90 (S.D.N.Y. Bankr. 2007) (discussing the court's authority to sanction an attorney for conduct that took place in a state court proceeding); *In re Case*, 937 F.2d 1014 (5th Cir. 1991) (discussing sanctions in federal court for conduct transpiring in another court and implying that a federal court can sanction an attorney for conduct in a state court if that conduct can be "construed as part of the proceedings before the court issues … sanctions.").

To the extent the Daniel Opinion effects these proceedings and otherwise multiplies the overall litigation of the parties before this Court, including, but not limited to this filing, the Court would have the authority to issue an appropriate sanction order here. *Id.*; *see also Steffens v. Steffens*, 221 F.3d 1353, 4 (10th Cir. 2000). MAG reserves the right to seek appropriate sanctions against Daniel to the extent his "expert" legal opinion affects these proceedings. However, at a minimum, this Court is not obligated to turn a blind eye to Daniel's baseless "legal opinion" and, in the interests of candor and the mandate requiring attorneys to submit legally meritorious contentions, the Court should direct Daniel to withdraw his "legal opinion."

**WHEREFORE**, MAG respectfully requests that the Court (i) enter an Order finding the Judgment Debtors in violation of the Contempt Order and Withdraw Order; (ii) impose a per diem sanction against the Judgment Debtors of $10,000 commencing on November 1, 2017 until the contempt, as set forth in the October 11 Orders, is purged; (iii) directing attorney Al. J. Daniel, Jr. to withdraw his legal opinion in the Israeli domestication proceeding; and, (iv) grant such other and further relief as may be just and proper.

43219888;3

Dated: New York, New York
      October 30, 2017

AKERMAN LLP

By:   */s/ John P. Campo*
     John P. Campo
     Darryl R. Graham
     666 Fifth Avenue, 20th Floor
     New York, New York 10103
     Tel: (212) 880-3800
     E-mail: john.campo@akerman.com
     E-mail: darryl.graham@akerman.com

*Attorneys for MAG*

43219888;3