**COMPOSITE EXH. A**

**COPIES OF COUNSELS' E-MAIL EXCHANGES**

**Graham, Darryl (Ptnr-NY)**

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Wednesday, October 11, 2017 1:04 PM |
| **To:** | Campo, John (Ptnr-NY) |
| **Cc:** | Daniel A. Fliman; melliott@phillipsnizer.com; Julian D. Perlman Esq.; agoldstein@tarterkrinsky.com; aspizz@tarterkrinsky.com; Graham, Darryl (Ptnr-NY) |
| **Subject:** | Re: 14-02385-smb Order Re: Motion for Contempt |

Dear John,

I've forwarded the Contempt Order and your email to my clients and their Israel counsel.

I will advise you when I am informed as to how they will procedurally comply with the judge's order.

Regards,

Al

Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007
212 721 0902 | Cell 917 509 9956
AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

* This email and any files transmitted with it are privileged and confidential.  Its contents are intended solely for the recipient(s) indicated and may also be privileged.  If you are not the intended recipient, disclosing, copying, distributing, or taking any action in reliance on the contents of this email is prohibited.  If you have received this email in error, please delete it and notify is by email at AJD@DanielLawPLLC.com. *

> On Oct 11, 2017, at 12:40 PM, john.campo@akerman.com wrote:
>
> All,
>
>
> Now that the order has been entered in the  injunction/contempt action, please confirm whether your clients will consensually withdraw the Israel action.
>
> John
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> From: <nysbinfo@nysb.uscourts.gov>

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Thursday, October 12, 2017 12:36 PM |
| **To:** | Campo, John (Ptnr-NY) |
| **Cc:** | agoldstein@tarterkrinsky.com; Graham, Darryl (Ptnr-NY); Delpino, Reyko (Para-NY); aspizz@tarterkrinsky.com |
| **Subject:** | Re: Merhav Ampal v. Merhav MNF/Maiman |

Dear John,

In response to your email of yesterday regarding the Israel Labor Court proceeding, I am informed that counsel in Israel will submit a filing to that court next week to comply with Judge Bernstein's order.  Israel is in a holiday period which ends on Sunday.


Al


Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007
212 721 0902 | Cell 917 509 9956
AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

* This email and any files transmitted with it are privileged and confidential.  Its contents are intended solely for the recipient(s) indicated and may also be privileged.  If you are not the intended recipient, disclosing, copying, distributing, or taking any action in reliance on the contents of this email is prohibited.  If you have received this email in error, please delete it and notify is by email at AJD@DanielLawPLLC.com. *

> On Oct 12, 2017, at 12:16 PM, john.campo@akerman.com wrote:
>
> No problem Al.  In the meantime, do you have a response to my email inquiry from yesterday regarding confirmation that your clients are withdrawing the injunction portion of the Israel action?
>
> Sent from my iPhone
>
> On Oct 12, 2017, at 12:09 PM, Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> wrote:
>
> Thanks, John.
>
> Al
>
> Al J. Daniel, Jr.
> Daniel Law pllc
> 305 Broadway, FL 7

> New York, NY 10007-1188
> 212 721 0902
> Cell 917 509 9956
> www.DanielLawpllc.com
>
> Sent from my iPhone
>
> On Oct 12, 2017, at 12:08 PM, "john.campo@akerman.com" <john.campo@akerman.com> wrote:
>
>> Thanks Al. We will get back to you shortly.
>>
>> Sent from my iPhone
>>
>> On Oct 12, 2017, at 11:44 AM, Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> wrote:
>>
>> Dear John,
>>
>> I have been in communication with Merhav/Maiman's agents in Israel regarding the servers, etc.
>>
>> I am informed that they are arranging for the Oriental IT company in Israel to pick up the Merhav physical server(s) and deliver it/them to Force Majeure, plaintiff's IT co., on behalf of your client Merhav Ampal Group.
>>
>> The date has not been determined yet, but they are aware of the deadline.  It will facilitate the process to know the name of the person at Force Majeure who should be contacted about this.
>>
>> Would you please inform Force Majeure regarding the above and please obtain the name of the appropriate person at Force Majeure for our clients' agent and/or Oriental IT to contact to coordinate the date and time of delivery of the physical server(s) to Force Majeure?
>>
>> Thanks,
>>
>> Al
>>
>> Al J. Daniel, Jr.
>> Daniel Law PLLC
>> 305 Broadway, 7th Floor
>> New York, NY 10007
>> 212 721 0902 | Cell 917 509 9956
>> AJD@DanielLawPLLC.com
>> www.DanielLawPLLC.com
>>
>>
>>
>>
>> * This email and any files transmitted with it are privileged and confidential.  Its contents are intended solely for the recipient(s) indicated and may also be privileged.  If you are not the intended recipient, disclosing, copying, distributing, or taking any action in reliance on the contents of this email is prohibited.  If you have received this email in error, please delete it and notify is by email at AJD@DanielLawPLLC.com. *
>>
>>
>> vCard | Profile
>>

**EXHIBIT B**

**COPIES OF THE PETITION TO ERASE STATEMENT OF CLAIM
(ENGLISH TRANSLATION, CERTIFICATION, AND ORIGINAL HEBREW)**

At the regional labor court
<u>In Tel Aviv – Yaffo</u>
Before her honor,
Judge Hanna Trechtingot
Set for a hearing on
October 25, 2017

Labor dispute under juridical jurisdiction <u>17084-09-17</u>

<u>In the matter of:</u>

**1. Merhav M.N.P. Ltd. P.C. 510618556**
**2. Yossi Arieh Miman, good morning I.D. 012770533**
Both of them via their attorney advocate Shabtai Michaeli
and/or Assaf Segev and/or another advocate from the offices
of Lipa Meir & Co., advocates;
of 2 Weizman St. (Beit Amot Investments) Tel-Aviv 6423902
Telephone: +972-3-6070600; Fax: +972-3-6070666

<u>The Petitioners;</u>

**- Versus -**

**1. Force Majeure Ltd. P.C. 515713980**
of 6 Efal Street, Petach Tikva
Telephone; +972-3-6259898; Fax: +972-3-6259849

**2. The Merhav – Ampal Group Ltd. P.C. 513754077**
Via their attorney advocates Herzog, Fuchs, Neeman et al., of
Beit Asia, 4 Weizman St. Tel Aviv 64239.
Telephone; +972-3-6922020; Fax: +972-3-6966464

**3. Sabich Sailan I.D. 013616982**
**4. Leo Malmud I.D. 012770574**
**5. Irit Iluz, I.D. 022803076**
**6. Sharon Barkan, I.D. 024929911**
**7. Giora Bar Nir, I.D. 054701354**
**8. Yoram Peron, I.D. 024210163**
**9. Michael Mirkin, I.D. 304637168**
**10. Alfredo Rosenzweig, I.D. 13578146**
**11. Shelly Ronen, I.D. 058148271**

<u>The Respondents;</u>

## <u>A Petition to Erase the Statement of Claim</u>

Following, and on the basis of a "contempt of court" proceeding initiated by Respondent 2 against the Petitioners and their attorneys – including the office of the undersigned – at the court in New York, the agreements between the parties in the context of the hearing at the New York court on October 3, 2017, and the draft of the decision agreed by the parties as submitted to the New York court, the honored court is requested to instruct that the suit and the interim proceedings taking place within its framework be cancelled by way of erasing the Statement of Claim and the Application for Temporary Reliefs, and cancel the hearing set for October 25, 2017.

<u>And these are the reasons justifying the petition:</u>

1. On the dates June 23, 2017 and August 15, 2017, the New York court issued injunctions ordering the Petitioners to submit the Protected Information – all of the material present in the email boxes

and computer devices of Petitioner 1 – to Respondent 1 ("**the Respondent**"), so that the Protected Information may be used in the US proceeding ("**the American Injunctions**").

2. The problem is that a concern arose that should the Petitioners, who are Israelis located in the State of Israel, comply with the American Injunctions, this will abrogate the privacy rights of the employees of Petitioner 1 ("**the Employees**") under the 1981 Privacy Protection Law and the Iskov ruling.[1]

3. The Plaintiffs thus found themselves between 'a rock and a hard place". On the one hand, they are required to comply with the American Injunctions, while on the other hand, by complying with the American Injunctions they are liable to breach Israeli law and damage the rights of employees that are not and never were a party to the proceedings in the US, and may thereby become exposed to civil and perhaps even criminal proceedings against them.

4. It was therefore decided to petition the honored court to decide these matters as regards the law in Israel, wherein the employees are a party to the proceedings. It is obvious that a proceeding to which the employees are not a party – such as the proceeding in the US – cannot obligate the employees and therefore does not remove the concerns and the exposure that exist for the Petitioners. It is also clear that a proceeding to which the employees are a party can only be conducted in a court with Israeli jurisdiction, and not in New York, since it is not possible to vest any authority in regard to Israeli employees in this matter in an American court, but only in an Israeli one.

5. It should be emphasized that the Petitioners thought that the decision of the honored court here, will help – one way or another – the American court, which is unfamiliar with the law in Israel and cannot manage such a proceeding with the Employees.

6. Thus, on September 7, 2017 (submitted via messenger once more on September 11, 2017) the Petitioners submitted a petition for the awarding of urgent temporary injunctions to prevent Respondent 1 and/or whosoever is acting on its behalf to make any use of the Protected Information, as defined in the Statement of Claim, except after, pending and in accordance with the explicit consent received from each of the Employees in regard to his mailbox ("**the Petition for Temporary Reliefs**").

7. At the same time, the Petitioners submitted a Statement of Claim requesting that a permanent injunction be issued to bar Respondent 1 and/or whosoever is working on its behalf from making any use of the Protected Information, as defined in the Statement of Claim, except after, pending and in accordance with the explicit consent received from each of the Employees in regard to his mailbox.
   Alternatively, a declarative relief was claimed, according to which the transfer of the Protected Information to Defendant 1 and any use of it under the New York court injunctions do not constitute an action by Plaintiff 1 against the laws of Israel.

8. On September 10, 2017, the honored court instructed the Respondents to respond to the petition for temporary injunctions by September 12, 2017, and that a hearing attended by the parties be held on September 14, 2017.

9. On September 12, 2017, Respondent 2 submitted a petition, with the consent of the undersigned, for the extension of the date set for submitting a response on its behalf, and to postpone the hearing accordingly.

10. On September 13, 2017, the honored court granted the petition of Respondent 2, and extended the date set for submitting its response until September 25, 2017, and set the date October 25, 2017 for the hearing of the petition for temporary reliefs Inter Partes.

11. Not two days had gone by, before on September 15, 2017, Respondent 2 petitioned the United States Bankruptcy Court for the Southern District of New York to hold the injunctions issued by the court on June 23, 2017 and August 14, 2017 in contempt ("**the Petition to Hold in Contempt**").
   **Respondent 2 was even more extreme in petitioning for liability and sanctions for contempt <u>against the lawyers of Petitioners in the US and in Israel</u>, i.e., the office of the undersigned,** and this without there being any rivalry with the office of the undersigned or jurisdiction of the American court against the office of the undersigned.

---

[1] Labor appeal (national) 90/08 **Tali Iskov Inbar v. the State of Israel – the Supervisor of Women's Labor Law and others** (published in Nevo, issued on 8.2.2011).

12. The hearing of the Petition to Hold in Contempt has been set for October 3, 2017.
13. Yet, lo and behold, on September 24, 2017, Respondent 2 submitted an additional petition, contrary to the position of the Petitioners, to receive an additional extension for the submission of response on its behalf, and this up to October 15, 2017. In other words, after the time set for hearing the Petition to Hold in Contempt, and this was done with the clear aim of making the response and proceeding herein redundant.
14. The honored court acceded to the petition of Respondent 2 on that very day, but explicitly stated, with the agreement of both parties that "in order to remove any doubt, up to the time of the hearing Respondent 1 may make no use nor transfer any of the information transferred to it by the Petitioners."
15. The office of the undersigned was obliged to retain the services of an American law office, separate and different from the law office that represents the Petitioners in the contempt proceeding, in order to defend against the contempt proceeding (which one must confess, is a demeaning one) that has been forced on it unlawfully and unnecessarily.
16. On October 3, 2017, a hearing was held in the American court in the presence of the parties' attorneys – the Petitioners' attorneys, Respondent 2 as well as the lawyers that were retained by the office of the undersigned to represent them solely in the contempt proceeding.
17. In the context of the hearing, the American court instructed, inter alia, as follows ("**the Contempt Decision**"):
    17.1    The Petitioners were found liable for contempt of the American court. At the same time, they were given the option to "clear" themselves of this liability, if within 14 days, i.e., by July 17, 2017 they will act in accordance with the decisions of the American court and transfer the Protected Information to Respondent 1. Should they fail to do so, the Petitioners will be fined USD 1,000 per day.
    17.2    The Petitioners and their agents – including the office of the undersigned – will take steps to cancel the claim as far as it pertains to preventing the transfer of the Protected Information to Respondent 1. At the same time, the Petitioners are entitled to retain the alternative relief against the employees, i.e. the declaratory relief that compliance with the American injunctions does not constitute an abrogation of Israeli law against the employees.
    17.3    Respondent 2 will draft a judicial injunction reflecting the above, to be signed by the honored judge there.
18. It should be noted that as regards the jurisdiction against the office of the undersigned, the American court may have left the decision to a later stage, but from the transcription of the hearing it is clear that the position of the court that there is no jurisdiction, and even if there had been such jurisdiction, there is no cause to charge the office of the undersigned with contempt, but only the Petitioners.
19. It should be clarified that the contempt decision was given with the agreement of the Petitioners' Attorney.
Moreover, soon after the contempt petition hearing, there was an exchange of communications both verbally and in writing between the Petitioners' attorneys and the attorneys of Respondent 2, in order to formulate the court's draft injunction in agreement, in accordance with the guidance of the American court

If all this were not enough, the American attorney of the Petitioners Clarified and reiterated again and again for the American attorney of the Petitioner that the Petitioners will comply with the contempt decision in order to avoid the fine imposed in the contempt decision.

