UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:                                              :        Chapter 7
                                                    :
AMPAL-AMERICAN ISRAEL                               :        Case No. 12-13689 (SMB)
CORPORATION,                                        :
                                                    :
                Debtor.                             :
-----------------------------------------------     x
                                                    :
MERHAV AMPAL GROUP, LTD. f/k/a                      :        Adv. No. 14-02385 (SMB)
MERHAV-AMPAL ENERGY, LTD.,                          :
                                                    :
                Plaintiff,                          :
                                                    :
        – against –                                 :
                                                    :
MERHAV (M.N.F.) LIMITED and                         :
YOSEF A. MAIMAN,                                    :
                                                    :
                Defendants.                         :
-----------------------------------------------------x

## MEMORANDUM DECISION DENYING
## MOTION TO HOLD LIPA MEIR & CO.
## IN CONTEMPT AND AWARD SANCTIONS

**A P P E A R A N C E S:**

AKERMAN LLP
*Counsel to Plaintiff Merhav Ampal
  Group, Ltd. f/k/a Merhav-Ampal
  Energy, Ltd.*
666 Fifth Avenue, 20th Floor
New York, New York 10103

        John P. Campo, Esq.
        Scott M. Kessler, Esq.
            Of Counsel.

PHILILIPS NIZER LLP
*Counsel to Lipa Meir & Co.*
666 Fifth Avenue
New York, New York 10103

        Mark M. Elliot, Esq.
        Julian D. Perlman, Esq.
            Of Counsel.

KASOWITZ BENSON TORRES LLP
*Counsel to Merhav (M.N.F.) Limited
  and Yosef A. Maiman*
1633 Broadway
New York, New York 10019

> Daniel A. Filman, Esq.
> Joshua A. Siegel, Esq.
> Michele L. Angell, Esq.
> > Of Counsel.

DANIEL LAW PLLC
*Counsel to Merhav (M.N.F.) Limited
  and Yosef A. Maiman*
305 Broadway, 7th Floor
New York, New York 10007

> A. J. Daniel, Jr., Esq.
> > Of Counsel.

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Following the recovery of an approximate $28 million judgment against the defendants Merhav (M.N.F.) Limited ("Merhav") and Yosef A. Maiman ("Maiman" together with Merhav, "Defendants"), the plaintiff Merhav Ampal Group, Ltd. f/k/a Merhav-Ampal Energy, Ltd ("MAG" or "Plaintiff"), demanded post-judgment discovery from the Defendants. After repeated violations of the Court's orders compelling the production of responsive materials, the Defendants retained the Israeli law firm of Lipa Meir & Co. ("Lipa") to file a lawsuit in Israel seeking, *inter alia*, to enjoin compliance with the Court's discovery orders. In response, the Plaintiff filed the pending *Motion to Enjoin Defendants/Judgment Debtors from Pursuing Israeli Action and for Civil Contempt and Sanctions Against the Judgment Debtors and their Counsel for Violating the Court's Orders*, dated Sept. 15, 2017 ("*Motion*") (ECF Doc. # 116).) The *Motion* seeks to hold the Defendants and their U.S. and Israeli counsel in contempt.

2

The Plaintiff subsequently withdrew the *Motion* to the extent it was directed at U.S. counsel and the Court granted the *Motion* with respect to the Defendants. (*Order on Plaintiff/Judgment Creditor's Motion to Enjoin the Israel Action and Motion for Civil Contempt and Sanctions Against the Judgment Debtors and their Counsel for Violating the Court's Orders*, dated Oct. 11, 2017 ("*Contempt Order*") (ECF Doc. # 140).) The *Contempt Order* also enjoined Lipa from pursuing an injunction action in Israel regarding the enforceability of the aforementioned discovery orders entered by this Court but reserved decision on the question of whether the Court had personal jurisdiction over Lipa. (*Contempt Order* at ¶¶ 2(b) & 4.)

The Court concludes that the Plaintiff has failed to demonstrate the existence of personal jurisdiction over Lipa. Accordingly, the relief granted against Lipa in the *Contempt Order* is vacated, and the *Motion* is denied as to Lipa.

