UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
*In Re*

AMPAL-AMERICAN ISRAEL CORPORATION,

                                *Debtor*.
------------------------------------------------------------x
MERHAV AMPAL GROUP, LTD.
f/k/a MERHAV-AMPAL ENERGY, LTD.,

                                *Plaintiff*,

vs.

MERHAV (M.N.F.) LIMITED and
YOSEF A. MAIMAN,

                                *Defendants*.
------------------------------------------------------------x

Hearing Date and Time:
November 16, 2017 at 10:00 a.m.

Case No. 12-13689-SMB

Adv. Case No. 14-02385-SMB

Related Doc. Nos. 116, 140, 141, 147

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL
STATEMENT IN SUPPORT OF CONTEMPT MOTION AND UPDATE
REGARDING COMPLIANCE WITH THE COURT'S ORDERS**

        Defendants Merhav (M.N.F.) Limited ("Merhav MNF") and Yosef A. Maiman

("Maiman") respectfully oppose plaintiff Merhav Ampal Group, Ltd.'s ("MAG") Supplemental

Statement in Support of Contempt Motion and Update Regarding Compliance with the Court's

Orders (Dkt. 147) ("Supp. St.").

**INTRODUCTION**

        Defendants have fully complied with the Court's Contempt and Withdrawal Orders

(Dkts. 140, 141), contrary to plaintiff's assertions, with two immaterial exceptions. First, there

was a short delay in delivery of two Merhav physical electronic servers and drives which were

delivered to Force Majeure on October 31, 2017, rather than October 21, 2017. Second,

defendants were unable to identify the contents of one of the Merhav servers, because it had been

in the possession, custody and control of Tic Tac since February 2014, pursuant to the Court's

Agreed Order in the Ampal bankruptcy case. *In Re Ampal-American Israel Corp.*, No. 12-13689 (SMB) (Dkt. 395) (the "Agreed Order"). Ampal can easily identify the contents now that this server is in its possession. Defendants were delayed in turning over these two physical servers because defendants simply did not recall them, as they had been delivered to Tic Tac Technologies in February 2014, and Mr. Maiman was unaware that one of these servers had been returned to Merhav MNF and placed in a storage room filled with furniture and office equipment, as explained below. This brief delay in delivery of these two servers was inadvertent, did not cause plaintiff any harm, and does not warrant further sanctions, financial or otherwise, as sought by plaintiff. In fact, plaintiff had evidently forgotten these two servers as well, as there was no mention of them by plaintiff during the discovery disputes in the summer of 2017.

Plaintiff's Supplemental Statement is replete with inaccurate and irrelevant assertions which ignore the basic facts: Defendants have complied with the Court's Orders in all material respects. There is no factual basis for plaintifff's conspiratorial theories about the petition filed by *former* employees, not *present* employees of Merhav, who are seeking to protect their individual privacy rights under Israeli law before the Israel Labor Court. Current and former employees in Israel have rights under the Israel privacy laws which they may lawfully seek to protect. In fact, this Court has previously protected the rights of "former employees" in the Supplemental Order Concerning Trustee's Access to Debtor's Files, Books and Records, ¶ 2, p. 2, in the Ampal bankruptcy case, expressly protecting their privacy rights for personal information under Israeli law. *In Re Ampal* (Dkt. 532) ("Supp. Order"). Plaintiff's contrary contentions are based on nothing but upsupported suspicion and speculation.

Plaintiff asserts other groundless complaints concerning the declaration of Uri Cnaan, who delivered a Merhav MNF server to Force Majeure and described Merhav MNF's Microsoft

cloud email service, about the delivery of two other Merhav servers and drives to Force Majeure on October 31, 2017, and regarding the opinion authored by defendants' U.S. counsel and filed by defendants' Israeli counsel in the District Court for Tel Aviv in response to plaintiff's petition to domesticate the judgment in this case, as explained in Points II through V, below.

### I. DEFENDANT'S HAVE COMPLIED WITH THE COURT'S ORDERS.

Defendants have complied with the Court's Orders of October 11, 2017 (Dkt. 140, 141), as shown in the letters of defendants' counsel with exhibits (Dkt. 144, Exs. 1 and 2), the declaration of Uri Cnaan dated October 17, 2017 and exhibit (Dkt. 144, Ex. 1) ("Cnaan Decl."), the letter of Mark Elliott, Esq., on behalf of non-party Lipa Meir & Co. (Dkt. 143 and exhibits), and the declaration of defendant Yosef A. Maiman dated October 31, 2017, attached as Exhibit A hereto ("Maiman Decl.").

