UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| -------------------------------------------------------- X | | **Hearing Date and Time:** |
| | | **November 16, 2017 at 10:00 a.m.** |
| In re: | : | |
| | : | Chapter 7 |
| AMPAL-AMERICAN ISRAEL | : | |
| CORPORATION, | : | Case No. 12-13689 (SMB) |
| | : | |
| Debtor. | : | |
| | : | |
| -------------------------------------------------------- X | | |
| MERHAV AMPAL GROUP, LTD. f/k/a | : | Adv. No. 14-02385 (SMB) |
| MERHAV-AMPAL ENERGY, LTD., | : | |
| | : | |
| Plaintiff, | : | **RELATED DOC. NOS. 116, 140, 141,** |
| | : | **147, 150** |
| v. | : | |
| | : | |
| MERHAV (M.N.F) LIMITED and | : | |
| YOSEF A. MAIMAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| -------------------------------------------------------- X | | |

**PLAINTIFF/JUDGMENT CREDITOR'S REPLY TO DEFENDANTS' OPPOSITION TO
SUPPLEMENTAL STATEMENT IN SUPPORT OF CONTEMPT MOTION AND
<u>UPDATE REGARDING COMPLIANCE WITH THE COURT'S ORDERS</u>**

Merhav Ampal Group, Ltd. f/k/a Merhav-Ampal Energy, Ltd. ("MAG"), by and through

its undersigned counsel, hereby submits this reply to the Defendants' opposition ("Opposition")

[Adv. Doc. No. 150] to MAG's Supplemental Statement in Support of Contempt Motion and

Update Regarding Compliance with the Court's Orders.[1]

<u>**INTRODUCTION**</u>

Defendants unequivocally admit that they have failed to timely comply with the October

11 Orders.  *See* Opposition at 1, *passim*.  They ask this Court to excuse, yet again, their failure to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms
in MAG's October 30, 2017 Supplemental Statement. [Adv. Doc. No. 147].

43333496;3

comply with this Court's orders because their failure was "minor" and because Judgment Debtor

Maiman "forgot" about certain servers.  However, it's one thing to miss a discovery deadline, but

it's another thing entirely to continue to engage in a campaign to thwart MAG's discovery

efforts, reach the point where the Court holds a contempt hearing and enters contempt and

sanctions orders, and then *still* fail to comply with ***those*** orders.  Moreover, the Judgment

Debtors' "forgetfulness" excuse, even if believable (which it is not), should be rejected.

First, the Court ordered the Judgment Debtors to turn over their physical servers by

October 21, 2017, and they failed to comply.  Instead, they turned over only one server, but not

two others.  Only after prodding by MAG did the Judgment Debtors turnover those other servers.

As such, the Court should award appropriate sanctions.

Second, and more importantly, with respect to the cloud e-mail server,[2] the Judgment

Debtors have completely failed to turn them over.  Because these servers are not "physical" in

nature, to "turn" them over, the Judgment Debtors had to grant Force Majeure access to them,

which is implicit in the October 11 Orders.  However, the Judgment Debtors have not provided

that access.  More significantly, based on recent developments in the Israeli court, it is apparent

that the entire issue over the e-mails and the application of Israeli privacy laws was merely a

delay tactic.  The Israeli court has recommended a solution, which the Parties likely will adopt,

that is substantially similar to the agreed solutions proposed by these Parties and adopted (and

ordered) by the Court in 2014 and 2017. *See* [Doc. No 395 (the "Agreed Order")], [Doc. No. 532

("Supplemental Order")].  If there were truly an "issue" that required separate litigation in

Israeli, as well as all these protracted related proceedings, then it would follow that the resolution

would be different.  However, because the proposed resolutions are effectively the same, it

---

[2] References to the Microsoft server, cloud server, and the e-mail server, all refer to the same
server: the one (1) cloud-based Microsoft server that contains the e-mails of the Judgment
Debtors and employees of Judgment Debtor Merhav, as identified in the Cnaan Declaration.

43333496;3

logically follows that the "password" issues and the assertion (separately and through the Merhav Employees) of these issues of Israeli privacy law were done to further delay discovery and enforcement of the Court's Judgment. Either way, the Judgment Debtors have failed to provide access to (*i.e.*, turnover) the e-mail server, and thus the Judgment Debtors have violated the October 11 Orders.

