UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

*In Re*

AMPAL-AMERICAN ISRAEL CORPORATION,

          *Debtor*.

------------------------------------------------------------x

MERHAV AMPAL GROUP, LTD.
f/k/a MERHAV-AMPAL ENERGY, LTD.,

          *Plaintiff*,

vs.

MERHAV (M.N.F.) LIMITED and
YOSEF A. MAIMAN,

          *Defendants*.

------------------------------------------------------------x

**Hearing Date and Time:**
**November 16, 2017 at 10:00 a.m.**

Case No. 12-13689-SMB

Adv. Case No. 14-02385-SMB

Related Doc. Nos. 116, 140, 141, 147, 150, 153

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S REPLY AND ASSERTION OF NEW MATTER NOT CONTAINED IN PLAINTIFF'S SUPPLEMENTAL STATEMENT

Defendants Merhav (M.N.F.) Limited ("Merhav MNF") and Yosef A. Maiman ("Maiman") respectfully submit that plaintiff's Reply and assertion of new matter filed around midnight on November 13, 2017 (Dkt. 153) ("Ps. Reply") was not allowed under this Court's scheduling order (*see* Dkt. 148) which adjourned the hearing to November 16, 2017 and provided only for the filing of any opposition by November 7, 2017, without any provision for a reply. In addition the purported Reply contains significant new matter which is not appropriate for a supposed reply. Accordingly, the purported Reply and new matter should be struck or disregarded. It was also filed just before midnight six days after the opposition and barely two days before the hearing, leaving defendants insufficient time to fully respond.

Plaintiff's original Supplemental Statement and Update (Dkt. 147) asserted that defendants failed to comply with this Court's October 11, 2017 Orders concerning contempt and

the Kasowitz firm's withdrawal (Dkt. 140, 141). With minor exceptions, which were remedied, defendants fully complied with the Court's Orders which allowed them to purge their contempt by October 21, 2017, as explained in detail in their opposition to plaintiff's supplemental statement. (Dkt. 150, pp. 3-6).

Defendants' petition before the Israel Labor Court was dismissed at defendants' request on October 20, 2017. Defendants delivered their IBM server and drives to plaintiff's consultant Force Majeure on October 17, 2017 and identified the "categories of information" on this server. When defendants learned there were two other Merhav servers—one in the possession of consultant Tic Tac, where it had been since 2014 (pursuant to an order in the Ampal bankruptcy case), and the other forgotten and unused in a storage room in Merhav MNF's former offices after being returned by Tic Tac, both were delivered to Force Majeure on October 31, 2017. One of these two servers was the "accounting" server which contained Merhav MNF's accounting program and accounting records and files. One server had been at Tic Tac since 2014 and was delivered directly to Force Majeure. Defendants did not know the contents of that server, but Force Majeure then had possession of it and could readily examine it and determine its "categories of information."

The only purpose of a civil contempt order is to obtain compliance, not to punish, as in a criminal contempt proceeding. The inadvertent, 10-day delay in delivery of these last two servers to Force Majeure was in substantial compliance and was excusable. The short delay was not material, did not cause any harm to plaintiff, and does not warrant any or further sanctions.

Plaintiff is aggressively pushing for the Court to *punish* a 71-year old man who has suffered ill health over the past few years by imposing substantial fines after compliance has been obtained. Punishment is not the function of a civil contempt order and compliance with the order to turn over defendants' physical servers has been complied with.

The contempt order required defendants to "also *identify* to counsel for Plaintiff any and all 'email' or 'cloud' server(s) utilized by the Judgment Debtors, whether or not such 'email' or 'cloud' server(s) are in the Judgment Debtors' possession, custody or control …" (Order, ¶ 2(c), Dkt. 140) (emphasis added). Defendants clearly *identified* their email cloud server as being provided by a subscription to Microsoft Corporation's "Exchange Online (Plan 1)" as evidenced by invoices from the Microsoft Corporation's office in Dublin, Ireland (Cnaan Decl., Ex. A (Dkt. __); Maiman Decl., Ex. 1 (Dkt. 150-1). This fully complied with the Court's Order, ¶ 2(c), regarding the cloud-based email service utilized by defendants.

Plaintiff acknowledges that the contempt order does not expressly order defendants to give Force Majeure a password to the Microsoft email cloud server which defendants did *identify*, as the order mandates. Nor does the order require a "turnover" of the cloud server. Ps. Reply 6. A finding of contempt should be based only on evidence of violation of a clear and explicit order, not on the basis of plaintiff's *post hoc* inference of the "spirit" of an order.

Plaintiff's assertion that defendants "and/or their counsel have been ... playing games" about a password for the cloud server is baseless, as shown by the emails they rely upon. Force Majeure's CEO complained that the password given him in early September did not work, soon after the hard drive(s) with copies of emails were delivered to him on August 29, 2017. Tic Tac, which had downloaded emails onto the hard drive also created a password needed to access the emails on the hard drive. It was that password that was re-delivered to Force Majeure's CEO, without realizing that he was attempting to acces the Microsoft cloud server with that password.