20. Therefore, in accordance with the decision of the American court, even the draft court order submitted to his honor, the American judge, for signing, was formulated with the agreement of the Petitioners' attorney (in addition to the agreement of the office of the undersigned).
    • A copy of the decision draft was sent on October 10, 2017 for the approval of his honor judge Stuart M. Bernstein, is enclosed as **Appendix A** of the petition.
21. It should also be clarified that the hearing of the Contempt Petition commenced on October 3, 2017 at 10:00 AM New York time, i.e. 17:00 Israel time, so that the information regarding what

transpired at the hearing was only transferred to the office of the undersigned late at night (close to midnight).

22. Beginning from October 4, 2017 and ending on October 15, 2017, the courts were on hiatus, and during that period the office of the undersigned was also on extended vacation, and it is for this reason that the petition is submitted immediately following the end of the vacation.

23. On October 12, 2017 (immediately following the holiday of Simchat Torah on Thursday night), the attorney of Respondent 2 – Advocate Abigail Borowitz – contacted the undersigned in regard to the said proceeding. The undersigned made it clear that in accordance with the contempt decision, and as already explained to the American attorneys of Respondent 2, the Petitioners will comply with the injunctions of the American court, including as regards the cancellation of the proceeding against the transfer of the Protected Information and/or its use. The undersigned clarified that the petition to erase the relief of preventing use of the Protected Information will be submitted immediately following the Succot vacation, and that it had not been submitted up until now because of the Succot vacation.

24. The attorney of Respondent 2 asked to respond in writing to said petition, and also requested 5 days to do so, in order that she may consult with the American attorneys of Respondent 2. The attorney of Respondent 2 clarified that she does not address said petition at this stage.

25. This is the place to comment that said petition should be granted regardless of the response of Respondent 2, since there is nothing in the petition that may be damaging to Respondent 2. One should also decree that the hearing set for October 25, 2017 is cancelled, preventing any additional expenses for the parties. At the same time, if Respondent 2 wishes to submit any petition, and it seems that it is considering a petition for the awarding of expenses – there is nothing to bar the submission of such a petition, and the Petitioners will respond to it accordingly. In any event, the honored court is requested to allow the Petitioners to respond within a reasonable time to each of Respondent 2's petitions regarding said petition, whether it objects to the petition or petitions for expenses.

26. Thus, in view of the circumstances detailed above, the honored court is requested to instruct as petitioned at the opening of the petition.

27. It would be both lawful and just to accede to the petition, for the reasons given within it.

[signature]                                                          [signature]
**Shabtai Michaeli, advocate**                                      **Assaf Segev, advocate**

                        Lipa Meir & Co., advocates, the Petitioners'
                        attorneys

**Today, October 15, 2017**



# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY 10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: October 18, 2017

**To whom it may concern:**

This is to certify that the attached translation from Hebrew into English is an accurate representation of the documents received by this office.

The documents are designated as:
- Petition to Erase Statement of Claim

Natalie Legros, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

*Natalie Legros*
_____
Signature of Natalie Legros

Accurate Translation Services 24/7

בבית הדין האזורי לעבודה          סע"ש 17-09-17084

בתל אביב - יפו          בפני כב' השופטת חנה טרכטינגוט

קבוע לדיון ביום 25.10.2017

בעניין :          1. מרחב מ.נ.פ. בע"מ, ח.פ. 510618556

2. יוסי אריה מימון, ת.ז 012770533

שניהם ע"י ב"כ עוה"ד שבתאי מיכאלי ו/או אסף שגב ו/או

עו"ד אחר ממשרד ליפא מאיר ושות', עו"ד,

מרחוב ויצמן 2 (בית אמות השקעות), תל אביב 6423902

טלפון : 03-6070600 ; פקסימיליה : 03-6070666

המבקשים ;

- נ ג ד -

1. פורס מאז'ור בע"מ, ח.פ. 515713980

מרחוב אפעל 6 פתח תקווה

טלפון : 03-6259898 ; פקסימיליה : 03-6259849

2. קבוצת מרחב – אמפל בע"מ, ח.פ. 513754077

ע"י ב"כ עוה"ד חרצוג, פוקס, נאמן ושות'

מבית אסיה, רח' ויצמן 4, תל אביב 64239

טלפון : 03-6922020 ; פקס : 03-6966464

3. סביח סיילן, ת.ז. 013616982

4. לאו מלמוד, ת.ז. 012770574

5. אירית אילוז, ת.ז. 022803076

6. שרון ברקן, ת.ז. 024929911

7. גיורא בר ניר, ת.ז. 054701354

8. יורם פירון, ת.ז 024210163

9. מיכאל מירקין, ת.ז. 304637168

10. אלפרדו רוזנצווייג, ת.ז. 13378146

11. שלי רונן, ת.ז. 058148271

המשיבים ;

## בקשה למחיקת כתב התביעה

בעקבות ועל יסוד חלוף זמנו של בית משפט ביזיון בית משפט, שנקטה המשיבה 2 כנגד המבקשים ובאי כוחם – לרבות

משרד תחיים – בבית המשפט בניו יורק, חסכמות הצדדים במסגרת הדיון בבית המשפט בניו יורק, מתבקש

מיום 3.10.17, וטיוטת ההחלטה המוסכמת על הצדדים שתוגשה לבית המשפט בניו יורק, מתבקש

בית הדין הנכבד להורות על ביטול התביעה והליכי הביניים במסגרתה, בדרך של מחיקת כתב

התביעה והבקשה לסעדים זמניים, וביטול הדיון הקבוע ליום 25.10.2017.

ואלו נימוקי הבקשה :

- 2 -

1.  בימים 23.6.17 ו-15.8.17 הוציא תחת ידיו בית המשפט בניו יורק צווים, לפיהם על המבקשים
    להעביר את המידע החסוי – כלל החומר המצוי בתוכנית החדוא"ל ובאמצעי המחשוב של עובדי
    המבקשת 1 – לידי המשיבה 1 (להלן: "**המשיבה**"), לטובת שימוש במידע חסוי בהליך
    בארצות הברית (להלן: "**הצווים האמריקאים**").

2.  דא עקא, כי עלה חשש שקיום הצווים האמריקאים על ידי המבקשים, שהנם ישראלים,
    במדינת ישראל, תביא להפרה של זכויות ופרטיות של עובדי המבקשת 1 (להלן: "**העובדים**",
    וזאת על פי חוק הגנת הפרטיות, תשמ"א-1981 והלכת איסקוב.[1]

3.  המבקשים נמצאו, אפוא, "בין הפטיש לסדן". מחד גיסא, הנם מחוייבים בקיום הצווים
    האמריקאים, ומאידך גיסא בקיום הצווים האמריקאים הם עלולים להפר את הדין בישראל
    ולפגוע בזכויות העובדים, שאינם ולא היו מעולם צד להליכים בארצות הברית, ובכך לחיות
    חשופים לחליכים אזרחיים ואולי אף פליליים כנגדם.

4.  לפיכך, הוחלט לפנות לבית הדין הנכבד, על מנת שיכריע בעניינים אלה בכל הנוגע לדין
    בישראל, וזאת כאשר העובדים הנם צד להליכים. ברי, כי הליך בו אין העובדים צד לחם –
    כגון חליך בארצות הברית – אינו יכול לחייב את העובדים, ועל כן אינו מסיר את החששות
    והחשיפות שקיימים למבקשים. עוד ברי, כי הליך בו העובדים הוא צד יכול להתנהל אך ורק
    בפני בית הדין המוסמך בישראל, ולא בניו יורק, שהרי לא ניתן לקנות סמכות כנגד עובדים
    ישראלים בעניין זה בית משפט אמריקאי, אלא בישראל.

5.  יודגש, כי המבקשים סברו כי הכרעת בית הדין הנכבד דכאן, תסייע – לכאן או לכאן – לבית
    המשפט האמריקאי שאינו מכיר את הדין בישראל ואינו יכול לנהל הליך שכזה עם העובדים.

6.  על כן, ביום 7.9.2017 (הוגש באמצעות שליח פעם נוספת ביום 11.9.2017) הגישו המבקשים
    בקשה לצוו מניעה ארעיים וזמניים דחופים, למנוע מהמשיבה 1 ו/או מי מטעמם לעשותם כל
    שימוש במידע חסוי, כהגדרתו בכתב התביעה, אלא לאחר, בכפוף ובהתאם לקבלת הסכמתם
    המפורשת של כל אחד מהעובדים ביחס לתיבת החדוא"ל שלו (להלן: "**הבקשה לסעדים
    זמניים**").

7.  בד בבד, חגישו המבקשים כתב תביעה למתן צו מניעה קבוע, אשר ימנע מהמשיבה 1 ו/או מי
    מטעמם לעשותו כל שימוש במידע חסוי, כהגדרתו בכתב התביעה, אלא לאחר, בכפוף
    ובהתאם לקבלת הסכמתם המפורשת של כל אחד מהעובדים ביחס לתיבת החדוא"ל שלו.

    לחליפין, נתבע סעד הצהרתי, לפיו העברת המידע חסוי 1 לידי התובעת, וכל שימוש בו,
    בהתאם לצווים של בית המשפט בניו יורק, לא מהווה משום פעולה של התובעת 1 בניגוד לדין
    בישראל.

8.  ביום 10.9.2017 חורה בית הדין הנכבד, כי על המשיבים לחגיב לבקשה לסעדים זמניים עד
    ליום 12.9.2017, וכי יתקיים דיון במעמד הצדדים ביום 14.9.2017.

---

[1] ע"ע (ארצי) 90/08 טלי איסקוב ענבר נ' מדינת ישראל - הממונה על חוק עבודת נשים ואח' (פורסם בנבו, ניתן ביום 8.2.2011).

9.    ביום 12.9.2017 הגישה המשיבה 2 בקשה, בהסכמת החי"מ, לארכה להגשת התגובה מטעמה ובהתאמה לדחיית הדיון.

10.    ביום 13.9.2017 נעתר בית הדין הנכבד לבקשת המשיבה 2, והאריך את המועד להגשת תגובתה עד ליום 25.9.2017, וקבע את יום 25.10.2017 לקיומו של הדיון בבקשה לסעדים זמניים במעמד הצדדים.

11.    לא חלפו יומיים, וביום 15.9.2017 הגישה המשיבה 2 בקשה לבית המשפט לפשיטת רגל בניו יורק לביזיון הצווים הצווים של בית המשפט מימים 23.6.2017 ו-14.8.2017 (להלן – **"הבקשה לביזיון"**).

**הגדילה לעשות המשיבה 2 עת ביקשה להטיל אחריות וסנקציות בביזיון גם על עורכי דינם של המבקשים באַרצות הברית וּבישראל, קרי משרד החי"מ, וזאת מבלי שיש יריבות עם משרד החי"מ או סמכות שיפוט של בית משפט אמריקאי כנגד משרד החי"מ.**

12.    הדיון בבקשה לביזיון נקבע ליום 3.10.2017.

13.    והנה, ביום 24.9.2017 הגישה המשיבה 2 בקשה נוספת, בניגוד לעמדת המבקשים, להארכה נוספת להגשת התגובה מטעמה, **וזאת עד ליום 15.10.2017**. כלומר, לאחר המועד שנקבע לדיון בבקשה העיקרית, וזאת במטרה ברורה לייתר את התגובה ואת הליך דכאן.

14.    עוד באותו חיום נעתר בית הדין הנכבד לבקשתו של המשיבה 2, אך קבע בצו מפורשות, בהתאם להסכמת הצדדים, כי "למען הסר ספק, המשיבה 1 לא תעשה עד למועד הדיון שימוש ולא תעביר את כל המידע אשר הועבר אליה עי"י המבקשים".