## BACKGROUND

MAG filed this action in New York State Court in 2014 against the Defendants alleging that they had breached certain agreements between the parties. Following removal to the United States District Court for the Southern District of New York (*Notice of Removal*, dated Sept. 24, 2014 (ECF Doc. # 1)), and referral to this Court, I granted summary judgment in favor of the Plaintiff, (*Opinion Granting Plaintiff's Motion for Summary Judgment*, dated Sept. 2, 2015 (ECF Doc. # 38), and entered a judgment in the amount of $28,085,157 plus pre and post-judgment interest. (*Judgment in Adversary Proceeding*, dated Sept. 21, 2015 ("*Judgment*") (ECF Doc. #40).) The *Judgment* was subsequently affirmed by the District Court, *In re Ampal-American Israel Corp.*, No. 15-CV-7949 (JSR), 2016 WL 859352 (S.D.N.Y. Feb. 28,

2016) and by the Second Circuit Court of Appeals. *In re Ampal-Am. Israel Corp.*, 677 F. App'x 5 (2d Cir. 2017). The *Judgment* is final and no longer subject to further appeal.

### A.     The Plaintiff's Post-Judgment Discovery Efforts

In November 2015, the Plaintiff served the Defendants with document requests and interrogatories (the "Discovery Requests"), seeking information regarding their finances and assets. (*Declaration of John P. Campo in Support of Plaintiff/Judgment Creditor's Motion to Compel Discovery*, dated June 7, 2017 ("*Campo Declaration*"), Ex. 1 (ECF Doc. # 77).) The parties subsequently engaged in settlement discussions and agreed to postpone formal responses to the Discovery Requests. (*Id.* at ¶ 5.) They failed to reach an agreement, and because of the Defendants' non-compliance with the Discovery Requests, the Plaintiff moved to compel the Defendants to provide formal responses and to require Maiman to appear for a deposition. (*Plaintiff/Judgment Creditor's Notice of Motion to Compel Discovery*, dated June 7, 2017 ("*Motion to Compel*") (ECF Doc. # 75).)

In response, the Defendants filed a cross-motion for a protective order. (*Merhav (M.N.F. Limited and Yosef A. Maiman's Cross-Motion for Protective Order*, dated June 19, 2017 ("*Cross-Motion*") (ECF Doc. #89).) The *Cross-Motion* "acknowledge[d] that MAG is entitled to execution-related discovery," but asserted that Maiman could not respond to the Post-Judgment Discovery Requests due to medical issues and financial inability. (*Cross-Motion* at p. 1.) In addition, their files included "sensitive, personal information concerning Mr. Maiman and his family that is not responsive" to the Discovery Requests. (*Id.* at ¶ 29.)

4

The Defendants proposed an alternative production plan that would narrow the scope of production and shift the cost of production to the Plaintiff.  (*Id.* at ¶ 44.)  Under their proposal, MAG and Maiman would jointly choose an independent consultant to review the Defendants' documents at the Plaintiff's expense.  (*Id.*)  The Defendants argued that producing documents to an independent consultant rather than MAG would avoid the production of Maiman's personal information.  They did not raise any privacy rights or concerns pertaining to or held by Merhav's employees under Israeli law, or argue that the production of the information would place the Defendants in legal jeopardy in Israel.

After hearing the parties, the Court granted the *Motion to Compel*.  (*Order Compelling Defendants/Judgment Debtors to Comply with Discovery Requests and Denying Defendants/Judgment Debtors' Cross-Motion for Protective Order*, dated June 23, 2017 ("*June Order*") (ECF Doc. # 98).)  Among other things, the *June Order* directed the Defendants to produce their electronic servers ("Electronic Servers").[1]  Following the entry of the *June Order*, and instead of producing the Electronic Servers, the Defendants produced 4,000 pages of hard copies of certain documents on July 17, and "200,000 responsive emails" in electronic format on July 19.