The Court's Orders regarding contempt ("Contempt Order") (Dkt. 140) and the Kasowitz Withdrawal Order ("Withdrawal Order") (Dkt. 141) (the "Orders") required defendants to:

1. <u>Dismiss their proceeding in the Israel Labor Court regarding issues of privacy under Israel's Protection of Privacy Law</u> (Order, ¶ 2(b)):

Defendants complied by filing an application to dismiss their proceeding; the Labor Court granted the application and dismissed the proceeding in a Decision dated October 19, 2017 (Dkt. 145-1, p. 2);

2. <u>Identify and turn over to Force Majeure all physical electronic servers in defendants' possession, custody, or control</u> (Order, ¶ 2(c) and (d), Withdrawal Order ¶ 4):

Defendants complied by identifying and turning over Merhav MNF's IBM electronic server and four hard drives, located in its former offices, which was delivered to Force Majeure on October 17, 2017 (Cnaan Decl. ¶¶ 5, 8-9, Dkt. 144-1; Maiman Decl. ¶ 6, Ex. A). That server was described as containing "Microsoft Office Excel, Word, and PowerPoint programs and files,

- 3 -

bookkeeping and other financial programs and files, and picture files" (*id.*, ¶ 6).

On October 23, 2017, plaintiff's counsel John Campo identified two other "Merhav" servers and 2 hard drives each which had been delivered to Tic Tac Technologies in February 2014, pursuant this Court's Agreed Order in the Ampal bankruptcy case, *In Re Ampal-American Israel Corp.*, No. 12-13689 (SMB) (Dkt. 395) (the "Agreed Order").

On October 31, 2017, defendants delivered to Force Majeure both of the "Merhav" servers and their 2 hard drives each which Campo identified on October 23, 2017 (Maiman Decl. ¶ 11, Ex. A). Mr. Maiman explained that Hashavshevet is an accounting program and that the server described as "Merhav Hashavshevet (accounting)," contains Merhav accounting records prior to February 2014, when this server was delivered to Tic Tac, to the best of his knowledge (Maiman Decl. ¶ 11-13, Ex. A). He stated that he did not know the contents of the other Merhav server which had been in the possession, custody, and control of Tic Tac since February 2014, and did not know anyone who would know, but that Force Majeure could examine the server and drives and determine their full contents (Maiman Decl. ¶ 13, Ex. A).

Mr. Maiman explained in detail why the two Merhav servers and drives delivered to Force Majeure on October 31, 2017 were not identified and delivered prior to October 21, 2017—he simply did not remember these servers and drives which had been delivered to Tic Tac in February 2014, and he was not aware that one of them had been returned to Merhav MNF. That server was eventually located in a storage room filled with furniture and office equipment. Merhav MNF has not been an operating business for several years and has not had employees since November 2016. In addition, Mr. Maiman has had serious health issues during this same period and was in Europe for medical treatment from March through November 2016 (Maiman Decl. ¶¶ 3-4, 14-23, Ex. A).

3. <u>Identify all "email" or "cloud" servers used by defendants, whether or not in their possession, custody or control (Order, ¶ 2(c)</u>:

Defendants complied by identifying Merhav MNF's subscription to Microsoft Corporation's "Exchange Online (Plan 1)" email service, as evidenced by a Microsoft Corporation monthly invoice to Merhav MNF from Dublin, Ireland dated September 9, 2017. "Exchange Online (Plan 1)" is an online email service provided by Microsoft from its own physical servers at locations unknown to defendants (Cnaan Decl. ¶¶ 10-11, Dkt. 144-1). Mr. Maiman provided another Microsoft invoice dated in 2013, which he believes is approximately when Merhav MNF began using the Microsoft "cloud" email service (Maiman Decl. ¶ 24, Ex. A). Microsoft's "Exchange Online (Plan 1)" is described on Microsoft's website at https://products.office.com/en-us/exchange/exchange-online (last visited on Nov. 5, 2017). Defendants' counsel provided this information to plaintiff's counsel by email on October 25, 2017 (Supp. St., Ex. D, pp. 25-26).

4. <u>Identify Any Other Physical Electronic Servers Not in Defendants' possession, custody or control which contain responsive information</u> (Withdrawal Order ¶ 4):

Defendants' initial response to this provision was that there were no such servers, to the best of their knowledge (Cnaan Decl. ¶ 12, Dkt. 144-1). This was inadvertenly inaccurate because, at the time, neither Mr. Maiman nor anyone else recalled the servers which had been delivered to Tic Tac in February 2014 and neither Mr. Maiman or others knew or recalled that one of those servers had been returned to Merhav MNF in March 2014 and had been placed in a storage room filled with furniture and office equipment, where it was located on October 30, 2017 (Maiman Decl. ¶ 23, Ex. A).