Third, in addition to providing the servers themselves, the Judgment Debtors were obligated to provide a privilege log that identified certain "privileged" e-mails, so that MAG could then begin reviewing the other relevant and discoverable e-mail communications contained on the servers. *See* August 14 Order. Instead, the Judgment Debtors, through Lipa, failed to comply with this order. Rather than actually identifying those e-mails as required, the Judgment Debtors simply listed various e-mail address, individuals, and words, and then took the position that any e-mail to or from those e-mail addresses, or which contained those words, were *per se* privileged and therefore not discoverable. However, under no definition of the term "privilege log" is the Judgment Debtors' submission acceptable, let alone a good faith attempt, and it clearly violates both the spirit and letter of the August 14 Order. As such, the Judgment Debtors should be held in contempt and sanctioned for this misconduct until a compliant privilege log is produced.

Finally, Daniel misreads the Supplemental Statement regarding his "expert" opinion. MAG is not seeking sanctions against Daniel. Instead, MAG has simply "reserve[d] the right to seek sanctions against Daniel to the extent his 'expert' legal opinion affects these proceedings." [Adv. Doc. No. 147 at 22]. The point was to highlight the baseless nature of Daniel's opinion, and have Daniel answer to that. The fact that the Opposition fails to even mention the underlying (lack of) merits of the opinion, speaks volumes.

43333496;3

For the reasons discussed below, the Court should impose sanctions on the Judgment Debtors, and enter such other and further relief as the Court deems appropriate.

## FACTUAL AND LEGAL ARGUMENT

**A.     The Judgment Debtors have failed to timely "turnover" the servers, and failed to provide a compliant Privilege Log**

1.     *Physical Servers*

There is no dispute that the Judgment Debtors were obligated to turnover all of the physical servers in their possession, custody, and control by October 21, 2017.  The Judgment Debtors delivered one server by that deadline.

However, through counsel, the Judgment Debtors have also admitted that additional servers existed, with one of those servers in the possession of Tic Tac (and thus within the control of the Judgment Debtors), and another server being in the physical possession of the Judgment Debtors. *See* Opposition at 4-6.  The Judgment Debtors attempt to "excuse" this violation of the Court's October 11 Orders due to Judgment Debtor Maiman's purported forgetfulness.  The Judgment Debtors also attempt to shift blame to MAG for failing to raise with the Judgment Debtors that these other servers were in the Judgment Debtors' possession, custody, or control.  These efforts – much like Daniel's patronizing and pedantic asides defining a "cease and desist" letter and certain terms in the Cnaan Declaration, *id.* at n. 2, 3 – are employed to distract from the simple fact that the Judgment Debtors have failed, and continue to fail, to comply with the Court's straightforward orders.

As for Judgment Debtor Maiman's "forgetfulness," this Court should reject that excuse as unbelievable.  Putting aside the sheer convenience of this excuse, and ignoring the level of focus and litigation over the servers during the past few months, which both belie this lame

excuse, there are demonstrable inaccuracies in Judgment Debtor Maiman's Declaration ("Maiman Declaration") that undermine his already questionable veracity.

For example, in paragraph 3 of the Maiman Declaration, he states that Judgment Debtor Merhav "is not an operating company and has not been actively pursuing or developing new business since approximately 2012, and was then in a winding up mode." [Adv. Doc. No. 150-1 at ¶ 3]. However, the following documents clearly demonstrate otherwise: 1) on October 31, 2014, Judgment Debtor Maiman, on behalf of Judgment Debtor Merhav, entered into a Memorandum of Understanding regarding a new partnership agreement to provide consulting and other services relating to aquaculture projects; 2) on August 24, 2015, a memorandum was circulated discussing the establishment of a new "on-shore fish nursery, a 'Yellowtail Farm'"; 3) a "Sale/Purchase Agreement of Technical Documents," attached to a June 9, 2017 e-mail that Judgment Debtor Maiman sent to himself, discussing the sale of those documents for $894,000;[3] and 4) the April 2015 budget that identifies various expenses relevant to an on-going, not winding down, business. Copies of these documents are attached as **Composite Exhibit A**.

Judgment Debtor Maiman attests that he "forgot" the other servers existed, but he also attests that Judgment Debtor Merhav has not conducted business since 2012. This inconsistency undermines the entire Maiman Declaration. Indeed, just two months ago, Judgment Debtor Maiman e-mailed himself details of a transaction that directly violated this Court's Order of Permanent Injunction and conflicts with the Maiman Declaration. Simply put, Judgment Debtor Maiman is unbelievable, and these issues only highlight that Judgment Debtor Maiman is willing to violate the Court's orders, including the Permanent Injunction Order, the December 11 Orders, and the Discovery Orders, and worse yet, lie to this Court about those violations.