Defendants had previously delivered copies of 200,000 emails in mid-July 2017 and had delivered a hard drive with emails downloaded from their email cloud at the end of August 2017, along with a "Privileged Log," as plaintiff acknowledges (Dkt. 153-4). None of the orders at

issue directed defendants to give plaintiff or its consultant a password to their Microsoft cloud server, contrary to plaintiff's contention. Ps. Reply 2.[1]

Defendants have also now expressed concern about the independence of plaintiff's consultant Force Majeure after the apparent testimony of its CEO at the Labor Court hearing in Israel and whether Force Majeure would respect the limits on access to information identified in defendants' Privileged Log.[2]

Defendants discussed the fact that the issue of privacy rights was expressly raised, briefed, and applied by this Court in the main bankruptcy case in the context of the trustee's application for turnover of Ampal books and records. Ds. Opp. Supp. Statement, Dkt. 150, pp. 7-8. Plaintiff argued in the contempt proceeding that those privacy rights had been waived in this case, though none of the individuals (except Mr. Maiman) whose rights are affected are parties in this case. Defendants' disagreed and thought it sufficiently raised, since it had been fully briefed and addressed by the Court in the Ampal bankruptcy proceeding.

Plaintiff's statement that defendant "never complied" with the method in the Agreed and Supplemental Orders, Ps. Reply 8, is incorrect. The Second Supplemental Stipulation and Order, ¶ 7, p. 6 (Dkt. 626), states: "The Trustee acknowledges and agrees that ... (3) the Objectors have fully complied with all obligations existing under the Stipulation andn the First Supplemental Stipulation, and the Trustee shall not argue to the contrary in any proceeding." The decision on

---

[1] After judgment was entered in this case, defendants engaged in extensive settlement negotiations with plaintiff beginning in January 2016, prior to formal discovery in this case (Declaration of Michele L. Angell, ¶ 3-5, Dkt. 81). During those negotiations, defendants voluntarily provided substantial information regarding their assets and liabilities to plaintiff in April 2016, including financial statements for years beginning in 2012, and updated that information in November 2016 (Angell Decl. ¶¶ 4-5).

[2] Plaintiff has evidently been able to access some of defendants' emails somehow, as plaintiff attache three to its Composite Ex. A (Dkt. 153-1).

the application of Israeli privacy law could well be applied here under the law of the case doctrine.

Defendants' Israeli counsel delivered to Force Majeure on August 29, 2017 a document titled "Privileged Log" (Dkt. 153-4), as required by the Court's Order of August 15, 2017 (Dkt. 115, p. 2). The Privileged Log provided the following categories of documents and information as to which a claim of attorney-client privilege applies or which are personal and not relevant, as follows:

> 1. Topics of files and communications protected by attorney-client privilege or which are personal and irrelevant
>
> 2.1 List of email addresses of attorneys to which the correspondence between them privilege applies
>
> 2.2 List of e-mail addresses relating Mr. Yossi Maiman medical condition:
>
> 2.3 List of additional words and e-mail addresses in which is correspondence containing any of them defined as privileged relating appear:

To the extent that plaintiff was dissatisfied with the Privileged Log, the normal procedure required by Local Bankruptcy Rule 7007-1 would be for counsel to confer to attempt to resolve the issue before seeking "the intervention of the Court ...." To the best of defendants' knowledge, that has not been done with regard to plaintiff's complaints regarding the Privileged Log.

The Court's contempt order (Dkt. 140) makes no reference to the Privileged Log and does not condition their ability to purge their contempt upon updating or providing a new Privileged Log. There is no basis for plaintiff's belated attempt to hold defendants in contempt and sanction them "until a compliant privilege log is produced." Ps. Reply 3. This is a new issue which is not properly raised at this stage in the proceeding.

Nothing said by plaintiff regarding Daniel's legal opinion submitted to the District Court for Tel Aviv changes the fact that it was submitted to a court in the sovereign State of Israel, as part of these Israeli defendants' objection to adoption and enforcement of the judgment by their Israeli counsel.   That Court will determine whether and to what extent it will consider that opinion, based upon the laws of Israel.  Plaintiff has or undoubtedly will inform the District Court for Tel Aviv what it thinks of the opinion and that Court will render its own decision.  Plaintiff acknowledges that this Court cannot sanction the filing of that opinion yet seeks an order directing its withdrawal, a contradiction in terms.

## **CONCLUSION**

For the foregoing reasons, plaintiff's Supplemental Statement and "Reply" seeking a determination that defendants have not purged themselves of contempt, seeking new relief including delivery of a cloud server password and new sanctions regarding defendants' Privileged Log, and directing withdrawal of counsel's opinion in the District Court for Tel Aviv, should be denied.

Dated:  November 15, 2017
       New York, New York

                              Respectfully submitted,

                              DANIEL LAW PLLC

                              By:  /s/ Al J. Daniel, Jr.
                                  Al J. Daniel, Jr.
                              305 Broadway, 7th Floor
                              New York, NY 10007
                              (212) 721-0902
                              ajd@daniellawpllc.com

                              *Attorney for Merhav (M.N.F.) Limited*
                              *and Yosef A. Maiman*