15.    משרד החי"מ נאלץ לשכור שירותי משרד עוי"ד אמריקאי, בנפרד ובשונה מממשרד עורכי דין שמייצגים את המבקשים בהליך הביזיון, וזאת כדי להתגונן מפני הליך הביזיון (תמבזח יש לומר) שנכפה עליו שלא בדין ושלא בצורך.

16.    ביום 3.10.2017 נערך דיון בבית המשפט האמריקאי במעמד בי"כ הצדדים – ב"כ המבקשים, המשיבה 2 וכן במעמד עורכי הדין אשר נשכרו על ידי משרד החי"מ לייצוגם חבלעדי בהליך הביזיון.

17.    במסגרת הדיון הורה בית המשפט האמריקאי, בין היתר, כדלקמן (להלן: **"החלטת הביזיון"**):

17.1    המבקשים נמצאו אחראים בביזיון בית המשפט האמריקאי. עם זאת, ניתנת להם האפשרות "לנקות" עצמם מאחריות זו, אם תוך 14 ימים, חיינו עד ליום 17.7.2017, יפעלו בהתאם להחלטות בית המשפט האמריקאי, ויעבירו את המידע המוגן לידי המשיבה 1. אם לא יפעלו בהתאם יחויבו המבקשים בקנס של $1,000 דולר ארחי"ב ליום.

17.2    המבקשים וסוכניהם – **לרבות משרד החי"מ** – יפעלו לביטול לביטול התביעה ככל שנוגעת למניעת העברת המידע המוגן לידי המשיבה 1. מנגד, המבקשים רשאים להותיר את

- 4 -

הסעד האלטרנטיבי כנגד העובדים, היינו סעד הצהרתי, כי קיום הצווים האמריקאים אינו מהווה הפרה של הדין הישראלי כנגד העובדים.

17.3 המשיבה 2 תנסח טיוטת צו שיפוטי המשקף את האמור לעיל, לחתימת כבוד השופט דשם.

18. יוער, כי לעניין סמכות השיפוט כנגד משרד החו"מ, בית המשפט האמריקאי אומנם הותיר את ההחלטה לשלב מאוחר יותר, אך מתמליל הדיון עולה בבירור כי עמדת בית המשפט הינה כי אין סמכות שיפוט, וכי אף אם הייתה סמכות שכזו, אין לחייב את משרד החו"מ בביזיון, אלא את המבקשים בלבד.

19. יובהר, כי **מחלטת הביזיון ניתנה בהסכמת ב"כ המבקשים.**

**יתירה מזו, סמוך לאחר הדיון בבקשת הביזיון החליפו דברים ב"כ המבקשים ובאי כוח המשיבה 2, בע"פ ובכתב, לשם ניסוח טיוטות הצו של בית המשפט, בהסכמה, בהתאם להנחיות בית המשפט האמריקאי.**

**ואם בכל אלה לא די, ב"כ המבקשים האמריקאי, הבהיר חזור והבהר לב"כ המבקשים האמריקאי, כי המבקשים יעמדו בהחלטת הביזיון, על מנת למנוע את הקנס שהוטל בהחלטת הביזיון.**

20. לפיכך, ובהתאם להחלטת בית המשפט האמריקאי, אף טיוטת צו בית המשפט שהוגשה לחתימת כבוד השופט האמריקאי, נוסחה בהסכמה בהסכמת של ב"כ המבקשים (בנוסף להסכמת ב"כ משרד החו"מ).

• העתק טיוטת נוסח ההחלטה שנשלחה ביום 10.10.2017 לאישורו של כבוד השופט סטיוארט מ. ברנשטיין, מצ"ב **כנספח א'** לבקשה.

21. עוד יובהר, כי הדיון בבקשת הביזיון החל ביום 3.10.2017 בשעה 10:00 בבוקר שעון ניו יורק, היינו 17:00 שעון ישראל, כך שהדיווח על הנעשה בדיון הועבר למשרד החו"מ רק בשעות הלילה המאוחרות (קרוב לחצות).

22. החל מיום 4.10.2017 ועד 15.10.2017 חלה הפגרה של בתי המשפט, ובמהלכה שחח משרד החו"מ בחופשה מרוכזת, ומכאן מוגשת הבקשה מיד בתום הפגרה.

23. ביום 12.10.17 (בצאת חג שמחת תורה ביום חמישי בערב) פנתה באת כוח המשיבה 2 - עו"ד אביגיל בורוביץ' - לחו"מ בנוגע להליך דנן. החו"מ הבהיר, כי בהתאם להחלטת הביזיון, וכפי שהובהר זה מכבר לבאי כוח המשיבה 2 האמריקאים, המבקשים יפעלו בהתאם להחלטת בית המשפט האמריקאי, ובכלל זה בנוגע לביטול החלק העובר הנעברת המידע המוגן ו/או אי שימוש בו. החו"מ הבהיר, כי הבקשה למחיקת הסעד למניעת שימוש חישמוש במידע המוגן תוגש מיד לאחר פגרת סוכות, וכי זו לא הוגשה עד כה בשל פגרת סוכות.

24. ב"כ המשיבה 2 ביקש להגיב בכתב לבקשת דין, ואף ביקשה 5 ימים לשם כך, כדי שיסתייע
בידיעה להיוועץ עם עורכי הדין האמריקאים של המשיבה 2. ב"כ המשיבה 2 הבהירה כי אין
היא מתייחסת בשלב זה לבקשת דין.

25. כאן המקום לציין, כי יש להיעתר לבקשת דין ללא הצורך בתגובת המשיבה 2, שהרי אין
בבקשה כדי לפגוע במשיבה 2. בכלל זה יש להורות על ביטול הדיון הקבוע ליום 25.10.2017,
ולמנוע הוצאות נוספות למי מהצדדים. מנגד, אם מבקשת המשיבה 2 להגיב בקשה כלשהי,
וככל הנראה מדובר בבקשה להתצאות, אין מניעה להגשת בקשה שכזו, עליה יגיבו המבקשים
בהתאם.

מכל מקום, בית הדין הנכבד מתבקש לאפשר למבקשים להגיב תוך זמן סביר לכל בקשה של
המשיבה 2 בנוגע לבקשת דין, בין אם תגגנד לבקשה ובין אם תתבקשנה הוצאות.

26. אשר על כן, נוכח הנסיבות המפורטות לעיל, מתבקשת בית הדין הנכבד להורות כמבוקש ברישת
הבקשה.

27. יתיה זה מן הדין ומן הצדק להיענות לבקשה, מנימוקיה.

<br><br><br>

שבתאי מיכאלי, עו"ד                אסף שגב, עו"ד

ליפא מאיר ושות', עורכי דין
ב"כ המבקשים

חיום 15 באוקטובר 2017

**EXHIBIT C**

**COPY OF THE EDRI LETTER**

Convenience Translation

## *Iris Edri, Adv.*                    איריס אדרי, עו״ד

---

*Dubnov House (1st Floor),*            בית דובנוב (קומה ראשונה),
*10 Dubnov st., Tel-Aviv 64732, Israel*   רח׳ דובנוב 10, תל-אביב 64732
*Tel: 972-3-6566661 Fax: 972-3-6566662*  טל: 6566661-03 פקס: 6566662-03

16/10/2017

Attn:                                    **Extremely Important**
Force Majeure Ltd.                       Without Prejudice
C/O Mr. Ran Levinsohn – CEO
6 Efal St, Petach Tikva
By fax – 03-6259849 (tel: 03-6259898)
As well as by email

Dear Sir or Madam,

**Re: Demand to Desist the Use and/or Inspection and/or Transfer of Contents of Electronic**
**Mail of Employees of Merhav M.N.P to a Third Party**

In the name of my clients, the employees of Merhav M.N.F. Ltd. (the "**Employer**"), I urgently write to you as follows:

1.  As is well known, pursuant to US court rulings, you have received – by way of the Employer as well as from Mr. Yossi Meiman, information that is located in the mail boxes of employees of the Employer (the "**Protected Information**").

2.  Such Protected Information was transferred to you pursuant to court rulings that were awarded in proceedings held in the USA between the Employer and Mr. Meiman against the Merhav Ampal Group Ltd., to which clearly employees of the Employer were not party, and did not participate in any form whatsoever, and there is inherently a doubt if they are at all subject to the jurisdiction of the US court.

3.  In any event, the Protected Information is defined under Israel law, and therefore **employees of the Employer are opposed to any inspection or any use thereof and its transfer to any third party whomsoever, they most certainly did not provide their consent to such as required by law.**

4.  There is no need to waste words with respect to the applicable laws and regulations in this regard with respect to employees' right to privacy and the prohibition of breaching such right to privacy by way of accessing the Protected Information and making any use thereof absent the consent of the employees. All use of the information in this regard constitutes a tortious act and is likely to even amount to a criminal deed. In this regard, we refer to, among other things: the Protection of Privacy Law, the Tort Ordinance, the Isaakov Case (Labor Case 90/08 Tali Isaakov v. the Commissioner of Women's Work), and others.

Convenience Translation

5.  In these circumstances, the Employer's employees intend on applying to the courts in the upcoming days, with a motion for the award of remedies that will prevent the use of the Protected Information and its transfer to a third party.

6.  **Accordingly, you are hereby requested to desist from inspecting, making any use of whatsoever or transferring the Protected Information to any third party whatsoever, in Israel or abroad, including the Ampal-Merhav Group or the liquidator of Ampal American Israel Corporation .**

7.  **You are hereby [warned] that in the event that you act against the demand of the employees and transfer or make use of the Protected Information, my clients will see you as responsible for the breach of their privacy and protected rights, as well as to all resulting damages, and will not hesitate to commence any action available to them, either on the criminal or civil plane.**

8.  As a post script we repeat and emphasize that any ruling otherwise that is awarded in a US court cannot legitimize the use of the Protected Information in light of the express opposition of the employees as presented above, and it does not apply to the employees. We further remind you that, in any event, further to the ruling of the Israel Labor Court of 24.9.17 awarded in the context of Labor Dispute 17084-09-17 you are prohibited from making any use of or transfer the Protected Information, **accordingly you are to desist from making any use of the Protected Information, and you shall allow the employees to apply to the courts to express their opposition to this matter.**


Respectfully,

[Signature]

Iris Edri, Adv.

# *Iris Edri, Adv.*    אירים אדרי, עו״ד

---

*Dubnov House (1st Floor),*  בית דובנוב (קומה ראשונה),
*10 Dubnov st., Tel-Aviv 64732, Israel*  רח׳ דובנוב 10, תל-אביב 64732
*Tel: 972-3-6566661 Fax: 972-3-6566662*  טל: 03-6566661 פקס: 03-6566662

16/10/2017

לכבוד

**דחוף ביותר**                    חברת פורס מאזור בע״מ

מבלי לפגוע בזכויות              (לידי מר רן לוינסון – מנכ״ל)

רח׳ אפעל 6, פתח תקווה

באמצעות פקס מספר 03-6259849 (טל 03-6259898)

ובאמצעות E-mail

א.ג.נ,

**הנדון: דרישה להימנע מעשיית שימוש ו/או עיון ו/או העברת תוכני תיבות דואר אלקטרוני של
עובדי חברת מרחב מ.נ.ג.פ לידי צד ג׳**

בשם מרשיי, עובדי חברת מרחב מ.נ.ג.פ בע״מ (להלן : "**המעסיק**"), הריני לפנות אליכם בדחיפות
כדלקמן :

1. כידוע, בהתאם להחלטות בית המשפט בארה״ב, הועברו לידיכם ע״י המעסיק ועי״י מר יוסי
   מימון, מידע המצוי בתיבות הדואר של עובדי המעסיק (להלן: "**המידע המוגן**").

2. מידע מוגן זה הועבר לידיכם מכח החלטות שניתנו בהליכים שהתנהלו בארה״ב בין המעסיק
   ומר מימון ובין קבוצת מרחב-אמפל בע״מ, אשר כמובן עובדי המעסיק, כלל לא היו חלק מהם,
   ולא השתתפו בהם, וממילא ספק אם בכלל כפופים הם לסמכות בית המשפט האמריקאי.

3. כך או כך, מדובר במידע המוגן על פי דיני מדינת ישראל, ואשר **עובדי המעסיק מתנגדים**
   **לעיון בו, לעשיית שימוש כלשהו בו ולהעברתו לידי צד ג׳ כלשהו, ובודאי שלא נתנו**
   **הסכמתם המפורשת לכך כנדרש על פי דין.**

4. אין צורך להכביר מילים אודות ההלכות והדינים הנוהגים בעניין זה, בדבר זכות העובדים
   לפרטיות ובדבר האיסור לפגוע בפרטיות זו באמצעות חדירה למידע המוגן ועשיית שימוש
   כלשהו בו בניגוד להסכמת העובדים. כל שימוש במידע זה בנסיבות העניין יהווה משום עוולה
   ועשוי אף לעלות כדי עבירה פלילית. לעניין זה ר׳, בין היתר: חוק הגנת הפרטיות, פקודת
   הנזיקין, הלכת איזקוב (ע״ע 90/08 טלי איסקוב נ. הממונה על עבודת נשים), ועוד.