The Defendants thereafter moved by letter for "clarification" of the *June Order*.  (*Letter Requesting a Conference in Order to Clarify an Aspect of the Order Compelling*

---

[1] Specifically, the Court ordered the Defendants to produce "on or before July 17, 2017 ... the Files for the period of January 1, 2010 to the present (the 'Time Period'), including but not limited to all electronic servers and boxes of files for the Time Period." (*June Order* at 2.) "[I]n the event the [Defendants] produce any files that are 'personal' to Judgment Debtor Maiman or his family, and not relevant to either the financial resources of the [Defendants] and/or their ability to satisfy the Judgment, or MAG's efforts to enforce the Judgment under applicable law ..., MAG shall immediately return such Personal Non-Relevant Files to the Judgment Debtors." (*Id.* at 2-3.)

5

*Defendants/Judgment Debtors to Comply with Discovery Requests and Denying Defendants/Judgment Debtors Cross-Motion for a Protective Order*, dated July 23, 2017 (ECF. Doc. # 103).) They contended that the *June Order* allowed them the option to produce the documents they selected instead of the Electronic Servers. (*Id.* at 1-2.) Once again, the Defendants did not raise any employee privacy issues under Israeli law or contend that they would be violating Israeli law by complying with the *June Order*.

At a hearing held on July 27, 2017, the Court denied the request for a "clarification" on the ground that the *June Order* unambiguously required production of the Electronic Servers and a clarification was not necessary. Moreover, the Defendants revealed that a non-lawyer in Israel had conducted the document review for relevance and privilege that had preceded the Defendants' document production. This was unacceptable. In addition, the Plaintiff expressed concerns about spoliation and tampering. Because of the Defendants' non-compliance and the Plaintiff's concerns, the Court entered a second discovery order. (*Order Directing Defendants/Judgment Debtors to Comply with Order Compelling Production*, dated Aug. 15, 2017 ("*August Order*" and, together with the *June Order*, the "*Discovery Orders*") (ECF Doc. # 115).) Under the *August Order*:

> 1. The Plaintiff was required to identify a third-party computer consultant by August 21, 2017,[2] and the Defendants were ordered to turn over "all of the Judgment Debtors' electronic servers" for the relevant period to the Plaintiff's consultant. The consultant would check for spoliation or tampering, and report any that it found.
> 2. The Defendant was directed to produce a privilege log of any documents withheld based on the attorney client privilege by August 28,

---

[2] The Plaintiff timely identified Ran Levinson from Force Majeure Ltd. ("Force Majeure") as its consultant.

6

   2017, but the turnover of any privileged materials on the Electronic Servers would not constitute a waiver.

   3. The Plaintiff could search the Electronic Servers, but the consultant would not turn over to the Plaintiff any documents that the Defendants' counsel had listed in the privilege log.

Finally, the Court retained jurisdiction to enforce the *August Order*.[3]

  The Defendants failed to produce the Electronic Servers to Force Majeure or a privilege log to the Plaintiff's counsel. Instead, on the August 28, 2017 deadline, their Israeli counsel, Lipa, delivered a letter to Force Majeure in Israel. The letter stated that Merhav and Maiman "have instructed [Lipa] to transfer to you in escrow all of the material contained in the e-mailboxes of [Merhav's] employees, as found on [Merhav's] servers, pursuant to the U.S. Court decisions in reference dated June 23, and August 15, 2017 [and] we are respectfully sending you this information, partly by e-mail (attached hereto) and partly by messenger . . ." to arrive the morning of August 29, 2017. (*Plaintiff/Judgment Creditor's Memorandum of Law in Support of Motion for Alternative Service on Lipa Meir & Co. in Israel* dated Sept. 15, 2017, Ex. A, at 1 (ECF Doc. # 119-1).) The letter also included a warning not to open or examine any of the files. (*Id.* at 2.) It asserted that Israeli privacy law protected the documents because they contained confidential information of Merhav's employees, and opening or