Plaintiff has suffered no harm because the two Merhav servers were delivered to Force Majeure on October 31, 2017, rather than on October 21, 2017, as a result of defendants'

- 5 -

inadvertent lack of recollection of these servers which had been sent to Tic Tac in February 2014 for purposes of making Ampal books and records available to the trustee in the main bankruptcy case. It is apparent that no one else involved in the case had recalled them either, until Campo's email of October 23, 2017, since no mention was made of them during the extended discovery disputes during the summer of 2017.

Defendants fully complied with the Court's Orders of October 11, 2017, with the limited exception of delivery of the two Merhav servers and drives by October 21, 2017, but they were delivered promptly after they were identified and located on October 31, 2017.

Accordingly, there is no justification for the imposition of any, much less additional sanctions against defendants, monetary or otherwise.

## II. MERHAV MNF AND MAIMAN ARE RESPONDENTS IN FORMER MERHAV EMPLOYEES' ISRAEL LABOR COURT PROCEEDINGS WHICH THOSE FORMER EMPLOYEES MAY LAWFULLY PURSUE.

Plaintiff admits that defendants on October 15, 2017 requested withdrawal of their petition to the Israel Labor Court and cancellation of a scheduled hearing, as this Court ordered on October 11, 2017 (Dkt. 140) (Supp. St. ¶¶ 14). The Israel Labor Court granted defendants' request in a Decision issued on October 19, 2017, which plaintiff also admits (Supp. St. ¶ 24).[1]

Not satisfied by this proof that defendants fully complied with this Court's order by withdrawing their Israel Labor Court proceeding, plaintiff now claims that defendants are using former employees of Merhav MNF "as their proxies/strawmen" because those former employees – through their own counsel – initiated their own proceeding in the Israel Labor Court seeking to protect their own individual privacy rights, naming Merhav MNF and Mr. Maiman as respondents, not as petitioners (Supp. St. ¶¶ 26, 38).

---

[1]  Ironically, plaintiff itself asked the Israel Labor Court not to cancel the October 25 hearing date and to allow it to further address various issues (Supp. St. ¶ 23).

- 6 -

Plaintiff provides no evidence whatsoever to support its baseless assertion that the former employees are acting on behalf of defendants in this case. These former employees are entitled to seek protection of their individual privacy rights and are not subject to any order which precludes them from doing so.

Plaintiff repeatedly refers to "the Merhav Employees," as if they were ongoing, current employees of Merhav MNF (Supp. St. pp. 7-10, 14, 16-17). In fact, they are *former employees*, as plaintiff well knows. Merhav MNF has not been an operating company since 2012 and has not had any employees since at least 2016 (Maiman Decl. ¶ 3, Ex. A).

In any event, ongoing employees of an employer have personal privacy rights which are protectable under the Israel Privacy Law, as this Court recognized in the Ampal bankruptcy proceeding on December 5, 2014, in which various former employees, represented by separate counsel, objected to the trustee's motion for turnover of Ampal's server, which would include access to their personal emails contained on an Ampal server. Supplemental Order Concerning Trustee's Acceess to Debtor's Files, Books, and Records, *In Re Ampal-American Israel Corp.*, No. 12-13689 (SMB) (Dkt. 532) (the "Supplemental Order").

This Supplemental Order resulted in part from the objection of Merhav MNF, former officers and employees of Ampal and Merhav MNF to the trustee's turnover motion (Ampal Dkt. 353, 353-1, 353-2). This objection included the declaration of Yoram Firon, former secretary of Ampal, who explained that the Ampal server contained a mix of Ampal and Merhav MNF business emails and records, as well as private emails of former officers and employees (Ampal Dkt. 353-1). They also submitted an expert opinion on Israeli privacy law rights, including a summary of the rights of existing employees, not just former employees, where business and private emails are contained on the same server, based upon a 2011 opinion of the National Labor Court of Israel (Ampal Dkt. 353-2). Based on this objection, this Court's Ampal

Supplemental Order (Ampal Dkt. 532) provided, in relevant part:

> 2. The Trustee and his agents, employees, representatives, agents, and professionals (the "**Trustee Representatives**" shall at all times hold and maintain the Produced Documents in accordance with and subject to all applicable rights to privacy and similar protections and privileges governing the Produced Documents, including, without limitation, in accordance with and subject to privacy rights and privilege under Israeli law. (bold in original)

In this Court's Order of October 11, 2017 in this adversary proceeding (Dkt. 140, ¶ 2(a)), the Court concluded that defendants – Merhav MNF and Mr. Maiman -- "have waived any argument regarding the application of Israeli privacy law – specifically, but not limited to, Israel's Protection of Privacy Law, 5741-1981 – to the Court's June 23, 2017 and August 14, 2017 Orders …." That order enjoined them from pursuing their proceeding before the Israel Labor Court, an order with which they have indisputedly complied (Dkt. 145-1, p. 2), as plaintiff admits (Supp. St. ¶ 24).