---

[3] This transaction is a violation of the Court's Order of Permanent Injunction, dated February 2, 2017, which forbid the "sale" of any property of the Judgment Debtors. [Adv. Doc. No. 71 at ¶1(d)].

43333496;3

This conduct all serves to further delay MAG's discovery efforts and its ability to collect on the Judgment.  At a minimum, the Judgment Debtors knew (or should have known) that servers were delivered to Tic Tac and it is unreasonable that the Judgment Debtors failed to check with Tic Tac or otherwise check within their own possession, custody, or control for the servers.  This point only highlights the importance of KBT's efforts to withdrawal, Daniel's substitution, and Daniel's lack of knowledge regarding these proceedings and its past.  Surely, KBT, who litigated those prior issues regarding Tic Tac, knew or should have known about these additional servers.

Because the Judgment Debtors admittedly violated the October 11 Orders, and because Judgment Debtor Maiman's declaration is otherwise false and demonstrably inconsistent with facts, the Court should reject the Judgment Debtors' excuse and award sanctions for their violation of the October 11 Orders.

2.    *E-mail / Cloud Servers*

The Judgment Debtors' Opposition seems to argue that they were only required to "identify" the e-mail servers, but nothing more, in order to comply with the October 11 Orders. In that sense, as the Judgment Debtors' argument goes, even though Force Majeure cannot actually access the e-mail server, they have complied with the October 11 Orders.

This argument is ridiculous, and directly violates the spirit of the October 11 Orders, if not the letter itself.  To "turnover" a server, it must be in a form that would allow Force Majeure to have access to and review the files contained on the server.  Because Force Majeure cannot "physically possess" the identified Microsoft e-mail server, the Judgment Debtors must provide access to the server to satisfy the "turnover" requirement.

43333496;3

Between November 3 and November 7, the Judgment Debtors and/or their counsel have been effectively playing games with respect to this password and access to the cloud server. Copies of these e-mail communications are attached as **Exhibit B**. This has come in two forms. First, the Judgment Debtors have failed to provide the correct password, or a working password. Second, the Judgment Debtors, individually and through the Merhav Employees, have objected to MAG's access on privacy grounds.

With regard to the password, the Judgment Debtors contend that Force Majeure has the password and has access to the server. *Id.* In fact, Tic Tac sent an e-mail to Daniel purporting to confirm that Force Majeure has access to the server. *Id.* at 16. This is not true. The password provided does not work, and the representations made are otherwise false. In fact, Force Majeure represented directly to the Israeli court that the Judgment Debtors have failed to provide a working password to access the server. *See* November 8 Hearing Transcript, at 3, 4 ("We need the password to the cloud server of the three Applicants" and "The cloud e-mail server, we need access to its management system. This is blocked with a password. It is Microsoft password I think."). A copy of the translated hearing before Judge Idit Itzkovitch on November 8, 2017 (the "November 8 Hearing Transcript") is attached as **Exhibit C**. Because Force Majeure does not have access to the e-mail server, the Judgment Debtors have failed to comply with their obligation to "turnover" the server to MAG (through Force Majeure) for discovery purposes. Thus, the Judgment Debtors have violated the October 11 Orders.

Second, the Merhav Employees have objected to Force Majeure's review of the e-mails. This has further frustrated the issues and has the potential to block any review of the e-mails relating to those individuals. The Supplemental Statement raises an obvious and reasonable concern regarding the timing of the Merhav Employees' new complaint, their use of one of the

7

Judgment Debtors' attorneys, and the similarity between the Edri Letter and the Lipa Letter to Force Majeure. The Opposition dismisses these issues without explanation, and simply states there is no "evidence" to support them. Based on the Opposition, there is no credible explanation for these coincidences. In fact, although Judgment Debtor Maiman's declaration spends six (6) pages explaining away his forgetfulness, none of it discusses these issues. Again, the silence speaks volumes.