5. בנסיבות אלה, וכוונת עובדי המעסיק לעתור לערכאות בימים הקרובים, בבקשה לקבלת
   סעדים שימנעו את השימוש במידע המוגן ואת העברתו לידי צד ג׳.

6. **אשר על כן הינכם נדרשים להימנע מלעיין, לעשות שימוש כלשהו או להעביר את המידע המוגן לידי צד ג' כלשהו, בארץ או מחוצה לה, לרבות קבוצת אמפל-מרחב או מפרק אמפל אמריקן ישראל קורפורייישן.**

7. **הינכם מותרים בזאת כי במידה ותפעלו בניגוד לדרישות העובדים, ותעבירו או תעשו שימוש במידע המוגן, כי אז מרשיי יראו בכם אחראים לפגיעה בפרטיותם ובזכויותיהם המוגנות, וכן לכל הנזקים שייגרמו להם בשל כך, ולא יהססו לנקוט בכל הליך העומד לרשותם, במישור האזרחי או הפלילי.**

8. בשולי הדברים נשוב ונדגיש כי כל החלטה ברוח אחרת שניתנה בערכאות בארה"ב אין בה כדי להכשיר את עשיית השימוש במידע המוגן לנוכח התנגדותם המפורשת של העובדים המובאת לפניכם כעת, היא אינה חלה על העובדים. נזכיר גם כי ממילא בהתאם להחלטת בית הדין לעבודה בישראל מיום 24.9.17 במסגרת סע"ש 17084-09-17 נאסר עליכם לעשות שימוש או להעביר את המידע המוגן, **ועל כן עליכם להימנע מלעשות שימוש במידע המוגן, ולאפשר לעובדים לעתור לערכאות מטעמם ולהביע את התנגדותם בנושא.**

*בכבוד רב,*

*איריס אדרי, עו"ד*

**COMPOSITE EXHIBIT D**

**COPIES OF E-MAIL EXCHANGES
REGARDING CNANN DECLARATION**

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Campo, John (Ptnr-NY) |
| **Sent:** | Monday, October 23, 2017 2:47 PM |
| **To:** | AJD@DanielLawPLLC.com; DFliman@kasowitz.com |
| **Cc:** | Arthur Goldstein; Alex Spizz Esq.; Graham, Darryl (Ptnr-NY); Kessler, Scott (Ptnr-NY); Delpino, Reyko (Para-NY) |
| **Subject:** | Merhav Ampal Group v. Merhav MNF and Yosek Maiman, 14-2385 (SDNY Btcy.) |

Dear Al,

We are in receipt of your letter to the Court and declaration. We have questions with respect to the declaration which we would like to receive responses to as soon as possible.

The declaration does not state how long Oriental has been providing computer services to MNF, how long Mr. Cnaan has been with Oriental, or how long he has been providing services to MNF. In addition, the description in paragraph 6 of what is contained on the server is general and vague, and seems to be discussing programs and files generically as opposed to what files are on the server.

With respect to the email cloud, the declaration describes Microsoft Corporation's clouds generically, and attaches an invoice for services beginning on July 10, 2017. The description in paragraphs 10 and 11 are, again, more generic than specific. Moreover, the declaration does not indicate how long MNF has been subscribing to Microsoft cloud and nor does it indicate whether these emails that are now on the cloud came from another source, including the server or another server.

Finally, paragraph 12 does not give sufficient detail with respect to the basis of Mr. Cnaan's information and belief as to the existence of other servers. For example, has he been handling MNF's computer system for a sufficient period of time to form a basis for his belief, and is he personally knowledgeable of the fact that there are no other servers or is this simply based on information that was provided to him by Mr. Maiman or some third party.

Please get back to us promptly with respect to these inquiries as they impact of position we will take with respect to the sufficiency of the information provided.

Moreover, I am copying Dan Fliman on this email because he has asked what our position was with respect to the sufficiency of the information provided as it relates to his motion to withdraw as counsel. Mr. Fliman has asked that we advise him by 4:00 PM as to our position. Based on the current declaration, we cannot consent. We will revisit that position as soon as we receive a response to the questions raised in this email.

John


Sent from my iPhone

On Oct 20, 2017, at 6:31 PM, Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> wrote:

Attached is my letter to Judge Bernstein pursuant to his Order of 10/11/17, with accompanying Declaration and Order of the Labor Court (Hebrew), which have been filed through the ECF system.

Al

Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007
212 721 0902 | Cell 917 509 9956
AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

* This email and any files transmitted with it are privileged and confidential.  Its contents are intended solely for the recipient(s) indicated and may also be privileged.  If you are not the intended recipient, disclosing, copying, distributing, or taking any action in reliance on the contents of this email is prohibited.  If you have received this email in error, please delete it and notify is by email at AJD@DanielLawPLLC.com. *
<144-2 Labor Court Order.pdf>
<144-1 Declaration of Uri Cnaan.pdf>
<144 Daniel Letter to Judge Bernstein.pdf>

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Wednesday, October 25, 2017 12:18 PM |
| **To:** | Campo, John (Ptnr-NY) |
| **Cc:** | Daniel A. Fliman; agoldstein@tarterkrinsky.com; aspizz@tarterkrinsky.com; Graham, Darryl (Ptnr-NY); Kessler, Scott (Ptnr-NY); Delpino, Reyko (Para-NY) |
| **Subject:** | Re: Merhav Ampal Group v. Merhav MNF and Yosek Maiman, 14-2385 (SDNY Btcy.) |

John,

Here is some of the additional information you requested in your email of Oct. 23, 2017 (2:46pm).

1.  Regarding Oriental's services to MNF:  I'm advised that Oriental has been providing tech services to MNF since 2010.

2.  Regarding how long Mr. Cnaan has been with Oriental:  I'm advised that he has been with Oriental since 2008.

3.  Regarding how long Mr. Cnaan has been providing services to MNF:  I'm advised he has been personally providing services to MNF, on behalf of Oriental, since February 2016 and has been "overlooking" (supervising) since 2010.

4.  Regarding "categories of information" description in para. 6:  You contend that the description given is "general and vague...as opposed to what files are on the server."  We disagree.  The judge's order of Oct. 11, 2017, para. 2(c), requires identification of "categories of information" on any "physical electronic server(s) ... in the Judgment Debtors' possession, custody, or control ..."  The order does not require a list of "what files are on the server," as you suggest.

Paragraph 6 of Mr. Cnaan's declaration describes "categories of information" that Merhav MNF's server contained: "Microsoft Office Excel, Word, and PowerPoint programs and files, bookkeeping and other financial programs and files, and picture files."  This satisfies the order's requirement of "categories of information."

As I recall, you and I negotiated about this specific provision when discussing the proposed orders and I believe I suggested "categories of information" so we would avoid disputes such as this as to whether any description was sufficiently detailed.  As you know, computer servers contain many thousands of individual files of all sorts.  An itemized detailed description of "what file are the server" would be voluminous and burdensome.  But most import, it is not required by the judge's orders.

John, the Merhav physical server was delivered to Force Majeure on October 17, 2017, so it can now access "what files are on the server" and doubtless can print out a complete list if that is wanted.  It does not really matter how detailed the description is or was—Force Majeure has direct access to all the files.  But Mr. Cnaan's description complies with the judge's orders.  Let's not have a major dispute about whether the description is sufficiently detailed before the judge.

5.  Regarding para. 12:  The information provided in 1, 2, and 3 above provides a more detailed basis for Mr. Cnaan's statement in para. 12 and show the basis for his statement.

 I expect to have an update of information regarding the Tic Tac server(s) matter you referred to in your email of later today, but more likely tomorrow.

Al

Al J. Daniel, Jr.
Daniel Law PLLC

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Wednesday, October 25, 2017 3:45 PM |
| **To:** | Campo, John (Ptnr-NY) |
| **Cc:** | Daniel A. Fliman; agoldstein@tarterkrinsky.com; aspizz@tarterkrinsky.com; Graham, Darryl (Ptnr-NY); Kessler, Scott (Ptnr-NY); Delpino, Reyko (Para-NY) |
| **Subject:** | Re: Merhav Ampal Group v. Merhav MNF and Yosek Maiman, 14-2385 (SDNY Btcy.)--Re Microsoft "Exchange Online" etc. |

John,

Here is more information in response to your questions of 10/23/17 (email at 2:46pm) concerning the Mr. Cnaan's declaration, the Microsoft Corporation "Exchange Online (Plan 1)," and the invoice attached to Mr. Cnaan's declaration of 10/17/17.

Microsoft's "Exchange Online (Plan 1)" is Microsoft's "cloud"-based email service, as explained on Microsoft's website at:

https://products.office.com/en-us/exchange/compare-microsoft-exchange-online-plans

As this website explains, "Exchange Online" is a "business-class email" service at a cost of $4.00 per user, on a monthly basis, with an annual commitment.

Microsoft's "Exchange Server" software has been a dominant email server software for corporations and law firms for many years, and has been installed on local computers and physical servers in offices, computer closets and computer rooms throughout the U.S. and elsewhere. The Exchange Server software is still available for licensing from Microsoft. See https://products.office.com/en-us/exchange/microsoft-exchange-server-licensing-licensing-overview

Microsoft "Exchange Online (Plan 1)" provides the same or similar services as "Exchange Server," but from Microsoft's "cloud" servers over the internet without the need to own and maintain computer hardware and Exchange server software in your own office.

This responds to the second paragraph in your referenced email:

1.  The description in paragraphs 10 and 11 of Mr. Cnaan's declaration is not generic—it is highly specific and describes a well-know Microsoft service for business email, as described on its website.

2.  As Microsoft's website above explains, Microsoft's "Exchange Online (Plan 1)" is an annual subscription service payable in monthly installments, The invoice (Ex. 2) attached to Mr. Cnaan's declaration is dated September 9, 2017 to Merhav (MNF) Ltd. for "Exchange Online" for the month of service from July 10, 2017 through August 9, 2017.

3.  The judge's order of Oct. 11, 2017, para. 2(c), requires defendants to "identify …"any and all 'email' or 'cloud' server(s) utilized by the Judgment Debtors, whether or not such 'email' or 'cloud' server(s) are in the Judgment Debtors' possession, custody or control …." It does not require the additional information your email seeks, i.e., the length of MNF's subscription to "Microsoft cloud" or about the source of the emails "now on the cloud …."

Nevertheless, I inquired and was informed that MNF has had a Microsoft "cloud" subscription for at least five or six years. If my clients are able to find more specific information about the period of the subscription, I will provide that.

As to the source of the emails on the "cloud" server, the order does not require that information, so I have not previously inquired as to that.  However, I will provide any additional information that is available about that.

It is also my understanding from the Kasowitz letter of July 23, 2017 (Dkt. 103) that defendants produced over 200,000 emails on July 19, 2017, and from Lipa firm Meir & Co. in Israel that a disk or disk with additional defendants' emails and a Privileged Log were delivered to Force Majeure in Israel on or about August 29, 2017.

Al

Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007
212 721 0902 | Cell 917 509 9956
AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

2

**EXHIBIT E**

**COPIES E-MAIL DATED OCTOBER 23, 2017**

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Campo, John (Ptnr-NY) |
| **Sent:** | Monday, October 23, 2017 6:28 PM |
| **To:** | AJD@DanielLawPLLC.com; DFliman@kasowitz.com |
| **Cc:** | MAngell@kasowitz.com; Arthur Goldstein; Alex Spizz Esq.; Graham, Darryl (Ptnr-NY); Kessler, Scott (Ptnr-NY) |
| **Subject:** | Merhav Servers |

Gentlemen,

It has come to our attention that, in addition to the server identified in Mr. Cnaan's declaration, Tic Tac Technologies ("Tic Tac") is in possession of at least two (2) physical electronic servers of the Judgment Debtors as set forth below.

Specifically, Tic Tac is in possession of: (1) a server described as "Server AC-MERHAV," with two (2)hard drives, model numbers BD0728A4B4 and BD07285A25, respectively, that bear serial numbers J20FHHBK and 3HZ6XRBE, respectively; and (2) a server described as "Server FL- MERHAV HASHAVSHEVET" with two (2) hard drives, model numbers ST3250310NS and ST3250620NS, respectively, that bear serial numbers 9SF0G3QM and 9QE70V5J, respectively.