---

[3] The Defendants raised their Israeli privacy law concerns for the first time in opposition to the Plaintiff's proposed order requested by the Court following the July 27 hearing, but they did not identify the law or supply an affidavit from an expert in Israeli law. (*See Merhav (M.N.F.) Limited and Yosef A. Maiman's Objection to Settlement of Order*, dated Aug. 8, 2017, at 5 (ECF Doc. # 110)) ("Defendants have informed undersigned counsel that, under Israeli law, it would be a violation of privacy law for Merhav to access former employee email accounts without consent.").) At the hearing on the *Motion*, the Court ruled that the Defendants had waived the argument. A proposed order should reflect the disposition of the motion to which it pertains. The Court ruled that the Defendants could not object to the relief accurately set forth in the proposed order by raising a new argument that they did not make and the Court did not consider in awarding relief. (Transcript of 10/3/2017 Hr'g at 27:13-28:14 (ECF Case No. 12-13689 Doc. # 771).)

7

examining the files could subject Force Majeure to civil and criminal penalties under Israeli law.  (*Id.*)

The Defendants delivered the hard drive to Force Majeure the next day. (*Plaintiff/Judgment Creditor's Memorandum of Law in Support of its Motion to Enjoin the Israel Action and its Motion for Civil Contempt and Sanctions Against the Judgment Debtors and their Counsel for Violating the Court's Orders*, dated Sept. 15, 2017, at ¶ 21 (ECF Doc. # 117).)  Further, on August 31, Lipa delivered an email to Force Majeure that contained a password and more electronic files.  (*Id.*)  Neither Lipa nor the Defendants produced the Electronic Servers.

## B.     The Israeli Action

On September 10, 2017, Lipa filed a lawsuit in Israel on behalf of the Defendants (the "Israeli Action") naming MAG and Force Majeure as "defendants" and Merhav's employees as "formal defendants."[4]  The plaintiffs in the Israeli Action (the Defendants in this adversary proceeding) asserted that they could not comply with the *Discovery Orders* without violating Israeli privacy laws because the materials MAG sought contained confidential information that belonged to the Merhav employees. (*Plaintiff/Judgment Creditor's Memorandum of Law in Support of its Motion to Enjoin the Israel Action and its Motion for Civil Contempt and Sanctions Against the Judgment Debtors and their Counsel for Violating the Court's Orders*, dated Sept. 15, 2017 ("Composite Ex. B") (ECF Doc. # 117).)  The Defendants sought preliminary and

---

[4]     The Israeli Action was styled, *Merhav M.N.P. Ltd. and Yossi Arieh Miman, v. Force Majeure Ltd., The Merhav – Ampal Group Ltd., Sabich Sailan, Leo Malmud, Irit Lluz, Sharon Barkan, Giora Bar Nir, Yoram Peron, Michael Mirkin, Alfredo Rosenzweig, and Shelly Ronen*, Labor Dispute 17084-09-17, in the Regional Labor Court in Tel Aviv – Yafo.

8

permanent injunctive relief barring Force Majeure (or anyone else) from complying with the *Discovery Orders*, or alternatively, a "comfort" order declaring that they would not be in violation of Israeli law if they released the Electronic Servers. (*Id.* at 1.)

On September 15, 2017, the Plaintiff filed the *Motion*, asserting that the Defendants' failure to produce the Electronic Servers and the filing of the Israeli Action constituted civil contempt of court based on the failure to comply with the *Discovery Orders*. As part of the *Motion*, the Plaintiff also sought to hold the Defendants' U.S. counsel and Lipa in contempt for their roles in filing the Israeli Action. The Court conducted a hearing on October 3, 2017 at which it held the Defendants in contempt, and the Plaintiff withdrew the request for contempt against the U.S. counsel. (*Contempt Order* at ¶¶ 2(e) & 5.) The *Contempt Order* gave the Defendants until October 21, 2017 to purge their contempt before facing a $1,000 per day fine. (*Contempt Order* at ¶ 2(e).) Lipa subsequently advised the Court that the Defendants had taken steps to withdraw the Israeli Action. (*Letter to Judge Bernstein*, dated Oct. 20, 2017 (ECF Doc. # 143).) By letter dated October 26, 2017 (ECF Doc. # 145), the Defendants' new U.S. counsel provided a copy of what purports to be a decision of the Israeli court dismissing the Israeli Action. (ECF Doc. # 145-1.)