Plaintiff reports that on October 22, 2017, four of Merhav MNF's *former employees* (wrongly identified by plaintiff repeatedly as "Merhav Employees" Supp. St. ¶¶ 38-39) filed their own proceeding in the Israel Labor Court with new counsel, seeking to protect their own claimed rights under Israeli privacy law, and naming Merhav MNF and Maiman as respondents.

In fact, this Court's first order of June 23, 2017, p. 2 (Dkt. 98) in the ongoing discovery disputes in this case, recognized that plaintiff Maiman's personal information, unless relevant to judgment enforcement, was not subject to the discovery order:

> **ORDERED** that **notwithstanding the foregoing** in the event that Judgment Debtors produce any files that are "personal" to Judgment Debtor Maiman or his family, and not relevant to either the financial resources of the Judgment Debtors and/or their ability to satisfy the Judgment, or MAG's efforts to enforce the Judgment under applicable law (the "Personal Non-Relevant Files"), **MAG shall immediately return** such Personal Non-Relevant Files … to the Judgment Debtors, and ... shall treat any information in such Personal Non-Relevant Files as confidential, and shall not share or disclose such Personal Non-Relevant Fies or the information contained therein with any other person or entity … [bold in original].

The Court's order of August 15, 2017 (Dkt. 115, p. 3) also provided "that MAG's Consultant shall not turnover to MAG … any of the documents identified and tagged by counsel for the Defendants/Judgment Debtors in the Privilege Log provided to MAG in accordance with the provisions of this order …."

These *former employees* are not parties to this adversary proceeding, were not given notice of any proceeding in this Court which would affect their privacy rights, and the Court's Order of October 11, 2017 does not, by its terms, in any way address or prevent former employees from seeking to protect their own rights before the Israel Labor Court. The effort of these former employees to protect their own individual privacy rights does not in any way violate any order of this Court.

Plaintiff also complains about the cease and desist letter reportedly sent to Force Majeure by Israeli counsel Iris Edri for these former employees who filed their own separate proceeding in the Israel Labor Court, after defendants withdrew theirs (Supp. St. ¶¶ 18-22). There is no evidence that defendants had any connection to this cease and desist letter. But cease and desist letters, in and of themselves, have no legal force or effect. Neither sending nor ignoring a cease and desist letter is a violation of law. A cease and desist letter is simply the statement of one side's position in an actual or potential dispute.[2]

---

[2]     A cease and desist letter is simply the first (and sometimes only) round in a legal dispute in which a person's lawyer asserts his or her client's rights and requests or demands cesation of activities allegedly or potentially violating that client's rights. Cease and desist letters are often ignored, on rare occasion lead to resolution of disputes, and more often lead to an exchange of duelling demands, and sometimes to a formal legal proceeding.

### III. PLAINTIFF DOES NOT DISPUTE THAT MERHAV MNF DELIVERED ITS PHYSICAL SERVER AND DRIVES TO FORCE MAJEURE ON OCTOBER 17, 2017 AND IDENTIFIED ITS MICROSOFT "CLOUD" EMAIL SERVICE, AS REQUIRED BY THE COURT'S ORDERS.

Plaintiff does not dispute that Merhav MNF delivered its physical electronic server and four hard drives to Force Majeure on October 17, 2017, and identified its Microsoft "cloud" email service on that date (Cnaan Decl. ¶¶ 1, 5, 8-11, and Ex. 1 (acknowledgement of receipt by Force Majeure) and Ex. 2 (invoice of Microsoft Corporation from Dublin, Ireland to Merhav MNF, describing monthly charges for its "Exchange Online (Plan 1" cloud-based email subscription service) (Dkt. 144-1). Mr. Cnaan identifies himself as an employee of Oriental Technology, a company which has provided technology services to Merhav MNF and as the person who delivered the server to Force Majeure (*id.*, ¶ 1, 8-9).

Instead, plaintiff's counsel makes the unsupported and irrelevant factual assertion that plaintiff does not know anything about Oriental Technologies, as if that had factual or legal significance (Supp. St. ¶ 13). Plaintiff does not challenge the actual delivery of the server and drives to Force Majeure by Mr. Cnaan on October 17, 2017 nor the evidence that Merhav MNF has a Microsoft "Exchange Online" subscription, as evidenced by the Microsoft invoice to Merhav MNF (Dkt. 144-2).

In fact, the Microsoft Corporation recognized "Oriental Technologies" as a "partner" on an earlier Microsoft invoice to Merhav MNF for this "Exchange Online" cloud-based service dated March 8, 2013, approximately the time that Merhav MNF began using this service (Maiman Decl. ¶ 24, Ex. 1, p. 2, Ex. A hereto).