This point aside, the Israeli court has proposed a resolution of the Merhav Employees' dispute, which, based on the November 8 Hearing Transcript, may provide an avenue to *finally* resolve any remaining privacy issue about the e-mails. As a reminder, the Merhav Employees that have objected are Sabich Sailan, Leo Malmud, Sharon Barkan, and Michael Mirkin. *See* [Adv. Doc. No. 147 at ¶¶ 18]. Interestingly, while the Judgment Debtors expended considerable ink explaining away Judgment Debtor Maiman's forgetfulness, the Opposition makes several references to two of this Court's orders from the main bankruptcy proceeding – the "Agreed Order" and "Supplemental Order," as identified above. *See* Opposition at 2, 4, 7, 11 and 12. Oddly, the Judgment Debtors seem to forget that these orders dealt with the Judgment Debtors and the Merhav Employees' privacy concerns. In fact, these orders, as well as the August 14 Order, established a protocol whereby the relevant e-mails would be narrowed with a search-term machine review, then a second (human) review would occur, and this method was designed to eliminate or reduce the unnecessary or inadvertent disclosure of personal, private e-mails. Notwithstanding, the method set forth in the Agreed and Supplemental Orders, it was never complied with, and the Judgment Debtors and the employees have now rejected it as an acceptable methodology. Instead, they have raised issues regarding Israeli privacy law

contending that only an Israeli court and an Israeli judge could resolve these issues. However, a comparison of the orders demonstrates that these Israeli lawsuits are pointless.

In this Court's February 6, 2014 Agreed Order, which was entered after review and consideration of non-party "objectors," ***including Sabich Sailan, Leo Malmud***, this Court provided that a certain portion of the information be disclosed after Tic Tac completes a keyword search, and after the "objectors" complete their review of the e-mails to identify the e-mails that are considered "privileged" and "private," along with a "folder document log" that identified which folders were deemed privileged or private. In turn, the Trustee was permitted to vet those logs and initiate an appropriate "resolution process" to resolve any dispute of the relevant designations. *See* [Doc No. 395]. Based on their objections and joinder, it is apparent on its face that the Merhav Employees were, at a minimum, involved in that process and had notice of those proceedings.

Later, on December 5, 2014, the Court entered a Supplemental Order relating to the Agreed Order, and the objectors, including Sabich Sailan and Leo Malmud, agreed that all of their disputes with the Trustee were resolved, that certain information would be provided to the Trustee, and that to the extent any of the documents were to be used, that notice will be provided to the Merhav Employees (or their counsel) so that they may object to preserve their private information.

Finally, in the August 14 Order, the Court directed the Judgment Debtors to identify all documents that are deemed to be privileged, to mark them on a privilege log, and then have Force Majeure run a keyword search of the documents – not on that list – to then disclose those, non-privileged, keyword search responsive documents to MAG. *See* [Adv. Doc. No. 115].

Yet, notwithstanding those orders, and the fact that the Merhav Employees were involved and *agreed* to the terms of the Agreed Order and the Supplemental Order, all of these privacy issues were restarted in Israel as if entirely new to the Merhav Employees. Obviously, that is not the case. Regardless, the Israeli court, with the seeming acquiesce from the Merhav Employees' counsel, has suggested the following resolution:

> There seems to be agreement in principle between the parties that the division between business and private e-mail will be done at the first stage by [Force Majeure] using keywords that will be agreed between the parties or in accordance with the Court's decision.
>
> As for the second stage - counsel for the Claimant suggested that the [Merhav Employees] from the business correspondence the correspondence they believe violates their privacy, and from that correspondence an external party will be appointed, an attorney agreed upon by the parties or appointed by the Court, to determine if this is the [Merhav Employees'] private information that should not be disclosed.
>
> [MAG] requests that the second stage be performed by the appointed trustee, and not by an external party. Since there is no dispute as to the first stage of the examination, we propose that the performance begin with agreement whereby the parties' counsel must submit an agreed list of key words to the Court by December 1, 2017.

*See* [November 8 Hearing Transcript at 4].

This potential resolution is essentially the identical resolution this Court and the parties reached in 2014 and, again, earlier this year. This establishes that any recent argument over privacy law was merely pretextual, and the purpose was for delay and obstruction, not the protection of privacy. The fact that this has been used to block and thwart MAG's access to the e-mails, and the need to litigate *two separate* lawsuits in Israel, highlights the Judgment Debtors' misconduct.

Adding insult to injury, and putting aside the privacy argument charade, only four (4) of the Merhav Employees have objected.  However, the Judgment Debtors have failed to provide access – by password or otherwise – to the e-mails of the Judgment Debtors and the other, non-objecting Merhav Employees e-mails on the cloud server, which includes incredibly the e-mails of Judgment Debtor Maiman himself.  This, too, establishes that the Judgment Debtors have violated the October 11 Orders, and thus sanctions are warranted.