Putting aside for the moment the inaccuracy of the declaration, we hereby  demand that your clients immediately direct Tic Tac to promptly deliver these servers over to Force Majeure, as required in the Court's Discovery Orders  and Contempt Order.  For you to do so will be brought to the Court's attention immediately.

John

**EXHIBIT F**

**COPIES OF DANIEL'S OCTOBER 27, 2017 E-MAIL**

**Graham, Darryl (Ptnr-NY)**

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Friday, October 27, 2017 2:24 PM |
| **To:** | Yoav@tictac.co.il |
| **Cc:** | agoldstein@tarterkrinsky.com; Daniel A. Fliman; aspizz@tarterkrinsky.com; Kessler, Scott (Ptnr-NY); Delpino, Reyko (Para-NY); Campo, John (Ptnr-NY); Graham, Darryl (Ptnr-NY) |
| **Subject:** | Transfer of 2 Merhav Servers & Drives in Inventory |

Yoav Silberstein, CEO
Tic Tac Technologies Ltd.
Data Recovery and Computer Forensics
www.tictac.co.il
Tel:    03-6131555 Direct: 03-7755800
Mobile: 0522-877477  Fax: 03-6131999
10 Hataas St. Ramat Gan 5251249 Israel

Dear Mr Silberstein:

I am counsel for Merhav (M.N.F.) Ltd. and Yosef A. Maiman.

I write to request that you deliver the two computer servers and related drives described below to the technology company Force Majeure, at your earliest convenience, preferably on this Sunday, if at all possible:

1.  "Server AC-MERHAV," with two (2)hard drives, Model Nos. BD0728A4B4 and BD07285A25, respectively, that bear Serial Nos. J20FHHBK and 3HZ6XRBE, respectively; and

2.  "Server FL- MERHAV HASHAVSHEVET," with two (2) hard drives, Model Nos. ST3250310NS and ST3250620NS, respectively, that bear Serial Nos. 9SF0G3QM and 9QE70V5J, respectively.

These servers and drives have been in Tic Tac's custody since approximately February 2014 pursuant to a written agreement with Tic Tac dated February 20, 2014 and an Agreed Order of the Bankruptcy Court in New York City, which is referenced in paragraph 3 of the Legal Terms of your agreement.

I understand that the work on this project has been completed and that you have been requesting that these servers and drives be removed.

This request will be confirmed by Arthur Goldstein, Esq., counsel for Alex Spizz, the Bankruptcy Trustee in the case referenced in your agreement.  You can reach Mr. Goldstein at 212-216-1119, agoldstein@tarterkrinsky.com.

Thank you for your cooperation.  Please contact me or Mr. Goldstein if you have any questions.

Sincerely yours,

Al

Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007

212 721 0902 | Cell 917 509 9956
AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

cc:

Arthur Goldstein, Esq.
Alex Spizz, Esq., Trustee
John Campo, Esq.
Darryl Graham, Esq.
Scott Kessler, Esq.
Reyko Delpino, Esq.
Daniel A. Fliman, Esq.


* This email and any files transmitted with it are privileged and confidential.  Its contents are intended solely for the recipient(s) indicated and may also be privileged.  If you are not the intended recipient, disclosing, copying, distributing, or taking any action in reliance on the contents of this email is prohibited.  If you have received this email in error, please delete it and notify is by email at AJD@DanielLawPLLC.com. *

**EXHIBIT G**

**COPIES OF DANIEL'S E-MAIL COMMUNICATIONS
DATED OCTOBER 30, 2017**

## Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Al J. Daniel, Jr. <AJD@DanielLawPLLC.com> |
| **Sent:** | Monday, October 30, 2017 10:20 AM |
| **To:** | Yoav@tictac.co.il |
| **Cc:** | Campo, John (Ptnr-NY); DFliman@kasowitz.com; Alex Spizz; Kessler, Scott (Ptnr-NY); Delpino, Reyko (Para-NY); Graham, Darryl (Ptnr-NY); s1kelsi@gmail.com; ran@f-m.co.il |
| **Subject:** | Fwd: Merhav Servers & Drives--Lost are found |

Dear Yoav, I've just been told that Merhav found the missing Merhav Hashavshevet server and 2 drives!

Arrangements are being made for delivery of that server and the drives to Force Majeure, either later today or tomorrow.

But you should still deliver the other Merhav physical server and 2 drives that you have to Force Majeure.

Thank you,

Al

Al J. Daniel, Jr.
Daniel Law PLLC
305 Broadway, 7th Floor
New York, NY 10007
212 721 0902 | Cell 917 509 9956

AJD@DanielLawPLLC.com
www.DanielLawPLLC.com

*** This e-mail and any files transmitted with it are privileged and confidential. Its contents are intended solely for the recipient(s) indicated and may also be privileged. If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete this e-mail from your system and notify Daniel Law PLLC immediately by e-mail atAJD@DanielLawPLLC.com. ***

> Begin forwarded message:
>
> From: "Al J. Daniel, Jr." <ajd@daniellawpllc.com>
> Subject: Re: Merhav Servers & Drives
> Date: October 30, 2017 at 9:53:07 AM EDT
> To: Yoav Silberstein <Yoav@tictac.co.il>
> Cc: "john.campo@akerman.com" <john.campo@akerman.com>, "DFliman@kasowitz.com" <DFliman@kasowitz.com>, Alex Spizz <aspizz@tarterkrinsky.com>, "Scott.Kessler@akerman.com" <Scott.Kessler@akerman.com>, "reyko.delpino@akerman.com" <reyko.delpino@akerman.com>, "darryl.graham@akerman.com" <darryl.graham@akerman.com>, "s1kelsi@gmail.com" <s1kelsi@gmail.com>
>
> Thank you for your prompt attention, Yoav.

1

>
> Regards,
>
> Al
>
> Al J. Daniel, Jr.
> Daniel Law PLLC
> 305 Broadway, 7th Floor
> New York, NY 10007
> 212 721 0902 | Cell 917 509 9956
>
> AJD@DanielLawPLLC.com
> www.DanielLawPLLC.com
>
>
>
>
> *** This e-mail and any files transmitted with it are privileged and confidential. Its contents are intended solely for the recipient(s) indicated and may also be privileged. If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete this e-mail from your system and notify Daniel Law PLLC immediately by e-mail atAJD@DaniellawPLLC.com. ***
>
>> On Oct 30, 2017, at 9:37 AM, Yoav Silberstein <Yoav@tictac.co.il> wrote:
>>
>> Al,
>>
>> The following drives and and server , are ready for pickup:
>> <image003.jpg>
>> <image004.jpg>
>>
>> The copy of Hashsevet server – Seagate s/n Z1D6NQL3 that contain the 2 drive images, is ready for pickup as well.
>> Please ask Mr. Levinson to call me to coordinate the pickup +972-522-877477
>>
>> Best regards
>>
>> Yoav.
>>
>>
>> <image002.gif>
>>
>> Yoav Silberstein
>> CEO
>>
>> Tic Tac Technologies Ltd.
>> Data Recovery and Computer Forensics
>> www.tictac.co.il
>> Tel:    03-6131555 Direct: 03-7755800
>> Mobile: 0522-877477  Fax: 03-6131999
>> 10 Hataas St. Ramat Gan 5251249 Israel
>>
>> From: Al J. Daniel, Jr. [mailto:AJD@DanielLawPLLC.com]

>> Sent: Monday, October 30, 2017 3:18 PM
>> To: Yoav Silberstein
>> Cc: john.campo@akerman.com; John P. Campo; DFliman@kasowitz.com; Alex Spizz; Scott.Kessler@akerman.com; reyko.delpino@akerman.com; darryl.graham@akerman.com; s1kelsi@gmail.com
>> Subject: Merhav Servers & Drives
>>
>> Dear Mr. Silberstein,
>>
>> This will confirm our phone conversations and emails regarding two so-called Merhav servers and two hard drives with each server that were delivered to Tic Tac in February 2014, which I requested be delivered to Force Majeure in my email to you on October 27, 2017.
>>
>> You advised that you have one of the Merhav servers and drives, but that the Merhav Hashavshevet server and drives listed below were picked up by Gili, with the approval of Shlomi Kelsi and Yoram Firon in March 2014.
>>
>> <image001.png>
>>
>> You also advised that you have backup copies of the hard drives for the Merhav Hashavshevet server.
>>
>> Merhav MNF and Mr. Maiman have been unable to locate this server and its drives.
>>
>> So, I request that you deliver to Force Majeure the physical Merhav server and two drives that you do have, along with backup copies of the missing Merhav Hashavshevet server and drives, as soon as possible.
>>
>> I understand that the Ran Levinson, CEO of Force Majeure, is coordinating with Tic Tac to arrange the delivery.
>>
>> Thank you for all of your help in this matter.
>>
>> Regards,
>>
>> Al
>>
>> Al J. Daniel, Jr.
>> Daniel Law PLLC
>> 305 Broadway, 7th Floor
>> New York, NY 10007
>> 212 721 0902 | Cell 917 509 9956
>>
>> AJD@DanielLawPLLC.com
>> www.DanielLawPLLC.com
>>
>>
>>
>>
>> *** This e-mail and any files transmitted with it are privileged and confidential. Its contents are intended solely for the recipient(s) indicated and may also be privileged. If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete this e-mail from your system and notify Daniel Law PLLC immediately by e-mail atAJD@DanielLawPLLC.com. ***
>

# EXHIBIT H

## COPY OF DANIEL'S OPINION

# DANIEL LAW PLLC

## IN THE DISTRICT COURT
## FOR TEL AVIV, ISRAEL

—————————————————————————— x

*In Re* MERHAV AMPAL GROUP, LTD.,

*Petitioner,*

*against*

MERHAV (M.N.F.) LIMITED and YOSEF A. MAIMAN,

*Respondents,*

—————————————————————————— x

On Motion to Enforce a Foreign Judgment in the United States
Pursuant to the Foreign Judgments Enforcement Law, 5718-1958

### EXPERT OPINION OF AL J. DANIEL, JR.
### ON BEHALF OF RESPONDENTS
### MERHAV (M.N.F.) LIMITED and YOSEF A. MAIMAN

October 23, 2017

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                    1

21c

## DANIEL LAW PLLC

### DECLARATION

I, AL J. DANIEL, JR., having been advised that I am compelled to tell the truth and that if I fail to do so, I am liable for punishments allowed by the law of Israel, declare as follows:

I have been engaged by Respondents MERHAV (M.N.F.) LIMITED ("Merhav MNF"), a private company registered in the State of Israel, and YOSEF A. MAIMAN ("Maiman"), a citizen and resident of the State of Israel (collectively "Respondents"), to provide a legal opinion on pertinent United States law in this proceeding.

Petitioner Merhav Ampal Group, Ltd., an Israeli entity, ("Petitioner" or "Merhav Ampal") seeks to enforce in Israel a Foreign Judgment entered against Respondents on September 15, 2015, in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") in the amount of $28,085,157, plus interest, costs, and attorney's fees (Petition ("Pet."), Ex. 2) (the "Foreign Judgment"). The Foreign Judgment was granted in Summary judgment procedure based upon alleged breach by Merhav MNF of a promissory note and by Maiman of a guaranty, in the principal amount of $20,000,000, both payable to Petitioner in Israel, pursuant to an assignment from Ampal-American Israel Corporation ("Ampal-American"), a New York corporation and debtor in a Chapter 7 liquidation case in the Bankruptcy Court (Respondents' Exhibit 10 (Ps. Ex. D, 2008 Note, pp. 19-26, and Ps. Ex. E, Guaranty, pp. 1-19) ("Resp. Ex.").[1]

The Bankruptcy Court did not address the issue of personal jurisdiction over Respondents Merhav MNF and Maiman.

---

[1]    A list of Respondents' Exhibits is contained at the end of this Opinion. They are certified copies of documents from the courts involved in this case, with appropriate Apostilles attached.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                    2.

3¹ᵗ

# DANIEL LAW PLLC

The Bankruptcy Court concluded that it had subject matter over the claims against Respondents – neither of whom are debtors in bankruptcy proceedings before that court – based solely on the affidavits of Petitioner's managing director (Resp. Exs. 7 (Declaration of Shlomi Kelsi ¶¶ 5-6 (Dkt. 15), which speculated that, if the judgment against Respondents were collected in full, that after payment of Petitioner's own debts of almost $400 million, there would be surplus funds available for the debtor Ampal-American and that this case was thus "related to" the Ampal-American case, providing subject-matter jurisdiction under 28 U.S.C. §§ 157(c) and 1334(b).

### Issues Addressed by This Opinion

1. Whether the summary judgment procedure, as used by the Bankruptcy Court, deprived Respondents Merhav MNF and Maiman of the ability to fully and properly defend themselves.

2. Whether the United States Bankruptcy Court lacked international or personal jurisdiction over Respondents and/or lacked subject-matter jurisdiction over the claims against them.