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)), *cert. denied*, 519 U.S. 1006 (1996). The burden depends

on the procedural posture of the case. Prior to discovery, a plaintiff need only make a *prima facie* showing of jurisdiction. *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 409–10 (S.D.N.Y. 2009). Once discovery has taken place, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 336 (S.D.N.Y. 2009), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011).

Here, the jurisdictional facts are undisputed. Thus, although MAG filed a motion instead of a complaint, the Court will treat the *Motion* as a complaint, and Lipa's opposition to the *Motion*, (*Memorandum of Law in Opposition to Plaintiff/Judgment Creditor's Motion for Civil Contempt and Sanctions*, dated Sept. 26, 2017 (ECF Doc. # 126)) as a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Initially, the Plaintiff does not contend that Lipa is subject to general personal jurisdiction, and instead, relies on specific personal jurisdiction. The Plaintiff contends that Lipa interjected itself into these proceedings, and thereby submitted itself to the personal jurisdiction of this Court when it took actions "although admittedly occurring in Israel, which . . . had an effect . . . in this Court." (*Plaintiff/Judgment Creditor's Reply in Support of its Motion for Civil Contempt and Sanctions Against the Judgment Debtors and their Counsel for Violating the Court's Orders*, dated Sept. 29, 2017, at 10 ("*Plaintiff's Reply*") (ECF Doc. # 131).) The Plaintiff also refers to Lipa's website that advertises that it is continuously active in legal matters that affect U.S. entities, and somewhat cryptically, that Lipa "is renowned for its accomplishments in all aspects of

insolvency law throughout the globe, especially in Europe and the *United States.*"[5]  (*Id.* at 13-14 (emphasis in original) (purporting to quote but not attaching screen shot of Lipa website).)

The determination of whether the Court has specific personal jurisdiction over Lipa involves a two-step analysis; the plaintiff must establish that the defendant has "minimum" contacts with the jurisdiction, and assuming "minimum" contacts exist, the exercise of personal jurisdiction comports with notions of fair play and substantial justice.  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014) ("*Gucci*").  Both sides have focused on the long-arm provisions of section 302(a) of New York's Civil Practice Law & Rules ("CPLR"), which provides in relevant part:

> (a) **Acts which are the basis of jurisdiction**.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>     1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> . . .
>
>     3.    commits a tortious act without the state causing injury to person or property within the state, . . . if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

The *Motion* fails to make out a *prima facie* case for personal jurisdiction under § 302(a)(1).  The Plaintiff does not assert that Lipa transacted any business within New

---

[5] I say "cryptically" only because it is not clear whether "throughout the . . . *United States*" refers to Lipa's renown or its accomplishments.  To my knowledge, Lipa is not licensed to practice law in the United States.

11

York or supplied goods or services within New York, but to the extent the website refers to accomplishments throughout the United States, the Plaintiff does not allege that its aiding and abetting claim against Lipa arose out of acts bearing any connection to those U.S. accomplishments. In fact, MAG concedes that the relevant acts took place in Israel. (*Plaintiffs' Reply* at 10.)

The *Motion* also fails to satisfy CPLR § 302(a)(3). First, the *Motion* does not allege that Lipa's conduct caused injury to a person or property within New York. "Whether the injury occurred 'in' New York for purposes of § 302(a)(3) generally depends on 'a situs-of-injury test, which asks [courts] to locate the original event which caused the injury,'" and "not the location where the resultant damages are felt by the plaintiff." *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 46–47 (2d Cir. 2016) (*quoting Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation marks omitted); accord *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) ("[T]he situs of injury is the location of *the original event which caused the injury,* not the location where the resultant damages are subsequently felt by plaintiff.") (emphasis in original) (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581 (2d Dep't 1987).) Here, any injury resulted from the filing of the Israeli Action in Israel. In addition, although the Israeli Action interfered with an order of this Court, the injured party, MAG, is also an Israeli entity. (*Amended Complaint*, dated Oct. 23, 2014, at ¶ 6 (ECF Doc. # 4).) Second, the *Motion* does not allege that Lipa *regularly* solicits or does business in New York or the United States, engages in a *persistent* course of conduct here, or derives *substantial* revenue in this state or from interstate or international commerce.