Mr. Cnaan's declaration indicated that, to the best of his knowledge, there were no other servers not in defendants' possession, custody or control which had responsive information (Dkt. 144-1, ¶ 12). This later turned out to be inaccurate, as explained in Point IV, below, but at the

- 10 -

time, Merhav MNF had no employees and Mr. Maiman did not recall that two Merhav servers had been sent to Tic Tac Technologies pursuant to this Court's Agreed Order in the Ampal bankruptcy case, *In Re Ampal-American Israel Corp.*, No. 12-13689 (SMB) (Dkt. 395). Nor did Mr. Maiman recall, if he ever knew, that the so-called Merhav Hashavshevet (accounting) server and two drives had been returned from Tic Tac and were unused in a storage room, filled with furniture and office equipment.

Both the Merhav Hashavshevet and the other Merhav server that had been in Tic Tac's possesion, custody, and control since February 2014, were delivered to Force Majeure on October 31, 2017 (Maiman Decl. ¶¶ 10-11), as explained in Point IV, below.[3]

---

[3] Plaintiff has other complaints about Mr. Cnaan's declaration, and Oriental, but they are baseless or irrelevant (Supp. St. ¶¶ 29-32). Plaintiff complains that Cnaan was "particularly vague" about the basis of his knowledge, but he identified himself as a employee of Oriental, a company which has provided tech services for Merhav MNF, and that he was personally familiar with "the computer systems and services used by Merhav MNF" (Cnaan Decl. ¶¶ 1, 3). Plaintiff's assertion that this declaration was not "in the form of a person with knowledge" (Supp. St. ¶ 32). To the contrary, Cnaan says "I make this declaration on the basis of my personal knowledge" (Cnaan Decl. ¶ 2). Plaintiff complains that Cnaan does not use the word "server" in his description of his familiarity (Supp. St. ¶ 29), but a server is often part of a "computer system" for a commercial office and he was familiar enough with the "server" used by Merhav MNF that he was able to remove it from Merhav MNF's former offices and deliver it to Force Majeure. Plaintiff also complains that Cnaan's identification of the "categories of information" contained on the server (Cnaan Decl. ¶ 6) was "generic" (Supp. St. ¶ 30). The Court's Orders required identification of "categories of information," not itemized lists of files. A "category" is "any of several fundamental and distinct classes to which entities or concepts belong." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/category (last visited Nov. 5, 2017). That is what Cnaan's declaration provided for the server with Microsoft Office programs, files, and business and accounting records (Cnaan Decl. ¶ 6). He said the Microsoft email "cloud" service contains "emails" which is the "category of information" it contains (Cnaan Decl. ¶ 10). In response to the request of plaintiff's counsel for additional information by email (Dkt. 17-1, p. 22), defendants' counsel responded with further detail, but it was not information required by the Court's Orders, it was simply an attempt to bring plaintiff's complaints to an end (Supp. St., Ex. D, pp. 24-26, Dkt. 147-1).

### IV. MERHAV MNF DELIVERED TWO ADDITIONAL SERVERS AND DRIVES TO FORCE MAJEURE ON OCTOBER 31, 2017, WHICH HAD BEEN DELIVERED TO TIC TAC IN FEBRUARY 2014 PURSUANT TO AN AGREED ORDER IN THE AMPAL BANKRUPTCY CASE.

Plaintiff's Supplemental Statement attempts to make nefarious the fact that defendants did not identify and deliver two Merhav physical servers with two drives each until October 31, 2017, ten days after the deadline set by the Order (Supp. St. ¶ 35).

But Mr. Maiman fully explains why there was this brief delay in delivery of these two servers and their drives, which defendants, and apparently everyone else in the case, had forgotten about. They had been delivered to Tic Tac Technologies in February 2014, pursuant to this Court's Agreed Order in the Ampal bankruptcy case, *In Re Ampal-American Israel Corp.*, No. 12-13689 (SMB) (Dkt. 395). One of the Merhav servers and drives had remained in Tic Tac's possession, custody and control since February 2014 (Maiman Decl. ¶ 13, Ex. A). The other, the so-called Merhav Hashavshevet (accounting) server had been returned to Merhav MNF (Maiman Decl. ¶ 20, Ex. A), where it was placed in a storage room full of furniture and other office equipment and was never placed in service again. Mr. Maiman explains that he was not aware that this server had been returned to Merhav MNF and may well have been away when it was returned and stored (Maiman Decl. ¶¶ 14-23, Ex. A).

But is apparent that everyone who was involved in this case and in the Ampal case had forgotten about the two Merhav servers which had been delivered to Tic Tac in February 2014 in connection with the trustee's motion to compel turnover of Ampal books and records (Ampal Dkt. 348). No mention was made of these two Merhav servers by the parties in the discovery proceedings during the summer of 2017 or in the contempt proceedings.