     *3.*    <u>*The August 29, 2017 "Privilege Log" is Deficient*</u>

As part of the Court's and MAG's and the Trustee's efforts to assuage the privacy concerns of the Judgment Debtors and the Merhav Employees, the Court has entered several orders that have provided the Judgment Debtors and their employees with the right (and obligation) to review their e-mails and then produce certain logs that identified those e-mails that were privileged or private.  *See, e.g.,* Agreed Order at ¶¶ 3-7; August 14 Order at p. 3.  Having agreed to produce a privilege log in the past, the Judgment Debtors know (or should know) what is required for preparing an appropriate privilege log.

In case there was any question, and as far back as 2014, the Court provided a detailed description of what was required to prepare a privilege log, and in doing so ordered the Judgment Debtors to provide "an inventory list of all Privileged Emails within the meaning of Fed. R. Evid. 501" and, for "each email listed" on that privilege log, the Judgment Debtors were required to identify the "sender, recipient, subject line, date and time, and the basis for privilege."  The Court ordered the Judgment Debtors to undertake this task for both privileged and private emails. *See* Agreed Order at ¶ 4.  As this order made clear, compliant logs required the identification of specific e-mails deemed to be privileged or private, as well as specific information about those e-mails so that MAG (or the Trustee) could test the veracity of their inclusion on those logs.

Similarly, in the August 14 Order, the Court directed the Judgment Debtors "to produce, on or about August 28, 2017, to MAG's counsel a log of any and all documents being withheld from the production on the basis of attorney-client privilege." *See* August 14 Order at 2. At a minimum, the Judgment Debtors were obligated to identify the specific "documents" and to provide sufficient minimum details about the document or communication so that MAG could then evaluate whether the document or communication's inclusion on the log was appropriate.

The Judgment Debtors failed to produce a privilege log. Instead, Lipa (not U.S. counsel), on behalf of the Judgment Debtors, produced a list of e-mails addresses and keywords, and took the position that any e-mail or document associated with those addresses or words was "privileged." A copy of Lipa's August 29, 2017 "privilege" log is attached as **Exhibit D**. That's not a privilege log, and thus this list fails to comply with the August 14 Order. Moreover, it is obvious that neither the Judgment Debtors nor the Merhav Employees – nor either's attorney[4] – took the time to review the documents to separate out the privileged e-mails that they were ***so concerned about***. That fact is made clear after reviewing the list because it includes predominately non-privileged communications. *See id.* at ¶ 1 (listing personal, non-attorney related e-mails, e-mails relating to medical matters, and e-mails relating to various business ventures). Putting aside the violation itself, the effect is that MAG has not had the opportunity to review the non-privileged e-mails that are clearly discoverable. Like every other action by the Judgment Debtors, this further delays MAG's collection efforts. Moreover, had the Judgment Debtors fulfilled their obligation, the Parties would have litigated the privilege issues through an

---

[4] The August 14 Order actually contemplates that the Judgment Debtors' counsel would determine privilege and identify those documents on the privilege log. *See* August 14 Order at 3 ("MAG's Consultant shall not turnover to MAG or any of its employees, representatives and advisors, including it attorneys and accountants, any of the documents identified and tagged ***by counsel for the Defendants/Judgment Debtors*** in the Privilege Log provided to MAG in accordance with this Order.") (emphasis added).

12

appropriate resolution process, and may have resolved the present "privacy" issues, much like the Israeli court is about to do. This is yet another example of the Judgment Debtors' continued effort to ignore the Court's orders and purposefully act in a noncompliant manner to delay and frustrate these proceedings.

The Court should find the Judgment Debtors' log to be deficient, and award MAG sanctions in the amount of $10,000, per day, running from November 1, 2017 until the Judgment Debtors produce a proper privilege log.

**B.    Daniel's "Legal" Opinion**

The Judgment Debtors (or their counsel) misunderstood MAG's argument regarding Daniel's purported legal opinion. The Supplemental Statement unequivocally states that MAG was not seeking sanctions at this point, and it acknowledges that, because the opinion was filed in Israel, "the Court does not have the authority to sanction" Daniel. The Opposition, nevertheless, quotes the exact same cases that confirm precisely the point MAG was making on this issue.