### Materials Reviewed

In rendering my opinion, I have reviewed the court orders, opinions, and judgments attached as exhibits to Petitioner's Motion to enforce the Foreign Judgment, the affidavit of John P. Campo, and additional documents submitted by the parties in the Bankruptcy Court, the U.S. District Court, and the U.S. Court of Appeals, including the case documents referred to in Respondents' Exhibits 1 through 12 listed below. I also reviewed the U.S Constitution, U.S. statutes, and court decisions of U.S and New York courts concerning the issues involved.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM

3

4|c

## DANIEL LAW PLLC

### Background and Qualifications

I am a citizen of the United States of America and a resident of Manhattan in New York City, New York. I am the principal attorney in my law firm of Daniel Law PLLC, also located in Manhattan. I have been admitted to practice law in the State of New York since 1989, in the District of Columbia since 1973, and in the State of Arkansas since 1970. I am a member of the bar in those jurisdictions as well the Supreme Court of the United States (1973), the United States Court of Appeals for the Second Circuit (1981), the United States District Courts for the Southern and Eastern Districts of New York(1992), and the Bankruptcy Court for the Southern District of New York.

I served as an attorney on the Appellate Staff, Civil Division, of the United States Department of Justice in Washington, D.C. from 1978-1988. In that position, I represented the United States and its agencies by filing briefs and presenting oral arguments in all United States Courts of Appeals. During that time, I also worked with the Office of the Solicitor General of the United States in preparing filings in the Supreme Court of the United States, including petitions for writs of certiorari, briefs in opposition to such petitions, and merits briefs on such cases.

After moving to New York City, I continued to work for the Justice Department in its International Trade Field Office in Manhattan. There I represented the United States in customs and trade cases, trial and appellate, in the United States Court of International Trade and in the United States Court of Appeals for the Federal Circuit, the appellate court with jurisdiction over most appeals from the Court of International Trade. During the years that I was an attorney employed by the United States Department of Justice (1978-1990), I was admitted to twelve

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM 4

## DANIEL LAW PLLC

United States Courts of Appeals (First through Eleventh Circuits and Federal Circuit) and filed

briefs and presented oral argument in more than seventy appeals in those courts.

I have been in private practice in New York since 1990. My practice has primarily

involved dispute resolution and litigation in United States and New York State courts, trial and

appellate.

I received an LL.M. Degree in Trade Regulation from the New York University of Law

in New York City in 1992, a J.D. Degree in Law from the University of Arkansas School of Law

in Fayetteville, Arkansas in 1970, and a B.A. Degree from the University of Arkansas in

Fayetteville in 1965. I am a member of the Association of the Bar of the City of New York,

where I serve on the Federal Courts Committee and previously served on the Copyright and

Literary Property Committee, and am a member of the Copyright Society of the United States.

### Relevant Provisions of United States Constitution, Statutes, and Rules

Relevant provisions of the Constitution of the United States, as amended, United States

statutes, and United States court rules are set forth in the Appendix below.

### Proceedings in the United States Resulting in the Foreign Judgment

The United States Foreign Judgment is based upon alleged breach of (1) a promissory

note executed by Respondent Merhav MNF, payable in Israel to Ampal-American Israel

Corporation, a New York corporation, at its office in Herzliya, Israel, and (2) a guaranty of the

promissory note, executed by Respondent Maiman (Resp. Ex. 10 (Ps. Ex. D, 2008 Note, pp. 19-

26, and Ps. Ex. E, Guaranty, pp. 1-19)). The promissory note and guaranty were assigned by

payee Ampal-American to Merhav Ampal Group, Ltd., f/k/a Merhav-Ampal Energy, Ltd., an

Israeli corporation and indirect subsidiary of Ampal-American, with its office in Israel.

---

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                                    5

6 IC

## DANIEL LAW PLLC

The Foreign Judgment was entered by the Bankruptcy Court on September 21, 2015 (Pet.,
Exs. 2 and 4), on the basis of the summary judgment procedure in Rule 56 of the Federal Rules
of Civil Procedure ("Rule 56") (incorporated by Rule 7056 of the Federal Rules of Bankruptcy
Procedure ("Rule 7056").[2]

Under Rule 56, summary judgment was entered on the basis of affidavits and exhibits,
without live witnesses or a plenary trial. The Bankruptcy Court denied Respondents' request
under Rule 56(d) for an opportunity to obtain evidence relevant to their defenses through
conducting pre-trial discovery.[3] The Bankruptcy Court also dismissed Respondents' Third Party
Complaint against parties including Ampal-American's bondholders which Respondents claimed
were responsible for the failure of the ethanol production project and non-payment of the note
and guaranty.

The Bankruptcy Court's summary judgment on the merits was based exclusively on its
conclusion that the contract law of the State of New York established Respondents' breaches of
the note and guaranty as a matter of law. It concluded that Petitioner had presented a *prima facie*

---

[2]    Petitioner originally commenced its claims against Respondents on September 30, 2014,
by filing a Summons and a Motion for Summary Judgment in Lieu of Complaint in the Supreme
Court of the State of New York in Manhattan (Index No. 652697/2014). This procedure is
authorized by Section 3213 of the New York Civil Practice Law and Rules ("CPLR") for a claim
based on "an instrument for the payment of money only." Such a claim can be commenced by
the filing of a summons and notice of a motion for summary judgment, with supporting affidavits
and exhibits, without the need for a complaint and answer by the parties.
    Respondents filed a Notice of Removal of the case to the U.S. District Court, pursuant to
28 U.S.C. § 1452(a). The U.S. District Court then transferred the case to the Bankruptcy Court,
where the Foreign Judgment was entered.
[3]    "Discovery" in U.S. court cases refers to procedures for obtaining relevant information,
documents, and testimony from adverse parties and non-parties, including oral depositions,
interrogatories (written questions), requests for production of documents and things, and requests
for admissions. *See* Rules 26 through 37 of the Federal Rules of Civil Procedure ("F. R. Civ.
P.")

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                    6

✻ℓᶜ

## DANIEL LAW PLLC

case, that Merhav MNF had not shown triable issues as to a defense, and that Maiman's obligation on the guaranty was "absolute and unconditional," and that Respondents were prohibited from presenting evidence outside the promissory note and guaranty as a defense (Pet., Ex. 4, pages 21-27).

The promissory note and guaranty were part of a complicated corporate venture among a number of Israeli entities and investors to establish an ethanol production facility in the Republic of Colombia. Respondents' defenses included the claim that the parties' intention was to convert the note into equity in the project so the note was never supposed to be paid.. Respondents also sought to show that defamation and other misconduct of Israeli-based investors in the project had made it impossible to complete the financing for the Colombian project. The Bankruptcy Court barred Respondents from conducting any discovery needed to present evidence in support of these defenses (Pet., Ex. 4, pp. 28-29).

The Bankruptcy Court initially questioned whether it had subject matter jurisdiction over Petitioner's claims against Respondents because none of the parties were debtors in the bankruptcy case, the claims were private contract disputes, and all were Israeli citizens and residents. The Bankruptcy Court concluded that it had subject matter jurisdiction under 28 U.S.C. §§157(c) and 1334(b) (Pet., Ex. 4, pp. 14-20), which allow it to exercise jurisdiction over non-bankruptcy cases if they are "related to" a pending bankruptcy case. (see Appendix, below).

The Bankruptcy Court's conclusion that this case was "related to" the Ampal-American bankruptcy case was based solely on the hearsay affidavits of Petitioner's managing director concerning Petitioner's financial condition and his speculation that, if Petitioner collected the

---

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                                    7

## DANIEL LAW PLLC

entire amount claimed due from Respondents that there would be "surplus" funds available for

debtor Ampal-American (Resp. Ex. 7, ¶¶ 5-6).

The judgment was affirmed on appeal by the United States District Court for the

Southern District of New York ("U.S. District Court") on February 29, 2016 (Pet., Ex. 4). The

U.S. District Court's judgment was affirmed by the United States Court of Appeals for the

Second Circuit ("U.S. Court of Appeals") on February 9, 2017 (Pet., Ex. 5).[4] None of the courts

specifically addressed the subject of personal jurisdiction over Respondents, both Israeli citizens

and residents.[5]

### Opinion Regarding Summary Judgment Procedure Resulting in Foreign Judgment

In my legal opinion, the summary judgment procedure, as used by the Bankruptcy Court,

deprived Respondents Merhav MNF and Maiman of the ability to fully and properly defend

themselves. In addition, the Bankruptcy Court erred in denying Respondents permission to

conduct discovery needed by them to present their defenses and effectively respond to

Petitioner's motion for summary judgment, as expressly allowed by Rule 56(d). This erroneous

ruling denied Respondents the opportunity to obtain necessary evidence for their defenses and an

opportunity to present their defenses with live witnesses at a plenary trial, thus denied them due

---

[4]     Respondents did not seek further review of the U.S. Court of Appeals' affirmance of the Foreign Judgment. There was no further appeal as of right available to them. Their only possible remedy was to file a petition for a writ of certiorari with the Supreme Court of the United States, which that Court could accept or deny in its discretion. In recent years, the U.S. Supreme Court has received approximately 10,000 petitions for certiorari review each year. It has accepted fewer than 100 such cases to review per year.

[5]     The promissory note signed by Merhav MNF made no reference to personal jurisdiction in any United States court. The guaranty signed by Respondent Maiman did provide for personal jurisdiction in courts in Manhattan, though payment under the guaranty was due in Israel (Resp. Ex. 10 Ps. Ex. E, Guaranty, ¶ 5.4, p. 8).

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                          8

9 íc

## DANIEL LAW PLLC

process of law. Due process of law is guaranteed by the fifth amendment to the Constitution of
the United States. U.S. Constitution, amend. 5. *See* Appendix below.

Petitioner's complaint for breach of the promissory note by Merhav MNF and of the
guaranty by Maiman (Resp. Ex. 3) were determined by the Bankruptcy Court on the basis of
Petitioner's motion for summary judgment, which contended that there were no genuine issues of
material fact which required a plenary trial, and that Petitioner was entitled to judgment as a
matter of law based solely on the terms of the promissory note and guaranty, pursuant to Rule 56
(Resp. Ex. 5).

Respondents' Answer to the Complaint and opposition to the motion for summary
judgment, particularly their Rule 56.1 statement (Resp. Exs. 4 and 9), asserted numerous
defenses to Petitioner's claims and identified a number of genuine issues of material fact which
they contended required a trial and denial of summary judgment.

Respondents also requested permission to conduct discovery needed to fully respond to
the summary judgment motion, as provided in Rule 56(d) Resp. Ex. 8, Decl. of Fliman and Affid.
of Maiman). The Bankruptcy Court denied Respondents' request for discovery and entered
summary judgment.[6]

After the case was transferred to the Bankruptcy Court, Petitioner filed a Complaint on
October 23, 2014, setting forth its claim against Merhav MNF on the promissory note and
against Maiman on the guaranty (Resp. Ex. 3). Six days later, Petitioners requested a conference
with the bankruptcy judge for permission to file a motion for summary judgment, which was

---

[6]    The U.S. Bankruptcy Court also dismissed Respondents' Third Party Complaint against
Ampal's bondholders, whom they alleged were responsible, at least in part, for causing the
failure of the ethanol production project in Colombia, which was the purpose for the promissory
note and guaranty.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                              9

tel C

## DANIEL LAW PLLC

granted. Respondents filed an Answer on November 24, 2014, responding to the allegations of

the complaint and asserting sixteen affirmative defenses to the claims (Resp. Ex. 4).[7]

On December 23, 2014, Petitioner filed a motion for summary judgment in the U.S.

Bankruptcy Court, asserting in a separate Statement of Undisputed Fact that there were no

genuine issues of disputed facts which would require a trial (Resp. Ex. 6), a declaration of

Shlomi Kelsi (Resp. Ex. 7), and a memorandum of law, seeking entry of summary judgment

against Respondents as a matter of law.

Respondents opposed Petitioner's motion for summary judgment, filing an Affidavit of

Respondent Maiman (Resp. Ex. 8), a counterstatement responding to Petitioner's Statement of

Undisputed Fact (Resp. Ex. 9), and a memorandum of law explaining why summary judgment

was not justified, identifying material disputed issues of fact which required a trial, and

indicating that Respondents needed an opportunity for discovery of material facts in order to

fully respond to the motion for summary judgment (Resp. Ex. 8). Respondents'

Counterstatement identified a number of genuine issues of disputed fact which they contended

required a plenary trial (Resp. Ex. 9).[8]

---

[7]     Respondents' Answer included affirmative defenses of unclean hands, waiver, and
estoppel; breach of the covenant of good faith and fair dealing; tortious conduct by third parties;
wrongful acts by Debtor Ampal-American's bondholders; impossibility, among others.
[8]     Respondents disputed a number of Petitioner's alleged undisputed facts and listed
additional material facts which they asserted were in dispute, including issues concerning the
purpose of the note and related agreements and the malfeasance of the Ampal bondholders which
caused the failure of the project by defaming Respondents in the Israeli press, among other
things. Respondents' Response to Plaintiff's Rule 7056-1 Statement of Undisputed Material
Facts. Resp. Ex. 9).