12

Accordingly, the Court lacks personal jurisdiction over Lipa under CPLR § 302(a)(1) and (3).

Notwithstanding its inability to satisfy the jurisdictional requirements of the CPLR, the Plaintiff nevertheless asserts that *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) supports personal jurisdiction over Lipa.  In *Eli Lilly*, an expert witness and signatory to a protective order received confidential documents regarding Zyprexa, an anti-psychotic drug manufactured by Eli Lilly.  *Id.* at 189.  Disturbed by the information, the expert witness conspired with an attorney located in Alaska to circumvent the court's protective order and distribute the documents to reporters.  *Id.*  The Alaskan attorney intervened in an unrelated case and then generated subpoenas requiring the expert witness to produce the confidential information.  *Id.*  Once in possession of the confidential information, the attorney distributed the documents to reporters.  *Id.*

When Eli Lilly discovered that the expert witness had breached the protective order and disclosed the confidential information, it sought an injunction, which the District Court granted.  *Id.*  The injunction required the attorney to return the confidential information and barred him from further disseminating it.  *Id.*  The attorney appealed to the Second Circuit, arguing, *inter alia*, that he was not subject to the New York District Court's personal jurisdiction because he lived in Alaska.  *Id.*  The Second Circuit rejected the jurisdictional challenge, concluding that a court that issues a protective order may enjoin nonparties who aid and abet the violation of that order from further violations even if the nonparties reside outside the territorial jurisdiction of the court.  *Id.* at 195-96.

*Eli Lilly* is distinguishable for the reasons explained in the Second Circuit's subsequent decision in *Gucci*. There, the plaintiffs, manufacturers of luxury goods, sued the defendants alleging that they had counterfeited and sold the plaintiffs' goods. *Gucci*, 768 F.3d at 125. The District Court entered an order compelling the Bank of China (the "Bank"), a foreign nonparty, to freeze the defendants' assets and assist the plaintiffs in gathering evidence. When the Bank failed to comply, the District Court entered another order holding the Bank in civil contempt and imposing monetary penalties. *Id.*

The Bank appealed to the Second Circuit, arguing, *inter alia*, that the District Court lacked personal jurisdiction over it. *Id.* The Second Circuit held that the Bank was not subject to general jurisdiction in New York and remanded the case to the District Court to consider specific personal jurisdiction. *Id.* at 135-138. The Court recognized that other Circuits had permitted the exercise of specific personal jurisdiction over *domestic* nonparties to compel their compliance with asset freeze injunctions, *id.* at 137, and in *Eli Lilly*, the Court used the same approach to permit the exercise of specific personal jurisdiction over a *domestic* nonparty that violated a protective order. *Id.* However, the exercise of personal jurisdiction over a *foreign* nonparty to compel compliance with an asset freeze required consideration of the traditional standards that govern the assertion of specific personal jurisdiction: minimum contacts and "traditional notions of fair play and substantial justice." *Id.* at 137-38 (citations and internal quotation marks omitted).

Under *Gucci*, a court cannot assert personal jurisdiction over a foreign nonparty for aiding and abetting a party's violation of an order issued by the court absent specific personal jurisdiction over the foreign nonparty. As noted, the undisputed facts do not

14

support the assertion of specific personal jurisdiction over Lipa. Accordingly, the injunctive relief granted against Lipa in the *Contempt Order* is vacated, and the *Motion* is dismissed as to Lipa.

    Submit order.

Dated:   New York, New York
           November 6, 2017

                                              /s/ *Stuart M. Bernstein*
                                                STUART M. BERNSTEIN
                                          United States Bankruptcy Judge