Even when plaintiff's counsel first inquired about the 2 Merhav servers and drives on October 23, 2017 and when counsel had a phone conference regarding them on October 27, 2017

- 12 -

14-02385-smb    Doc 150    Filed 11/07/17    Entered 11/07/17 14:49:42    Main Document
Pg 13 of 20


(at the request of defendants' counsel), everyone assumed these two servers were still in the possession of Tic Tac. That is why the email of defendants' counsel to Tic Tic's CEO requested that he deliver both Merhav servers and drives directly to Force Majeure (Supp. St. 147-1, Ex. E).

The parties subsequently learned (apparently from Tic Tac's CEO), that the so-called Merhav Hashavshevet (accounting) server and two drives had been returned to Merhav MNF (Maiman Decl. ¶ 20, Ex. A).

Defendants at first were unable to locate the Merhav Hashavshevet (accounting) server and two drives (Maiman Decl. ¶¶ 20, 22, Ex. A).

As a result, defendants' counsel requested that Tic Tac deliver two backup copies of the Merhav Hashavshevet (accounting) server and two drives to Force Majeure (Supp. St., Ex. G, Daniel email to Yoav Silberstein, Tic Tac CEO, Oct. 30, 2017, 3:18 p.m.).

Before Tic Tac could deliver the Merhav server and drives, which had been in its possession since February 2014, and the backup copies of the Merhav Hashavshevet (accounting) server and two drives, defendants, after further searching, located the physical Merhav Hashavshevet (accounting) server and two drives in a storage room in Merhav MNF's former offices filled with furniture and other office equipment (Maiman Decl. ¶ 23, Ex. A).

Defendants promptly arranged for delivery of both of these Merhav servers and two drives each to Force Majeure on October 31, 2017 (Maiman Decl. ¶¶ 11, 25, Ex. A).

If defendants – or anyone else involved in the case – had remembered the existence of the two Merhav servers which had been delivered to Tic Tac in February 2014, defendants would certainly have delivered them to Force Majeure by October 21, 2017, as the Court's Order of October 11, 2017 provided.

Defendants had no motive not to turn over these servers as their existence was obviously known by the trustee, his counsel, and Tic Tac, even though everyone involved had evidently forgotten about them, at least until very recently, despite several months of proceedings regarding plaintiff's discovery requests during the summer of 2017 (Maiman Dec. ¶ 21, Ex. A).

Defendants delivered to Force Majeure the one Merhav server of which it was aware on October 17, 2017 (Cnaan Decl. ¶ 8, Dkt. 144-1) and turned over to Force Majeure the two Merhav servers and drives on October 31, 2017, shortly after these servers were recalled and located by defendants (Maiman Decl. ¶¶ 11, 25, Ex. A).

Plaintiff has not suffered any harm by delivery of the two Merhav servers and drives only ten days after the Court's October 21st deadline, a delay caused by the fact that neither defendants nor plaintiff recalled the two servers which had been sent to Tic Tac in February 2014, until plaintiff's counsel learned of them, as reported in his email on October 23, 2017 (Supp. St., Ex. E, Dkt. 147-1, p. 28).

Defendants acted in good faith and "diligently attempted to comply in a reasonable manner …" with the Court's Orders. *Gucci America, Inc. v. Bank of China*, 768 F.3d 122, 142 (2d Cir. 2014).[4]  They complied in all respects, except that the two Merhav servers and drives

---

4    The Second Circuit reiterated in *Gucci America*, 768 F.3d at 142:

As we have said, "contempt is a powerful weapon." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008). To demonstrate it, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) *the contemnor has not diligently attempted to comply in a reasonable manner*." [*Perez v. Danbury Hosp.*, 347 F.3d 419, 423-424 (2d Cir. 2003] (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (emphasis added).

The Court in *Gucci America* reversed the district court's finding that the Bank of China was in contempt for failure to comply in China with the court's subpoena and asset freeze injunction, which the Bank contended violated Chinese law.  The Second Circuit remanded in light of the Supreme Court's decision in *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746

were delivered to Force Majeure on October 31st, not October 21st, as soon as they were discovered and located. There is no basis or purpose for imposing additional sanctions upon defendants, monetary or otherwise.

> V. **DEFENDANTS ARE LAWFULLY OPPOSING PLAINTIFF'S MOTION TO "DOMESTICATE" THIS COURT'S JUDGMENT IN ISRAEL UNDER ISRAEL'S FOREIGN JUDGMENT ENFORCEMENT ACT.**

Plaintiff complains that defendants' Israeli counsel submitted an expert opinion by defendants' U.S. counsel to the District Court for Tel Aviv, Israel in opposition to plaintiff's petition to domesticate this Court's judgment in Israel, seeks withdrawal of that opinion, and sanctions under 28 U.S.C. 1927.