Similarly, the Opposition misconstrues (or misunderstands) MAG's contention regarding its suggestion that domestication here should be an "administrative" process. The point is that generally, where there is not a good faith basis to object to a foreign judgment's procedural or substantive merits, domestication is tantamount to an administrative proceeding because the judgment is entered by default – that is, no objection is often made because the judgment is not objectionable. Here, although there is no good faith basis for an objection, Daniel has lodged baseless objections in the form of his "expert" opinion. Thus, what *should* be an unremarkable exercise resolved *like* an administrative proceeding has been frustrated by Daniel's "expert" opinion.

13

The Opposition's focus on the above points are red herrings because the point of MAG's argument is that this "expert" legal opinion is deceiving, and an obvious misstatement of law. Sheepishly, Daniel and the Opposition fail to confront those points, and argue to this Court that its summary judgment order, and the affirmances from District Court and Circuit Court, are wrong and that at each level the US courts have decided to trample on the Judgment Debtors' due process rights. MAG contends that if Daniel wants to take that position to the Israeli court, he should be obligated to defend it before this Court.

For starters, the Opposition makes a "what's good for the goose is good for the gander" argument and points to attorney John Campo's affidavit ("Campo Affidavit"). [Adv. Doc. No. 150-3]. For two obvious reasons, they are *not* equivalents. First, the Opposition conveniently ignores that, unlike Daniel, John Campo explicitly states that he is "lead U.S. counsel to [MAG]." *Id.* at 1. Consequently, the Israeli court (or whoever) will understand that the statements come from MAG's counsel and they are filed in support of MAG's motion for domestication. Without affording the Israeli court with that fact, and by omitting that Daniel is also "lead U.S. counsel" to the Judgment Debtors or "lead U.S. counsel with KBT," Daniel improperly launders his "expert" legal opinion of the obvious bias attendant to an advocate's filing made on behalf of his clients. The only conceivable reason to omit that material fact is to mislead the Israeli court.

Next, unlike the Daniel Opinion, the Campo Affidavit provided the Israeli court with a summary of what transpired in the U.S. proceedings, and confirms that each of the prongs relevant for domestication have been satisfied. The Campo Affidavit does not contain argument or an opinion as to the legitimacy of the U.S. courts' rulings. Rather, the affidavit merely summarizes those rulings in order for the Israeli court can satisfy to itself that its domestication

14

statute has been satisfied.  This distinction further demonstrates that Daniel's "expert" opinion is not the same as the Campo Affidavit.

Finally, as they rely on the same cases, the Supplemental Statement and Opposition must agree that *if* the Daniel Opinion ***does*** adversely affect or delay these proceedings then sanctions could be awarded.   Furthermore, while the Opposition contends that the requirements for sanctions have not been established – and, again, MAG is ***not*** seeking sanctions at this juncture – the facts demonstrate otherwise.  *See Eiseman v. Greene*, 204 F. 3d 393, 396 (2d Cir. 2000) (explaining that sanctions must be supported by clear evidence of a position "entirely without color" brought in "bad faith, that is, 'motivated by improper purposes such as harassment or delay.'").  This test, if analyzed, is satisfied.

As for the U.S. opinions themselves, this Court, the District Court, and the Circuit Court have each reached the opposite conclusion of the Daniel Opinion.  Thus, as a matter of law, the Daniel Opinion is "entirely without merit."  Consequently, because the Daniel Opinion has no merit, there is no good faith reason to submit it in the Israeli proceeding.  Instead, the only reason to assert the opinion is to delay MAG's domestication efforts and thwart the enforcement and satisfaction of this Court's Judgment.  At a minimum, the Court should require Daniel to answer for the impact of his "expert" opinion.

**WHEREFORE**, MAG respectfully requests that the Court (i) enter an Order finding the Judgment Debtors in violation of the Contempt Order and Withdraw Order; (ii) impose a per diem sanction against the Judgment Debtors of $10,000 commencing on November 1, 2017 and continuing until the contempt is purged; (iii) directing attorney Al. J. Daniel, Jr. to withdraw his legal opinion in the Israeli domestication proceeding; and, (iv) grant such other and further relief as may be just and proper.

43333496;3

Dated: New York, New York
      November 13, 2017               AKERMAN LLP


By: ___/s/ *Darryl R. Graham*_____
       John P. Campo
       Darryl R. Graham
       666 Fifth Avenue, 20th Floor
       New York, New York 10103
       Tel: (212) 880-3800
       E-mail: john.campo@akerman.com
       E-mail: darryl.graham@akerman.com

       *Attorneys for MAG*

43333496;3