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                              10

rlc

## DANIEL LAW PLLC

A motion for summary judgment under Rule 56 is a procedural device available in U.S.

District Courts and the Bankruptcy Courts and can be used by any party.[9] The purpose of a

motion for summary judgment is to determine whether there are genuine disputes as to material

facts which must be decided at a plenary trial before a judge or a jury. If the court concludes that

there are no genuine issues of material fact which require a trial to resolve, the judge can decide

the claims or defenses as a matter of law, without a trial, based solely on documents and

affidavits submitted to the court.

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." In the U.S. District Court or the Bankruptcy Court, the party seeking summary

judgment must file "a separate, short and concise statement, in numbered paragraphs, of the

material facts as to which the moving party contends there is no genuine issue to be tried ...,"

with a "citation to evidence which would be admissible, set forth as required by F. R. Civ. P.

56(c)."[10]

But "summary judgment will not lie if the dispute about a material fact is 'genuine,' that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]ll that is required is that

sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to

---

[9]     The various rules of procedure and Rules of Evidence for United States are
adopted by the Supreme Court of the United States, subject to review by the United States
Congress, pursuant to statute, 28 U.S.C. § 2072-2074.
[10]     Rule 56 is applicable in Bankruptcy Court adversary proceedings, such as this case, and
by Local Bankruptcy Rule 7056-1). The requirement of a separate statement of undisputed facts
or facts in dispute is required by Local Rule 56.1 of the United States District Courts for the
Southern and Eastern Districts of New York ("Local Rule"), and is also applicable in the
Bankruptcy Court.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                    11

12/c

## DANIEL LAW PLLC

resolve the parties' differing versions of the truth at trial." *Id.* at 249 (internal citation omitted).

"The evidence of the non-movant is to be believed, and all justifiable inferences to to be drawn in his favor." *Id.* at 255.

In the summary judgment proceeding before the Bankruptcy Court, Petitioner's Statement of Undisputed Material Facts (Resp. Ex. 6) recited various facts regarding the promissory note, guaranty, and other documents, which Petitioner considered sufficient to establish Respondents' liability as a matter of law, on the theory that there were no genuine factual disputes which required a trial.

Respondents disputed a number of the material statements regarding breach by Respondents in response to Petitioner's Statement of Undisputed Facts (Resp. Ex. 9). They were supported by an affidavit submitted by Respondent Maiman (Resp. Ex. 8) which identified five Additional Material Facts in Dispute (Resp. Ex. 9, p. 8), including the following:

> 1. The purpose of the 2008 Note was to provide initial financing for the Colombia Ethanol Project. (Maiman Aff. ¶¶ 3-4). The parties intended that the note be converted into equity in the project in lieu of repayment. (*See id.* ¶ 6). If the parties had known that this equity conversion would be thwarted by the malfeasance of third parties (*i.e.*, Ampal's bondholders), they never would have agreed to the terms of the loan. (*See id.* ¶¶ 6, 9, 19.)

Respondents' counsel also requested that the Bankruptcy Court defer ruling on summary judgment to allow Respondents to conduct discovery relevant to their defenses under Rule 56(d), which expressly allows the court to deny or defer ruling on the summary judgment motion to allow the opposer to conduct discovery (Resp. Ex. 8, Fliman Aff. ¶¶ 4-6). Respondents needed to conduct discovery regarding the conduct of Ampal-American's Bondholders and other persons whom Respondents claimed had interfered with and prevented completion of and financing for the Colombia Ethanol Project. *Id.*

13 /ᶜ

## DANIEL LAW PLLC

However, the U.S. Supreme Court has explained that summary judgment is not always appropriate in complex factual and legal situations:

> [S]ummary procedures, however salutary where issues are clear cut and simple,
> present a treacherous record for deciding issues of far-flung import, on which this
> Court should draw inferences with caution from complicated courses of
> legislation, contracting and practice (footnote omitted).

> We consider it the part of good judicial administration to withhold decision of
> the ultimate questions involved in this case until this or another record shall
> present a more sold basis of findings based on litigation or on a comprehensive
> statement of agreed facts.

*Kennedy v. Silas Mason Co.*, 334 US. 249, 256-257 (1948).

On September 2, 2015, the Bankruptcy Court issued an Opinion Granting Plaintiff's Motion for Summary Judgment (Pet., Ex. 1). This Opinion also denied Respondents' request for permission to conduct discovery they needed to properly defend themselves and respond to Petitioner's motion for summary judgment and to show that there was a need for a trial in the case (*Id.*, pp. 12-13, 28-29).

In my legal opinion, the summary judgment procedure, as used by the Bankruptcy Court, deprived Respondents Merhav MNF and Maiman of the ability to defend themselves. The Bankruptcy Court abused its discretion by denying Respondents request to conduct discovery to obtain necessary evidence to oppose summary judgment, and deprived Respondents of the right to fully defend themselves in opposition to Petitioner's motion for summary judgment. The court's ruling deprived Respondents of the opportunity to present the full context of the complex agreements of which the promissory note and guaranty were only a part and to present evidence of the events and circumstances which caused the inability to complete the financing and building of ethanol production facility in Colombia.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                    13

+k

# DANIEL LAW PLLC

The Bankruptcy Court's conclusion that Respondents could not present evidence outside

the note and guaranty is erroneous. The U.S. Court of Appeals reversed a partial summary

judgment on a promissory note counterclaim where the parties' relationship involved several

interdependent contracts, as is the case here. *Novick v. AXA Network, LLC*, 642 F.3d 304 (2d Cir.

2011). In so ruling, the U.S. Court of Appeals relied upon New York state contract law:

> *Whether the parties intended to treat both agreements as mutually dependent
> contracts,* the breach of one undoing the obligations under the other, *is a question
> of fact.* In determining whether contracts are separable or entire, the primary
> standard is the intent manifested, *viewed in the surrounding circumstances ....*

*Id.* at 312, quoting *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33,

42 (1972) (emphasis in original). The court added that in such circumstances, contractual

performance is interdependent:

> Furthermore, *each contract contains an implicit understanding that neither
> party will intentionally do anything to prevent the other party from carrying out
> his part of the agreement.*

*Novick v. AXA Network, LLC*, 642 F.3d at 312, quoting *Lowell v. Twin Disc, Inc.*, 527 F.2d 767,

770 (2d Cir. 1975) (internal quotation marks omitted (emphasis added).

There were numerous interrelated agreements among the parties involved in the ethanol

production project and these agreements should be considered together in interpreting

Respondents' obligations, *Novick v. AXA Network, supra*, as Respondents contended in the

Bankruptcy Court.

The summary judgment procedure authorized by Rule 56 is designed to determine

whether there are genuine issues of material fact for trial. *Anderson v. Liberty Lobby, supra*.

The Rule should not be used to prevent parties' right to conduct discovery and obtain the facts

and documents necessary to present a claim or defense at trial, where there are disputed issues of

rsk

## DANIEL LAW PLLC

material fact, or where the party opposing summary judgment needs discovery to obtain

necessary evidence to oppose summary judgment.

### Opinion Regarding Whether the Bankruptcy Court Lacked International or Personal Jurisdiction over Respondents And Lacked Subject-Matter Jurisdiction Over the Claims Against Them.

The U.S. Supreme Court has issued recent decisions reiterating the constitutional due

process principles which limit the personal jurisdiction of United States courts, particularly over

foreign persons and entities. These cases, discussed below, establish that the Bankruptcy Court

should not have exercised personal jurisdiction over Respondents, both citizens of Israel with no

significant ties to the United States for purposes of the claims at issue.[11]

The Judicial Branch of the United States government is established by Article III, Section

1 of the U.S. Constitution: "The judicial Power of the United States, shall be vested in one

supreme Court, and in such inferior Courts as the Congress may from time to time ordain and

establish." The United States Congress has established "inferior courts" under Article III of the

Constitution, *i.e.*, the U.S. Courts of Appeals and U.S. District Courts, whose judges who are

nominated by the President, confirmed by the Senate, and have lifetime tenure, "during good

Behaviour." *See* Appendix below.

Congress also enacted bankruptcy laws under Article I, Section 8, Clause 4 of the

Constitution of the United States, including the creation of bankruptcy courts, which are "units"

of U.S. District Courts. Bankruptcy judges are appointed by Courts of Appeals judges for a term

---

[11]    The rules of the courts do, however, provide that the defenses of lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process will be considered waived if not raised in a motion to dismiss or in an answer. F. R. Civ. P. 12(h) (incorporated by reference in F. R. Btcy. P. 7012(b)).

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                        15

16 F

## DANIEL LAW PLLC

of fourteen years and do not have the lifetime tenure or other rights of Article III judges. 28 U.S.C. § 151-152.[12]

### The Bankruptcy Court Lacked Personal Jurisdiction Over Respondents

Petitioner's breach of contract claims against Respondents began in the N.Y. Supreme Court, a trial court, by the filing of a summons and motion for summary judgment in lieu of complaint, under NY CPLR § 3213. No proof of service was ever filed by Petitioner in the case to establish if, when, or how Respondents were served with the summons and motion for summary judgment in the N.Y. Supreme Court (Resp. Ex. 1). After the case was removed to the Bankruptcy Court, Petitioner filed a Complaint which its counsel certified was served electronically upon Respondents' counsel in the case (Resp. Ex. 3, p. 10), but not upon Respondents.[13]

Respondent Merhav MNF is an Israeli corporation with its offices in Herzliya, Israel. Respondent Maiman is a citizen of Israel who also resides in Herzliya, Israel. Petitioner nowhere alleged that Merhav MNF was doing business in or had an office anywhere in New York or in the United States or that Maiman resided in New York or the United States or had any other ties which would establish a basis for personal jurisdiction.

---

[12]    Prior provisions of the bankruptcy law have been held unconstitutional because bankruptcy judges lack the rights of Article III judges and thus were not constitutionally allowed to enter judgments in certain types of cases. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (   ); *Stern v. Marshall*, ___ U.S. ___ (No. 10-179, June 23, 2011); *Executive Benefits Ins. Agency v. Arkison*, ___U.S.___ (No. 12-1200, June 9, 2014). These problems were remedied by Congressional amendments of the Bankruptcy Act.
[13]    Service on counsel instead of the party is appropriate once the party has been initially served with the summons and counsel has appeared in the case for the party. *See* F. R. Civ. P. 5 (incorporated by F. R. Btcy. P. 5).

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM
16

🕐 c

## DANIEL LAW PLLC

The promissory note and guaranty were payable by Respondents to Petitioner in Israel. In short, neither the parties to this lawsuit nor the contracts sued upon had anything to do with the United States, except that the note and guaranty were payable in U.S. dollars and had provisions that New York law would apply to the terms of the agreements.

Neither Petitioner's Complaint nor its motion for summary judgment establish any factual basis for the U.S. Bankruptcy Court to exercise of personal jurisdiction over Respondents (Resp. Exs. 3 and 6), except, arguably, a provision purportedly providing for venue of claims against Maiman in New York in the guaranty.

The promissory note signed by Merhav MNF does not have a provision consenting to be sued anywhere in the United States or providing for acceptance of service of process.

The guaranty signed by Maiman has a provision captioned "Consent to Jurisdiction" which purportedly provides that he can be sued in the U.S. District Court, or if it lacks jurisdiction, in the N.Y. Supreme Court (Resp. Ex. 10 (Ps. Ex. E, Guaranty § 5.4, p. 8). It also provides that delivery of any legal process by registered mail to his specified residence in Israel would be effective service of process. *Id.* This provision does not provide that Maiman consents to suit in the Bankruptcy Court. The fact that Petitioner initially filed suit in the N.Y. Supreme Court likely indicates that it did not believe that the U.S. District Court had jurisdiction over its claims.

Further, a purported "consent" to jurisdiction by private parties should not be sufficient in light of the U.S. Supreme Court's recent decisions reemphasizing the constitution limits of personal jurisdiction, particularly over foreign individuals and legal entities.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                    17

18^{1c}

## DANIEL LAW PLLC

Recent decisions of the U.S. Supreme Court have held that the U.S. Constitution significantly restricted the power of United States and state courts to obtain personal jurisdiction over foreign corporations and individuals. In *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746 (S.Ct. No. 11-965, Jan. 14, 2014), the U.S. Supreme Court held that a U.S. District Court in California lacked personal jurisdiction over Daimler AG, a German corporation, for claims brought by residents of Argentina for injuries and deaths that allegedly occurred in Argentina. Those plaintiffs claimed that Daimler AG was subject to personal jurisdiction in the United States because it had a U.S. subsidiary — Mercedes-Benz USA, LLC – organized in the State of Delaware with offices in the State of New Jersey, and did business in California and many other states. Nevertheless, the U.S. Supreme Court held that these contacts in the United States by Daimler AG's subsidiary were insufficient to subject Daimler AG to personal jurisdiction in California. *Daimler AG, supra*.