The State of Israel has enacted its own Foreign Judgment Enforcement Law, 5718-1958, and has its own body of law to determine whether it will recognize and enforce foreign judgments entered in the courts of other sovereign nations.

Plaintiff is an Israeli corporation. Defendant Merhav MNF is an Israeli corporation located in Israel and Mr. Maiman is a citizen and resident of Israel. Both defendants are lawfully entitled to oppose the "domestication" of this Court's judgment against them under the domestic laws of Israel in the proceeding brought by plaintiff as petitioner in the District Court for Tel Aviv. *In Re Merhav Ampal Group, Ltd. v. Merhav (M.N.F.) Limited and Yosef A. Maiman*, No. ___. *See* Declaration of Al J. Daniel, Jr. attached as Exhibit B hereto ("Daniel Decl.").

The fact that defendants are opposing "domestication" of the judgment under Israeli law is in no way in violation of this Court's orders seeking to enforce the United States-based

---

(2014), finding no general jurisdiction over the Bank, but allowing the district court to consider whether there was specific jurisdiction and to conduct an internation comity analysis, "using the framework provided by § 403 of the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW. …" *Gucci America*, 768 F.3d at 139.

judgment according to United States law. These are two separate and independent legal proceedings in two different sovereign nations.

Plaintiff's counsel in this case, John Campo, submitted an affidavit in support of plaintiff in the proceeding before the District Court for Tel Aviv, expressing his opinion that that Court should enforce this Court's judgment in Israel (Exhibit C attached hereto). Defendants are also entitled to oppose enforcement of the judgment by the District Court for Tel Aviv.

In the course of opposing plaintiff's proceeding in the District Court for Tel Aviv, defendants' Israeli counsel, Lipa Meir & Co., requested that their new counsel in the United States case prepare an expert opinion to submit to the District Court of Tel Aviv, expressing his opinion regarding specific issues in the case under U.S. law. Daniel Decl. ¶¶ 2-4.[5]

Contrary to plaintiff's contentions (Supp. St. ¶¶ 43-44), there is nothing untoward or inappropriate in defendants' U.S. counsel preparing an expert opinion expressing his views on specified issues in this case for submission to the District Court for Tel Aviv at the request of defendants' Israeli counsel. Plaintiff's U.S. counsel submitted an affidavit in support of plaintiff's petition in the District Court of Tel Aviv. After defendants new U.S. counsel was retained, defendants' Israeli counsel requested that U.S. counsel prepare an opinion for them to submit to the District Court for Israel on specified issues, in the form of an opinion, as they were entitled to do. Plaintiff's counsel is obviously fully aware of the position of defendants' new counsel in the case and can address whatever issues they wish concerning his opinion in the District Court for Tel Aviv.

---

[5] Defendants' new counsel just entered his appearance on October 2, 2017 (Dkt. 133). The Kasowitz firm, which has represented defendants since the commencement of this action, was not available to do so since they filed a motion to withdraw as defendants' counsel on September 19, 2017, have been granted leave to withdrawn in two related cases in this Court, and have not rendered services for defendants since they sought to withdraw.

- 16 -

Defendants' opposition in the District Court for Tel Aviv, and counsel's opinion, in no way alter the fact that the judgment against defendants in this Court is final in the United States and that plaintiff may seek to enforce that judgment to the extent allowed by United States law. That does not necessarily guarantee that it will be "domesticated" under the laws of other sovereign nations, including Israel, which have their own criteria for whether to accept and enforce foreign judgments. That also does not mean that defendants and their counsel cannot vigorously oppose "domestication" of the judgment under the laws of Israel.

Under the theory advanced by plaintiff's counsel, defendants should not even be allowed to oppose the plaintiff's petition for domestication of the judgment in Israel at all, as if it is an automatic "administrative proceeding" (Supp. St. p. 20), instead of a judicial proceeding in the District Court for Tel Aviv. This is not the law.

Defendants' new counsel in this case has continued to assist defendants in complying with this Court's orders related to enforcement of the judgment in this case. But defendants are fully entitled to exercise their rights under the laws of Israel to vigorously oppose "domestication" of the judgment in the District Court for Tel Aviv in Israel.

Plaintiff's contention that this Court should instruct defendants' counsel to withdraw his submission to the District Court of Tel Aviv is baseless (Supp. St. ¶ 43). That opinion does not contend that the judgment is not final for purposes of United States law and in this Court. It addresses specific issues as requested by defendants' Israeli counsel and expresses counsel's opinion on those issues. There would be no need for a proceeding in Israel if it was obligated to automatically adopt and enforce a foreign state judgment, as plaintiff suggests. The law of Israel establishes its own criteria and law to apply in making that determination.