Many other recent decisions of the U.S. Supreme Court have establishing the limitation that the due process imposes on the power of courts to exercise personal jurisdiction over citizens and residents of foreign countries and of other states of the United States where they have no significant connections with the forum court. *Accord, Bristol-Myers Squibb Co. v. Superior Court*, ___ U.S. ___, (No. 16-466, June 19, 2017) (California court lacked personal jurisdiction Delaware corporation with offices in New York, which did business in California, over claims of non-resident plaintiffs who claimed no injury in California); *BNSF Railway Co. v. Tyrrell*, ___ U.S. ___, (No. 16-405, May 30, 2017) (state court in Montana lacked personal jurisdiction over railroad incorporated in Delaware and home office in Texas, even though railroad did business in Montana); *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115 (2014) (U.S.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM

18

rɡ|c

# DANIEL LAW PLLC

District Court in Nevada lacked personal jurisdiction over individual police officer in State of
Georgia related to his seizure of cash in Georgia); *Goodyear Dunlop Tires Operation, S.A. v.
Brown,* ___ U.S. ___, (No. 10-76, June 27, 2011) (North Carolina court lacked personal
jurisdiction over corporate subsidiaries of U.S. corporation in Luxembourg, Turkey, and France
for deaths of N.C. residents in accident in France).

Based upon these decision of the U.S. Supreme Court in *Daimler AG* and others, it
appears that the Bankruptcy Court lacked personal jurisdiction over Respondent Merhav MNF,
which is an Israel corporation with offices in Israel and no established presence in the United
States. Therefore, the court did not have international jurisdiction over MNF.

The same due process limitation on personal jurisdiction applies equally to individuals
and corporate entities. *Walden v. Fiore, supra.* The due process clause "does not contemplate
that a state may make binding a judgment . . . against an individual or corporate defendant with
which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington,* 326
U.S. 310, 319 (1945).

The U.S. Supreme Court recently reiterated that, "[i]n determining whether personal
jurisdiction is present, a court must consider a variety of interests ..., [b]ut the 'primary concern'
is 'the burden on the defendant.'" *Bristol-Meyers Squibb, supra,* slip op. 6 (citation omitted).[14]

---

[14]    The U.S. Supreme Court in *Bristol-Myers Squibb, supra,* slip op. 6, also identified
broader concerns:

Assessing this burden obviously requires a court to consider the practical
problems resulting from litigating in the forum, but it also encompasses the more
abstract matter of submitting to the coercive power of a State that may have little
legitimate interest in the claims in question. As we have put it, restrictions on
personal jurisdiction "are more than a guarantee of immunity from inconvenient
or distant litigation. They are a consequence of territorial limitations on the power

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                      19

$2o\lc$

# DANIEL LAW PLLC

The same principle applies to Respondent Maiman, a citizen and resident of Israel whose Guaranty provides that payments due to Petitioner are payable *in Israel*. The entire loan and guaranty transaction was for the purpose of establishing an ethanol production facility in the Republic of Colombia. None of the relevant circumstances establish any basis for personal jurisdiction over Respondent Maiman in a U.S. court or a court of any state within the United States, except possibly the supposed "consent to jurisdiction" provision in § 5.4 of the Guaranty. However, in light of the U.S. Supreme Court's strong decisions rejecting personal jurisdiction over a foreign corporate entities and individuals, the same principle should apply to Respondent Maiman, regardless of any supposed "consent."

The U.S. Supreme Court has made it clear that parties cannot "consent" to give a United States court subject-matter jurisdiction over cases which are not provided for under the U.S. Constitution or U.S. statutes. There does not seem to be any principled reason why a person can be held to have "consented" to personal jurisdiction where there is no factual basis for the court's exercise of personal jurisdiction over the person, a burden which is far greater for most foreign individuals than for most corporate entities. Therefore, the court did not have international jurisdiction over Maiman.

### The Bankruptcy Court Lacked Subject-Matter Jurisdiction of Petitioner's Case

The only possible basis for subject-matter jurisdiction over Petitioner's claims against Respondents in the Bankruptcy Court is if Petitioner could show that their private contract claims were "related to" Ampal-American's bankruptcy case under 28 U.S.C. §§ 157(c) and 1334(b). Petitioner's claims are based solely on its private contracts with Respondents. They do not arise

---

of the respective States." *Hanson* v. *Denckla*, 357 U. S. 235, 251 (1958).

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9958
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                    20

𝑢 ⎸c

## DANIEL LAW PLLC

under the U.S. Constitution, under the bankruptcy laws, or under the specific grounds for subject

matter jurisdiction of U.S. courts. U.S. Constitution, Art. III, Section 2 (Appendix, below).

The slender thread of subject matter jurisdiction in this case hangs on Petitioner's

contention, and the Bankruptcy Court's conclusion, that this case is "related to" Ampal-

American's bankruptcy case. But no admissible evidence was submitted to the court to support

that contention or conclusion.

The courts of the United States of America are courts of limited jurisdiction, meaning

that they only have the subject-matter jurisdiction and powers granted to them by the U.S.

Constitution or by legislation enacted by the United States Congress. The courts' "judicial

Power" under Article III, Section 2, for example, "shall extend to all Cases ... arising under this

Constitution, the Laws of the United States, and Treaties ..., to Controversies to which the

United States shall be a Party; ... to Controversies ... between Citizens of different States [of the

United States] ...." The private contract dispute of the parties in this case do not fall with any of

the categories of jurisdiction described in Article III, Section 2 of the Constitution.

United States courts will *sua sponte* question whether they have subject-matter

jurisdiction over a case. Parties cannot by agreement confer subject-matter jurisdiction on a

United States court. "[No action of the parties can confer subject matter jurisdiction upon a

federal court." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694,

702 (1982). The courts or the parties may challenge subject-matter jurisdiction at any stage of a

case, even in the U.S. Supreme Court. "[F]ederal courts have an independent obligation to

ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and

22|c

## DANIEL LAW PLLC

decide jurisdictional questions that the parties either over look or elect not to press." *Henderson*
*v. Shinseki*, 562 U.S. 428, 434 (2011).

The only evidence submitted by Petitioner to support its "related to" claim was a
declaration of Shlomi Kelsi, the managing director of Petitioner, in support of its motion for
summary judgment before the U.S. Bankruptcy Court. Shlomi explained that Petitioner was an
Israeli corporation and a wholly-owned subsidiary of Ampal Energy, Ltd., which was in turn a
wholly-owned subsidiary of the bankrupt Ampal, but that Ampal Energy was not an operating
company and was winding up its affairs (Resp. Ex. 7 (Kelsi Decl. ¶¶ 1-2, 4, Dkt. 15).

Shlomi's asserted that -- *if* Petitioner could collect the full amount it claimed due under
the promissory note and guaranty, plus interest, and if Petitioner, a non-operating company,
could pay its own substantial debts and taxes due -- he believed that there would ultimately be
surplus funds that Petitioner could pay to the Ampal bankruptcy estate (Resp. Ex. 7 (Kelsi Decl.
¶ 6, Dkt. 15).

Shlomi did not present any underlying business records to support his calculations, which
he summarized in two short paragraphs (Kelsi Decl. ¶¶ 5-6). Shlomi's unsupported, hearsay
statements regarding Petitioner's business records were inadmissible to prove his assertions.
Rule 1002 of the Federal Rules of Evidence ("Fed. R. Evid.") provides that "[a]on original
writing … is required in order to prove its contents unless these rules or a federal statute provides
otherwise." "Hearsay is not admissible unless …" there is a contrary statute or rule. Fed. R.
Evid. 802. There is an exception to the hearsay rule for records kept in the ordinary course of

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                    22

**DANIEL LAW PLLC**                                    23 tc

business, Fed. R. Evid. 803(6)(B), but Kelsi did not offer any such records, which require authentication by an authorized witness.[15]

Further, Shlomi's *assumption* that Petitioner would be able to collect the full amount of the judgment it sought in the case was pure speculation, unsupported by any evidence at all. Respondent Merhav Ampal is admittedly a non-operating company. Petitioner provided no evidence that Respondents could or would be able to pay to full amount of the judgment sought by Petitioner. Only hard, admissible evidence could establish these facts and Petitioner presented none.

Respondents opposed Shlomi's assertions that there was a basis for "related to" jurisdiction, pointing out that Petitioner was insolvent, had almost $400 million in debt of its own, and provided no support for his calculations, which were tenuous and speculative (Resp. Ex. 12, Defs. Submission Concerning Subject Matter Jurisdiction ¶¶ 7-10 (Dkt. 26)).

In my opinion, Shlomi's declaration failed to establish a factual basis for the Bankruptcy Court to exercise subject-matter jurisdiction over Petitioner's private contract claims against Respondents and that the U.S. Bankruptcy Court lacked subject-matter jurisdiction to enter the Foreign Judgment at issue here.

The U.S. Bankruptcy Court itself questioned whether it had subject-matter jurisdiction after the case was transferred to it by the U.S. District Court and requested submissions by the parties on that issue (Pet., Ex. 1, pp. 14-20). After considering those further submissions, the

---

[15]    Even the amount of interest claimed due by Kelsi was based on hearsay statements to Kelsi as reported to him by an accounting firm which did not submit a sworn statement (Resp. Ex. 10, Affidavit of Shlomi Kelsi ¶¶ 28-30, pp. 6-7 (Dkt. 24).

---

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                              23

24|c

## DANIEL LAW PLLC

U.S. Bankruptcy Court concluded that it did have subject-matter jurisdiction under 28 U.S.C.

§157(c) and granted summary judgment for Petitioner (Pet., Exs. 1 and 2).

Respondents appealed the U.S. Bankruptcy Court's judgment to the U.S. District Court,

which affirmed the summary judgment, as did the U.S. Court of Appeals. Both courts on appeal

concluded that there was subject-matter jurisdiction under the analysis of the U.S. Court of

Appeals in *In re Cuyahoga Equip. Corp,* 980 F.2d 110, 114 (2d Cir. 1992) (Pet., Ex 1, pp. 4-5;

Exhibit 6, page 86). Both the U.S. District Court and the U.S. Court of Appeals based their

conclusion that there was subject-matter jurisdiction solely on the basis of the unsupported

assertions in Shlomi's declaration. *Id.*

It may sometimes be a fine line between a case that is "related to" the bankruptcy

proceeding and one that is not, under 28 U.S.C. §§ 157(c) and 1334(b). The U.S. Court of

Appeals articulated its "test" for "related to" jurisdiction as follows:

> The test for determining whether litigation has a *significant connection* with a
> pending bankruptcy proceeding is whether its outcome might have any
> "conceivable effect" on the bankrupt estate.

*In re Cuyahoga, supra,* 980 F.2d at 114 ("related to" jurisdiction found). *But see Pacor, Inc. v.*

*Higgins,* 743 F.2d 984, 994-996 (3d Cir. 1984) and *In re Turner,* 724 F.2d 338, 341 (2d Cir.

1983) (no jurisdiction found). The U.S. Supreme Court has noted that "a bankruptcy court's

'related to' jurisdiction cannot be limitless ...," citing *Pacor, supra. Celotex Corp. v. Edwards,*

514 U.S. 300, 308 (1995).

In order for there to be a "'conceivable effect' on the bankruptcy estate," there must be

factual support for that conclusion. *In re Cuyahoga, supra,* 980 F.2d at 114. In this case, there

was no admissible evidence to support the conclusion.

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                                          24

**DANIEL LAW PLLC**

25/c

I believe this case falls on the no jurisdiction side of the line because the factual support for "related to" jurisdiction provided by the Shlomi declaration is speculative, conclusory, and unsupported by admissible evidence.

## CONCLUSION

For the foregoing reasons, I conclude that Respondents (1) were denied a fair and reasonable opportunity to defend themselves from Petitioner's claims of breach of the promissory note and guaranty, (2) that the U.S. Bankruptcy Court did not have personal jurisdiction over Respondents, and (3) that the U.S. Bankruptcy Court lacked subject-matter jurisdiction over Petitioner's claims against Respondents.

Respectfully submitted,

AL J. DANIEL, JR.

U.S. Passport No. 528566314

October 23, 2017
New York, New York

AL J. DANIEL, JR. ★ ADMITTED IN NY, DC & ARK.
305 BROADWAY, 7TH FLOOR ★ NEW YORK, NY 10007 ★ 212 721 0902 ★ CELL 917 509 9956
AJD@DANIELLAWPLLC.COM ★ WWW.DANIELLAWPLLC.COM                    25