There is no basis for sanctions under 28 U.S.C. 1927, as plaintiff contends (Supp. St. p. 21). The opinion about which plaintiff complains was filed in the District Court for Tel Aviv in

Israel by Israeli counsel opposing plaintiff's attempt to "domesticate" plaintiff's judgment in Israel. Section 1927 does not apply by its terms because defendants' opposition to plaintiff's petition in Israel, including the opinion, were filed in the District Court for Tel Aviv in Israel and have no effect on the proceedings in this case in the United States. Nothing the District Court for Tel Aviv does nor says with regard to whether it will enforce this Court's judgment in Israel will have any impact whatsoever on this Court's judgment or proceedings. Plaintiff will undoubtedly continue to seek enforcement of its judgment in this case regardless of what the District Court for Tel Aviv does.

Plaintiff has not satisfied the strict requirements established by the Second Circuit for sanctions under Section 1927, *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000):

> To impose sanctions under [28 U.S.C. 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith-that is, "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *see also Agee v. Paramount Comm.*, 114 F.3d 395, 398 (2d Cir. 1997). We have interpreted the bad faith standard restrictively:
>
>> To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts. *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

*Accord*, *Picard v. Roman*, Adv. Proc. No. 10-042292 (SMB) (Oct. 17, 2017), p. 20.

Plaintiff's reliance on *GE Healthcare v. Orbotech, Ltd*, No. 09-C-0035, 2009 WL 2382534, * 7 (E.D. Wis., July 2, 2009), is misplaced. That case involved a breach of contract claim by a U.S. corporation against an Israeli corporation. The court granted defendants' motion to dismiss on the basis of forum non conveniens because the defendant was Israeli, the contract

was to be performed in Israel, and Israel was an adequate forum. Its discussion of the enforcement of foreign judgments under Israel's Foreign Judgments Enforcement Law, 5718-1958, was dictum, but it recognized "[t]hat law also contains an affirmative defense that permits a person to avoid the preclusive effect of a judgment if 'the defendant was not afforded a reasonable opportunity to present his arguments and to produce his evidence before the judgment was given.'" *GE Healthcare*, Decision and Order 15. The court further explained that "[d]etermining whether any judgment of this Court would bind [a GE subsidiary in Israel] in an Israeli court involves resolving complex issues of statutory interpretation under Israeli law, a task best left to Israeli courts." *Id.*[6]

Plaintiff's reliance on *In re Galgano*, 358 B.R. 90 (S.D.N.Y. Bankr. 2007) (Supp. St. p. 22) for the proposition that 28 U.S.C. 1927 can be used to sanction conduct in another court is directly contrary to the holding in that case: "the Court has no authority to exercise either its inherent power or the power under Section 1927 to sanction a party for conduct that occurred before another court." *Id.*, 358 B.R. at 104. That decision cites numerous other decisions for the same principle, including *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991), on which plaintiff erroneously relies. The court of appeals is emphatic on the point, *id.*:

> Section 1927 is construed strictly "so that the legitimate zeal of an attorney representing [a] client is not dampened." *Browning v. Kramer*, 931 F.2d 340 (5th Cir. 1991). The language of Sec. 1927 limits the court's sanction power to attorney's action which multiply the proceedings in the case before the court. Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing Sec. 1927 sanctions. The state court proceeding is an entirely separate action.

---

[6] Though the court in *GE Healthcare* dismissed on forum non conveniens, it had concluded that there was diversity jurisdiction, without addressing personal jurisdiction over the Israeli defendant, an issue on which *Daimler AG v. Bauman*, ___ U.S. ___, *supra*, might have required a different analysis and result.

For the same reason, Section 1927 cannot be used to sanction conduct in Israel before the District Court for Tel Aviv. The proceeding in that court is an entirely different proceeding under the laws of Israel to determine whether it will give legal effect in Israel to this Court's judgment. Whether it does or not has no impact on the proceedings in this case. And nothing that is contained in the opinion of defendants' counsel filed in that case has any impact on the proceedings in this case, either. The judgment will remain in effect in this Court and plaintiff will be entitled to continue to seek its enforcement under the procedures permitted under U.S. law.

## CONCLUSION

For the foregoing reasons, plaintiff's Supplemental Statement seeking a determination that defendants have not purged themselves of contempt, directing withdrawal of counsel's opinion in the District Court for Tel Aviv, and seeking imposition of monetary or other sanctions, should be denied.

Dated: November 7, 2017
      New York, New York

      Respectfully submitted,

      DANIEL LAW PLLC

      By: /s/ Al J. Daniel, Jr.
          Al J. Daniel, Jr.
      305 Broadway, 7th Floor
      New York, NY 10007
      (212) 721-0902
      ajd@daniellawpllc.com

      *Attorney for Merhav (M.N.F.) Limited*
      *and Yosef A. Maiman*